# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,            )
                                     )
                    Plaintiff,       )        Case No.: 2:16-cr-046-GMN-PAL
                                     )
        vs.                          )
                                     )            **ORDER**
CLIVEN D. BUNDY,                     )
                                     )
                    Defendants.      )
_____      )

Pending before the Court is Petitioner Larry Elliot Klayman's ("Klayman's") Verified Petition for Permission to Practice in the case of Defendant Cliven D. Bundy ("Verified Petition"). (ECF No. 166). As explained below, this Verified Petition is **DENIED** for failure to fully disclose disciplinary actions and related documents.

A defendant's "choice of counsel must be respected unless it would . . . burden the court with counsel who is incompetent or unwilling to abide by court rules and ethical guidelines." *United States v. Walters*, 309 F.3d 589, 592 (9th Cir. 2002). Criminal defendants have a Sixth Amendment "qualified constitutional right to hire counsel of their choice but the right is qualified in that it may be abridged to serve some compelling purpose." *Id.* (internal quotation marks omitted). Such compelling purpose includes "the fair, efficient and orderly administration of justice." *Id.* (citation omitted). "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat v. United States*, 486 U.S. 153, 160 (1988).

Klayman's Verified Petition discloses a "disciplinary case pending . . . in the District of Columbia." (Verified Pet. 2, ECF No. 166).  In his attachment describing the matter in more detail, Klayman explains that the "matter is likely to be resolved in my favor and there has been no disciplinary action." (*Id.* at 7).  The Court finds that this disclosure is misleading and incomplete.

On June 23, 2014, the District of Columbia Court of Appeals Board on Professional Responsibility received an Affidavit of Negotiated Disposition ("Affidavit") and signed Petition for Negotiated Discipline, attached to this Order as Exhibits 1 and 2, respectively.  The Petition for Negotiated Discipline relates to three different cases and contains three counts for violations, including Rule Governing the Florida Bar 4-1.9(a) and District of Columbia Rule of Professional Conduct 1.9 and 8.4(d). (Ex. 2 at 2–6).  This matter was resolved with an "Agreed Upon Sanction" of a "public censure." (*Id.* at 6).  The Petition for Negotiated Discipline is signed by Klayman. (*Id.* at 14).  Further, Klayman's Affidavit states: "I affirm that the stipulated facts in the accompanying petition and this affidavit are true and support the stipulated misconduct and the agreed upon sanction." (Ex. 1 ¶ 4).  These documents were not provided by counsel, and they are admissions of three separate incidents of stipulated misconduct that were not clearly disclosed in Klayman's Verified Petition.

Accordingly, Klayman's Verified Petition is denied without prejudice.  Should Klayman wish to file a new Verified Petition with the Court, the following information should be included: (1) the case numbers for the cases before Judge William D. Keller and Judge Denny Chin that resulted in these judges precluding Klayman's practice before them; (2) verification of the review by the Bar Associations of the District of Columbia and Florida finding that Klayman did not act unethically before Judges Keller and Chin; (3) an updated Certificate of

Good Standing from the Supreme Court of Florida;[1] (4) the Florida Bar Association's reprimand verifying that there was no showing of dishonesty in connection with their disciplinary action; (5) the Exhibits attached to this Order; and (6) verification that the matter in the District of Columbia disciplinary case referenced in the Verified Petition (Verified Pet. 7) has been resolved with no disciplinary action.

      **IT IS HEREBY ORDERED** that Petitioner Larry Elliot Klayman's Verified Petition (ECF No. 166) is **DENIED without prejudice**.

      **DATED** this __31__ day of March, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Court

---

[1] The Certificate of Good Standing from the Supreme Court of Florida attached to Klayman's Verified Petition is dated November 24, 2015, over five months ago. (Verified Pet. 12, ECF No. 166).

# EXHIBIT  1

**DISTRICT OF COLUMBIA COURT OF APPEALS**
**BOARD ON PROFESSIONAL RESPONSIBILITY**

| | |
|---|---|
| In the Matter of | : |
| | : |
|     **LARRY E. KLAYMAN, ESQUIRE,** | :     Bar Docket No. 2008-D048 |
| | : |
|     **Respondent** | : |
| | : |
| **Member of the Bar of the District of** | : |
|   **Columbia Court of Appeals** | : |
| **Bar Number: 334581** | : |
| **Date of Admission:  December 22, 1980** | : |
| | : |

**RECEIVED**

**JUN 2 3 2014**

**Board on Professional Responsibility**

## <u>AFFIDAVIT OF NEGOTIATED DISPOSITION</u>

I, Larry E. Klayman, affiant, pursuant to D. C. Bar Rule XI, §12.1(b)(2) and Board Rule 17.3(b), and in furtherance of my wish to enter into a negotiated disposition, declare as follows:

1.     I understand that I have the right to the assistance of counsel in this matter.  I am not represented by counsel.

2.     I am aware that there is currently pending a petition and specification of charges alleging misconduct, which is also set forth in the petition for negotiated discipline.

3.     I have carefully reviewed both the petition for negotiated discipline and this affidavit.

4.     I affirm that the stipulated facts in the accompanying petition and this affidavit are true and support the stipulated misconduct and the agreed upon sanction.

5.     I am agreeing to this negotiated discipline because I believe that I could not successfully defend against disciplinary proceedings based on the stipulated misconduct.

6.     I am freely and voluntarily entering into the negotiated disposition.  I am not being subjected to coercion or duress.

7.      I acknowledge that Bar Counsel has made no promises or inducements other than what is contained in the accompanying petition for negotiated discipline.

8.      I understand that the petition for negotiated discipline and this affidavit shall become public once they are filed with the Executive Attorney for the Board on Professional Responsibility, at which time all proceedings before the Hearing Committee shall become open to the public, and any exhibits introduced into evidence, any pleadings filed by the parties, and any transcript of the proceeding shall be available for public inspection.

9.      I am fully aware of the implications of this negotiated discipline including, but not limited to, that by entering into this negotiated discipline I am giving up the following rights:

(a)      My right to a contested hearing before a Hearing Committee at which I could cross-examine adverse witnesses and compel witnesses to appear on my behalf;

(b)      My right to require that Bar Counsel prove each and every charge by clear and convincing evidence;

(c)      My right to seek review of an adverse determination by a Hearing Committee by filing exceptions with the Board to the Hearing Committee's report and recommendations; and

(d)      My right to appeal to the District of Columbia Court of Appeals ("Court") by filing exceptions to the Board's report and recommendations.

10.     I understand that the negotiated disposition, if approved, may affect:

(a)      My present and future ability to practice law, and

(b)      My bar memberships in other jurisdictions.

2

11.     I understand that this negotiated disposition could be rejected by the Hearing Committee pursuant to D.C. Bar Rule XI, § 12.1(c) and Board Rule 17.7, or by the Court pursuant to D.C. Bar Rule XI, § 12.1(d).

12.     I understand that any sworn statement made by me in the petition for negotiated discipline, the accompanying affidavit, or the limited hearing may be used for purposes of impeachment at any subsequent hearing on the merits.

13.     I understand that the negotiated discipline proposes that, for my stipulated misconduct, I should receive a public censure.

14.     In mitigation of my misconduct, I submit the following:

(a)     I accept full responsibility for my misconduct;

(b)     I have fully cooperated with Bar Counsel; and

(c)     My conduct did not involve dishonesty or personal gain.

Larry E. Klayman, Esquire
Respondent

SUBSCRIBED and affirmed before me this 23rd day of June 2014.

My Commission Expires: _____        Notary Public

Larry E. Klayman, Esquire
Respondent

3

# EXHIBIT 2

**DISTRICT OF COLUMBIA COURT OF APPEALS**
**BOARD ON PROFESSIONAL RESPONSIBILITY**

| | |
|---|---|
| In the Matter of | : |
| | : |
|     **LARRY E. KLAYMAN, ESQUIRE,** | :   Bar Docket No. 2008-D048 |
| | : |
|     **Respondent** | : |
| | : |
| Member of the Bar of the District of | : |
|   Columbia Court of Appeals | : |
| Bar Number: 334581 | : |
| Date of Admission:  December 22, 1980 | : |
| | : |

**RECEIVED**

**JUN 2 3 2014**

**Board on Professional Responsibility**

## PETITION FOR NEGOTIATED DISCIPLINE

    Bar Counsel and Respondent, Larry E. Klayman, Esquire, agree to enter into a negotiated discipline pursuant to D.C. Bar Rule XI, § 12.1 and Board Rule 17.3.  Respondent is the subject of the above-referenced investigations by Bar Counsel pursuant to D.C. Bar Rule XI §§ 6(a)(2), 8(a) and Board Rule 2.1.

    Respondent is an attorney admitted to practice before the District of Columbia Court of Appeals, having been admitted on December 22, 1980.

## I.    STATEMENT OF THE NATURE OF THE MATTER

    This matter was docketed for investigation January 28, 2008, upon Bar Counsel's receipt and review of an ethical complaint filed by Mr. Thomas J. Fitton, President of Respondent's former client, Judicial Watch, reporting that Respondent engaged in a conflict of interest in three different matters.

## II.    STIPULATION OF FACTS AND CHARGES

    1.    From or about July 29, 1994, until September 19, 2003, Respondent, who founded Judicial Watch, served as the Chairman and General Counsel of Judicial Watch.  As General

Counsel, Respondent served as the organization's lead attorney and observed all legal matters associated with or affecting Judicial Watch.

A. **COUNT I**

2.     Sandra Cobas was formerly employed as the Director of Judicial Watch's Miami Regional Office.

3.     While employed with Judicial Watch, Ms. Cobas claimed she was in a hostile work environment.  The conduct she complained of occurred between June 5 through August 29, 2003, prior to the time that Respondent ended his employment as General Counsel of Judicial Watch.

4.     Also prior to ending his employment as General Counsel of Judicial Watch, Respondent was aware of Ms. Cobas's concerns giving rise to her claim of a hostile work environment, and was requested by Ms. Cobas to intercede.

5.     On or about August 25, 2005, Ms. Cobas filed a civil complaint against Judicial Watch through an attorney other than Respondent in the Circuit Court of the 11th Judicial Circuit in and for Miami, Dade County, Florida, styled *Cobas v. Fitton, et al*.  The lawsuit alleged, *inter alia*, a hostile work environment.

6.     On or about July 31, 2006, the trial court dismissed Ms. Cobas's case.

7.     Ms. Cobas's original attorney did not continue with the case.  On or about August 7, 2006, Respondent entered his appearance on behalf of Ms. Cobas.  Respondent did not seek or obtain Judicial Watch's consent to Respondent's representation of Ms. Cobas.  Respondent filed a motion with the trial court to vacate its order of dismissal.  The trial court denied the motion.

8.     On August 25, 2006, Respondent filed a Notice of Appeal on behalf of Ms. Cobas.

2

9.      On or about December 1, 2006, Respondent filed an appellate brief on behalf of Ms. Cobas with the Third District Court of Appeals for the State of Florida.

10.     On May 2, 2007, the appellate court affirmed the trial court's dismissal of Ms. Cobas's law suit.

11.     Respondent's conduct violated the following Rule Governing the Florida Bar:

> Rule 4-1.9(a), in that Respondent formerly represented a client in a matter and thereafter represented another person in the same or substantially related matter in which the person's interests were materially adverse to the interests of the former client, and the former client did not consent to the new representation.

## B. COUNT II

12.     In or about November, 2002, Judicial Watch initiated a campaign to raise funds to purchase a building in Washington, D.C., to serve as its headquarters ("Building Fund").

13.     On November 15, 2002, Respondent, as Chairman and General Counsel for Judicial Watch, directly solicited a donation from Louise Benson for the Building Fund.

14.     In or about December, 2002, in response to Respondent's solicitation, Ms. Benson pledged to donate $50,000 to Judicial Watch for the Building Fund.  Thereafter, Ms. Benson paid $15,000 of her $50,000 pledge to Judicial Watch.

15.     After Respondent left Judicial Watch in September 2003, Judicial Watch's management did not purchase a building for its headquarters.

16.     On or about April 12, 2006, Ms. Benson joined Respondent as a plaintiff in the matter styled, *Klayman, et al. v. Judicial Watch, et al.*, in the United States District Court for the District of Columbia. Respondent and   Ms. Benson alleged, *inter alia*, fraudulent misrepresentation, breach of contract, and unjust enrichment in connection with her donation to

Judicial Watch for the Building Fund. Both Respondent and Ms. Benson were represented by other counsel and had separate claims.

17.    On January 17, 2007, the District Court dismissed Ms. Benson's claims in *Klayman v. Judicial Watch* for lack of subject matter jurisdiction because the amount in controversy did not exceed $75,000, as required in federal diversity matters under 28 U.S.C. § 1332(a).

18.    On January 25, 2007, Ms. Benson filed a lawsuit, individually, against Judicial Watch in the Superior Court for the District of Columbia, alleging, *inter alia*, breach of contract, unjust enrichment, and fraudulent misrepresentation in connection with her donation to Judicial Watch for the Building Fund. That matter was styled, *Benson v. Judicial Watch, et al.*

19.    On or about May 29, 2007, Judicial Watch voluntarily returned $15,000 to Ms. Benson in settlement of her unjust enrichment claim.

20.    On June 15, 2007, Respondent entered his appearance as co-counsel for Ms. Benson in the *Benson v. Judicial Watch* matter. Respondent did not seek or obtain Judicial Watch's consent to the representation of Ms. Benson.

21.    On June 28, 2007, Judicial Watch filed a motion to disqualify Respondent as counsel for Ms. Benson, citing, *inter alia*, Respondent's ethical obligations to it pursuant to Rule 1.9.

22.    On August 24, 2007, the parties filed with the court a stipulation of dismissal of Ms. Benson's case.

23.    Respondent's conduct violated the following District of Columbia Rule of Professional Conduct ("DCRPC"):

> Rule 1.9, in that Respondent formerly represented a client in a matter and thereafter represented another person in the same or

substantially related matter in which the person's interests were materially adverse to the interests of the former client, and the former client did not consent to the new representation.

## C. COUNT III

24.     On or about March 20, 2001, Mr. Peter Paul retained Judicial Watch to evaluate his legal claims and defenses concerning his communications with certain law enforcement authorities in connection with his fundraising activities for the 2000 New York State Senate Campaign. The retainer agreement was executed by Mr. Paul and Respondent. Respondent signed the retainer agreement as the Chairman and General Counsel of Judicial Watch.

25.     On or about April 23, 2001, the March 20, 2001, retainer agreement was modified such that Judicial Watch undertook to provide legal representation for Mr. Paul for, *inter alia*, alleged criminal securities violations arising from his above-described fundraising activities. The modified retainer agreement further contemplated the pursuit of civil litigation on behalf of Mr. Paul. The modified retainer agreement was also executed by Mr. Paul and Respondent. Respondent signed the retainer agreement as the Chairman and General Counsel of Judicial Watch.

26.     In 2003, Judicial Watch filed a lawsuit on behalf of Mr. Paul, styled *Paul v. Clinton*, in the Los Angeles (California) Superior Court, and hired criminal defense counsel to defend Mr. Paul in connection with the criminal matter.

27.     On or about April 11, 2005, Judicial Watch withdrew from the representation of Mr. Paul in *Paul v. Clinton*. Judicial Watch also withdrew from the criminal matter.

28.     On or about February 5, 2007, Mr. Paul filed a lawsuit against Judicial Watch, alleging breach of contract, breach of fiduciary duty and unjust enrichment, based in part, upon Judicial Watch's withdrawal from the representation of Mr. Paul in the *Paul v. Clinton* matter,

5

allegedly in derogation of the retainer agreement(s).  That matter was styled *Paul v. Judicial Watch, et al.*, and filed in the United States District Court for the District of Columbia.

29.     On or about March 19, 2008, Respondent entered his appearance as counsel for Mr. Paul in the *Paul v. Judicial Watch* matter.  Respondent did not seek or obtain Judicial Watch's consent to the representation of Mr. Paul.

30.     On April 22, 2008, Judicial Watch filed with the court a motion to disqualify Respondent from representing Mr. Paul against it arguing, *inter alia,* Respondent's ethical obligations to them pursuant to Rule 1.9.

31.     On June 19, 2008, Respondent filed an opposition to Judicial Watch's motion to disqualify, and on June 25, 2008, Respondent filed a supplement to his opposition to Judicial Watch's motion to disqualify.

32.     On July 16, 2008, the District Court entered an order disqualifying Respondent as counsel for Mr. Paul for, *inter alia*, representing a client against a former client in the same or substantially related matter.

33.     Respondent's conduct violated the following DCRPC:

    a.  Rule 1.9, in that Respondent formerly represented a client in a matter and thereafter represented another person in the same or substantially related matter in which the person's interests were materially adverse to the interests of the former client, and the former client did not consent to the new representation; and

    b.  Rule 8.4(d), in that Respondent engaged in conduct that seriously interfered with the administration of justice.

## IV.     AGREED UPON SANCTION

The parties agree that the appropriate sanction in this matter is a public censure.

## V.    RELEVANT PRECEDENT

### A.    Conflict of Interest

Rule 4-1.9 of the Rules Governing the Florida Bar (the "RGFB") provides:

> "A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> > (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent."

DCRPC 1.9 which is virtually identical to RGFB 1.9(a) provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.

Comment [2] to DCRPC 1.9 provides pertinently:

> The scope of a "matter" for purposes of this rule may depend on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other client's with materially adverse interests clearly is prohibited.

Comment [3] to DCRPC 1.9 provides pertinently:

> Matter are "substantially related" for purposes of this Rule if they involved the same transaction or legal dispute or if there otherwise is a substantial risk that confidential information as would normally have been obtained in the prior representation would materially advance the client's position in a subsequent matter . . . . In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; *on the other hand, knowledge of specific facts gained in the prior representation that are relevant to the matter in question ordinarily will preclude such a representation . . .* [emphasis added].[1]

---

[1]    Comments [2] and [3] to RGFB, while different in some respects, nonetheless repeat substantially verbatim, the above-quoted text of Comments [2] and [3] to DCRPC 1.9.

**B.**     **Conduct That Seriously Interferes With the Administration of Justice**

Rule 8.4(d) provides that "[i]t is professional misconduct for a lawyer to engage in conduct that seriously interferes with the administration of justice."

To establish a violation of the rule, Bar Counsel must prove that Respondent's conduct was (1) improper; (2) bore directly upon the judicial process with respect to an identifiable a case or tribunal; and (3) tainted the judicial process in more than a de minimus way, *i.e.,* it had or potentially had an impact upon the process to a serious and adverse degree. *In re Hopkins*, 677 A.2d 55, 60-61 (D.C. 1996).   The Rule is violated, *inter alia,* where the attorney's conduct causes the unnecessary expenditure of time and resources in a judicial proceeding.   *In re Cole*, 967 A.2d 1264, 1266 (D.C. 2009).

## COUNT I - Cobas

Respondent violated RGFB 1.9.  Stipulations of Fact ("SOF") 1-10.  While Respondent served as General Counsel for Judicial Watch, Ms. Cobas, an employee of Judicial Watch, complained to him about her working in a "hostile work environment" in the Miami Region Office of Judicial Watch.   Indeed, Ms. Cobas directly requested Respondent to intercede in the matter.

Thereafter Ms. Cobas sued Judicial Watch in a Florida state court alleging, *inter alia,* a "hostile work environment."  Ms. Cobas's case was dismissed by the court.  No longer working for Judicial Watch, Respondent entered his appearance on behalf of Ms. Cobas in the matter and adverse to Judicial Watch before the trial court and an appellate court.   Respondent neither sought nor obtained the permission of Judicial Watch to represent Ms. Cobas against it.

## COUNT II - Benson

Respondent violated DCRPC 1.9.  SOF 1, 12-22.

8

As the Chairman and General Counsel for Judicial Watch, Respondent directly solicited a donation from Ms. Louise Benson for Judicial Watch's Building Fund.  In response to the solicitation, Ms. Benson remitted to Judicial Watch $15,000 of her $50,000 pledge.  Subsequent to Respondent's separation from Judicial Watch, the organization did not purchase the building.

Thereafter, Respondent and Ms. Benson became co-plaintiffs in a federal civil action against Judicial Watch.    In that case, Ms. Benson alleged, *inter alia*, fraudulent misrepresentation, breach of contract and unjust enrichment in connection with her donation to the Building Fund.  Ms. Benson's claims were dismissed by the United States District Court for the District of Columbia for lack of diversity.

Thereafter, Ms. Benson filed another lawsuit against Judicial Watch, individually, in the Superior Court for the District of Columbia, alleging, *inter alia*, fraudulent misrepresentation, breach of contract and unjust enrichment in connection with her donation to the Building Fund. Several months later, Respondent entered his appearance as co-counsel for Mr. Benson and adverse to Judicial Watch in the lawsuit.  Respondent did not seek or obtain the consent of Judicial Watch to represent Ms. Benson against it.

Judicial Watch filed a motion to disqualify Respondent from representing Ms. Benson against them, citing Respondent's ethical responsibilities to it under Rule 1.9.  The case was settled and dismissed before the trial court ruled on the motion.

## COUNT III - Paul

Respondent violated DCRPC 1.9 and 8.4(d).  SOF 1, 24-30.

As the Chairman and General Counsel for Judicial Watch, Respondent executed two retainer agreements with Mr. Peter Paul.  The agreements provided that Judicial Watch would provide legal representation for Mr. Paul in connection with alleged securities violations incident

to his fundraising activities. In 2003, Judicial Watch filed a lawsuit on behalf of Mr. Paul. In April 2005, Judicial Watch withdrew from the representation.

Thereafter, Mr. Paul through other counsel filed a lawsuit against Judicial Watch in the United States District Court for the District of Columbia alleging breach of contract and breach of fiduciary duty, based in part upon Judicial Watch's withdrawal from the representation and in derogation of the above-described retainer agreements.

On or about March 19, 2008, Respondent entered his appearance as counsel of record for Mr. Paul in the matter adverse to Judicial Watch. Respondent did not seek or obtain the consent of Judicial Watch to represent Mr. Paul against it.

Respondent was on notice since June 28, 2007, that Judicial Watch objected to his representation of clients against it when it filed the motion to disqualify him in the Benson matter. Nonetheless, ten months later Respondent again entered his appearance on behalf of Mr. Paul against Judicial Watch, and opposed his former client's motion to disqualify him from the case. On July 16, 2008, the court entered an order disqualifying Respondent from the case. Respondent's conduct was (1) improper; (2) bore directly upon the judicial process before the United States District Court for the District of Columbia; and (3) caused an unnecessary expenditure of the time and resources of the District Court.

## VI.   MITIGATION

Respondent has cooperated with Bar Counsel's investigation of this matter and has accepted responsibility for his misconduct. Respondent's misconduct did not involve dishonesty.

Respondent has been a member in good standing of the District of Columbia Bar continuously for nearly thirty-seven (37) years, and has never been disciplined in the District of

Columbia in any way or had his license suspended. In addition, Respondent is a public interest attorney who founded Judicial Watch and now Freedom Watch.

In these matters, Respondent stepped in to represent Ms. Cobas and Mr. Paul (Counts I and III) when their original attorneys no longer represented them, and they lacked the financial resources to pay for other counsel. A Hearing Committee may well find that Respondent believed, on the advice of counsel, that he did not have a conflict of interest in the Benson and Paul matters (Counts II and III). Respondent will testify that he did not realize a financial gain in representing Benson, Cobas, and Paul, and in fact represented these persons pro bono at his own time and expense. A Hearing Committee may well find that Respondent did so because he believed that Cobas and Paul would have no other recourse in their lawsuits against his former organization, Judicial Watch.

## VII.   AGGRAVATION

Witnesses for Judicial Watch would testify, and a Hearing Committee may well find that Respondent's decision to represent Cobas, Benson, and Paul against Judicial Watch was a product of ongoing acrimony in connection with his separation from Judicial Watch in 2003, and that those adverse representations were vindictive in nature. Witnesses for Judicial Watch would testify that Respondent did realize a financial gain in his representation of Cobas, Benson, and Paul because these lawsuits were featured in Respondent's fundraising campaign titled "Saving Judicial Watch."

## VIII.   PUBLIC CENSURE

The range of sanction for attorneys found to have engaged in a conflict of interest is from an Informal Admonition to a suspension from the practice of law. The parties have agreed that Respondent should receive a public censure for his misconduct in this matter.

11

In *In re Sofaer*, 728 A.2d 625 (D.C. 1999), the Court affirmed the report and recommendation of the Board that the attorney be informally admonished for violating the revolving door proscription of Rule 1.11(a).  In that matter, the attorney had served as Legal Advisor for the United States Department of State at the time that Pan American Flight 103 was downed over Lockerbie, Scotland, as a result of Libyan terrorism.  The attorney thereafter was retained by the government of Libya to represent it in connection with criminal and civil actions arising from the downing of the airplane.

In *In re Butterfield*, 851 A.2d 513 (D.C. 2004), the Court affirmed the report and recommendation of the Board that the attorney be suspended for 30 days, where the attorney engaged in a conflict of interest in violation of Rule 1.7(b)(1) and (2).  There, the attorney failed to conduct a conflict check that would have revealed that his new client matter was in conflict with an existing client of the firm.  After learning of the conflict, the lawyer failed to either obtain the appropriate consents or withdraw from the representation.

Longer suspensions from the practice of law have been imposed in cases where the conflict of interest were accompanied by other rules violations, including dishonesty.  *See In re Shay*, 756 A.2d 465 (D.C. 2000) (90-day suspension for conflict of interest and dishonesty);  *In re Jones-Terrell*, 712 A.2d 496 (D.C. 1998) (60-day suspension for conflict of interest along with other violations including dishonesty).

In this matter, Respondent has engaged in three separate violations of Rule 1.9, by representing parties against his former client.  Respondent may have arguably been unaware of his ethical obligations in connection with his representation of Sandra Cobas in Count I.  However, in Count II, which involved his representation of Louise Benson, Respondent was the subject of a motion to disqualify on the grounds that the representation was inconsistent with his

12

ethical obligations to his former client, Judicial Watch, in violation of Rule 1.9. Respondent did not immediately withdraw from the case, but instead opposed the motion. The underlying case was settled and dismissed before the trial court ruled on the motion to disqualify. In Count III, the Peter Paul representation, Respondent's 1.9 conflict of interest occurred approximately 10 months after the motion to disqualify him was filed in the Benson matter (Count II). In the Paul matter, Judicial Watch again filed a motion to disqualify Respondent, which Respondent opposed. The trial court granted Judicial Watch's motion and entered an order disqualifying Respondent from representing Mr. Paul in the matter.

In sum, Respondent violated Rule 1.9 on three separate occasions. Moreover, he did so intentionally and over his former client's objections in Counts II and III. Respondent also violated Rule 8.4(d) in Count III. Accordingly, Respondent's conduct is more serious than that in *Sofaer*. On the other hand, there is no evidence that Respondent was remunerated by Cobas, Benson, or Paul, for his services in these cases. Moreover, there is no evidence of dishonesty and Respondent has accepted responsibility for his misconduct. Accordingly, Respondent need not be suspended for his misconduct.

The parties agree that a public censure strikes the correct balance of protecting the public and deterring future misconduct.

**WHEREFORE,** the Office of Bar Counsel requests that the Executive Attorney assign a Hearing Committee to review the petition for negotiated disposition pursuant to D.C. Bar Rule XI, § 12.1(c).

13

Wallace E. Shipp Jr _by permission JP_

Wallace E. Shipp, Jr.
Bar Counsel

Larry E. Klayman, Esquire
Respondent

H. Clay Smith, III
Assistant Bar Counsel

OFFICE OF BAR COUNSEL
515 5th Street, N.W.
Building A, Room 117
Washington, D.C. 20001
(202) 638-1501

14