UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:16-cr-046-GMN-PAL |
| vs. ) | |
| ) | **ORDER** |
| CLIVEN D. BUNDY *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court is the Intervenors Las Vegas Review-Journal, Battle Born Media, and the Associated Press (the "Intervenors") Objections (ECF No. 620)[1] to Magistrate Judge Peggy A. Leen's Order on the Government's Motion for Protective Order ("Order on Motion") (ECF No. 608) and subsequent Protective Order (ECF No. 609). The Government filed a Response to the Objections. (ECF No. 640).[2]

---

[1] Also pending before the Court is the Intervenors' second Objection. (ECF No. 621). The first Objection (ECF No. 620) is docketed in reference to Judge Leen's Order on the Motion for Protective Order (ECF No. 608), while the second objection (ECF No. 621) is docketed in reference to the Protective Order (ECF No. 609). After comparing the two Objections (ECF Nos. 620, 621), the documents appear to be identical, making the second filing a duplicate. (*Compare* ECF No. 620 *with* ECF No. 621). Accordingly, the Court denies the Intervenors' second Objection (ECF No. 621) as redundant.

[2] The Intervenors subsequently filed a Motion for Leave to File a Reply to the Government's Response. (ECF No. 654). However, even if the Court were to permit a reply, it would have been due on August 28, 2016. (*See* text accompanying ECF No. 640); (*see also* Mot. for Leave to File Reply at 3 n.1, ECF No. 654). In their Motion, the Intervenors specifically note this date in footnote 1; however, they did not file their Motion until August 29, 2016. (*See* ECF No. 654). Accordingly, the Intervenors' Motion to File a Reply is denied as untimely.

Also pending before the Court are three Motions for Joinder (ECF Nos. 622, 629, 631) filed by Defendants Peter T. Santilli, Jr., Ammon E. Bundy, and Micah L. McGuire. None of these Motions for Joinder contain additional substantive argument. "The deadline to file and serve any objections to a magistrate judge's order is 14 days after service of the order." D. Nev. LR IB 3-1(a). Here, Judge Leen's Orders were filed and served electronically on July 15, 2016. (*See* ECF Nos. 608–09). On July 29, 2016, within the 14-day deadline, the Intervenors filed a Motion for Leave to File Objections, attaching their Objections. (ECF No. 616). The Court granted the Intervenors' Motion and ordered that the Intervenors shall file their Objections by August 11, 2016. (*See* ECF No. 619). The Intervenors filed their Objections on August 4, 2016, and all three joinders were

Also pending before the Court is Defendant Peter T. Santilli, Jr.'s ("Santilli's") Motion to Narrow the Protective Order. (ECF No. 698). Defendants Melvin D. Bundy, Steven A. Stewart, and Micah L. McGuire filed Motions for Joinder, none of which contain further substantive argument. (ECF Nos. 729, 744, 872). The Government filed a Response (ECF No. 893), and Santilli filed a Reply (ECF No. 909).

I. **BACKGROUND**

On March 2, 2016, a federal grand jury sitting in the District of Nevada returned a Superseding Indictment charging nineteen defendants with sixteen counts related to a confrontation with Bureau of Land Management (BLM) Officers in Bunkerville, Nevada, on April 12, 2014. (ECF No. 27). On April 26, 2016, this case was designated as complex within the meaning of 18 U.S.C. § 3161(h)(7)(B). (Case Mgmt. Order 8:4–13:8, ECF No. 321). Two defendants have since pled guilty and are set to be sentenced on December 15, 2016. (*See* ECF Nos. 645–46, 655–56). The remaining seventeen defendants are currently joined for trial beginning on February 6, 2017.[3]

On April 29, 2016, the Government filed a Motion for Protective Order. (ECF No. 354). The majority of the defendants filed oppositions or joinders to these oppositions. (*See* Order on Mot. for Protective Order ("Order on Mot.") 1:13 n.2, ECF No. 608). Further, the Court granted the Intervenors' Motion to Intervene (ECF No. 569), and the Intervenors subsequently also filed an opposition (ECF No. 570).

---

filed on or before August 11, 2016. (*See* ECF Nos. 620–22, 692, 631). Accordingly, the Court grants the Motions for Joinder. (ECF Nos. 622, 629, 631).

[3] Several motions to sever are pending before the Court, and the Court has indicated its intent to sever. (*See* Order on Gov't Mot. to Suppl. its Resps. to Defs.' Mots. to Sever 3:14–17, ECF No. 978) ("The court has reached the conclusion that it is simply not logistically possible to try all 17 defendants in a single trial. A severance will be ordered. The only remaining questions for the court to decide are how many trials should be ordered, and which defendants are appropriately tried together."). The Court set a briefing schedule, which has not yet elapsed. (*See id.* 4:8–11).

On July 15, 2016, Judge Leen issued an Order on the Government's Motion for a Protective Order, granting the motion to the extent that the Court would enter a protective order restricting access and dissemination of discovery the Government produces in this case. (Order on Mot. 23:5–7). However, Judge Leen declined to use the Government's proposed protective order (*Id.* 23:8–10), and instead she issued the current Protective Order (ECF No. 609). The Intervenors timely filed a Motion to File their Objections (ECF No. 616), which the Court granted (ECF No. 619). The Intervenors then timely filed the instant Objections. (ECF No. 620).

## II. LEGAL STANDARD

When reviewing the order of a magistrate judge, a district judge should only set aside the order if it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); D. Nev. R. IB 3-1(a). A magistrate judge's order is "clearly erroneous" if the court has "a definite and firm conviction that a mistake has been committed." *See Burdick v. Comm'r IRS*, 979 F.2d 1369, 1370 (9th Cir. 1992). When reviewing the order, however, the magistrate judge "is afforded broad discretion, which will be overruled only if abused." *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007) (citation omitted). The district judge "may not simply substitute its judgment" for that of the magistrate judge. *Grimes v. City & Cty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).

## III. DISCUSSION

The Intervenors asserts several objections to Judge Leen's Order on the Motion for Protective Order and subsequent Protective Order. (Intervenors' Obj., ECF No. 620). First, the Intervenors object to Judge Leen's finding that the Government established good cause for the entry of a Protective Order. (*Id.* 9:8–9). Specifically, the Intervenors take issue with Judge Leen's finding that the Government's examples of potential witness danger constituted good cause. (*Id.* 11:7–13:10). The Intervenors also object to the Protective Order's requirement that

protected materials be automatically filed under seal without a "particularized showing of good cause for each [specific] document." (*Id.* 13:11–14:22).  Finally, the Intervenors "believe that [Judge Leen] failed to consider . . . the First Amendment implications of any effort by any party to shield documents from public view." (*Id.* 15:6–9).

    A.  *No Presumptive Right of Access to Discovery*

The Intervenors argue that "the law of this circuit and the common law start with a strong presumption in favor of access to court records." (Intervenors' Obj. 13:23–24) (citation and internal quotation marks omitted).  However, the U.S. Supreme Court has long held that there is no common law or First Amendment public right of access to **discovery** information, let alone any presumption of a right to access. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 36 (1984).  The qualified First Amendment right of access to judicial proceeding and documents simply does not extend to discovery materials. *Id.* at 37.  There is no general right of access to information a government official knows, but has not released to the public. (*See* Order on Mot. 14:23–28) (citing *United States v. Blagojevich*, 612 F.3d 558, 562 (7th Cir. 2010); *L.A. Police Dep't v. United Reported Publ'g Co.*, 528 U.S. 32, 40 (1999) (no First Amendment right to names and addresses of arrested individuals); *Houchins v. KQED, Inc.*, 438 U.S. 1 (1978) (no First Amendment right to enter a county jail, interview inmates, and take pictures)).  Materials from criminal investigations are not "judicial records under federal law, the public has no presumptive right of access to them." *United States v. Loughner*, 807 F. Supp. 2d 828, 834 (D. Ariz. 2011); *see also Rhinehart,* 467 U.S. at 33 ("[R]estraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."); *United States v. Anderson,*799 F.2d 1438, 1441 (11th Cir. 1986) ("Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation.").

*B. Good Cause*

Federal Rule of Criminal Procedure 16 governs discovery and provides for the option of a protective order: "At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). "Good cause exists 'when a party shows that disclosure will result in a clearly defined, specific and serious injury.'" *United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2013) (quoting *In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006)). Establishing such an injury amounting to good cause requires "a particular factual demonstration of potential harm, not [only] conclusory statements." *Id.* (citations omitted).

The Intervenors argue that Judge Leen incorrectly determined the twenty-two examples provided by the Government demonstrated good cause. (*See* Intervenors' Obj. 12:14–13:4). However, the Intervenors arguments seem to incorrectly confuse and replace the need to simply demonstrate good cause with a higher standard of establishing a true threat. In reference to the Government's twenty-two examples, the Intervenors argue:

> [T]hese sorts of statements, however, do not constitute threats. Instead, they are simply protected expression of some individuals' frustration with what they believe to be acts of government overreaching. At most, the magistrate judge's examples of threatening speech are vague and predictive, and therefore not threats as defined by either the Supreme Court or the Ninth Circuit. Accordingly, the magistrate judge erred in finding the government established good cause for a protective order.

(*Id.* 12:27–13:4). Under the highly deferential clear error standard, a district court should affirm a magistrate judge's factual determinations unless it is "left with the definite and firm conviction that a mistake has been committed." *See Burdick*, 979 F.2d at 1370. The Intervenors proffer nothing but assumptions and conjecture about whether true threats were made as opposed to idle threats. This speculation does not refute Judge Leen's finding of good cause, let alone demonstrate clear error.

This Court finds that Judge Leen applied the correct legal standard in finding that the Government satisfactorily demonstrated good cause based on "a sufficient threshold showing of actual and potential threats, intimidation, and harassment to victims, witnesses, and law enforcement officers." (Order on Mot. 20:22–23). Judge Leen carefully explained how she evaluated the Government's twenty-two examples and found they demonstrated good cause: social media and online posts sharing personal identifying information of the law enforcement and other witnesses in this case including names, pictures, phone numbers and addresses – some encouraging defendants' supporters to contact them in way that could be construed as threatening or intimidating. (*See id.* 6:19–8:21, 20:24–21:2). In one example, a BLM Chief Ranger received over 500 threatening and harassing phone calls after his personal contact information was posted on social media. (*Id.* 7:10–14). Threats of violence included vulgarity and death threats. (*See, e.g.*, *id.* 7:14–8:1). One supporter has already pled guilty to threatening a law enforcement officer and transmitting a threatening communication. *United States v. Michael*, Case No. 5:15-cr-00086-MSG (E.D. Pa. 2016). Government prosecutors have also been named in a post calling for a lone wolf attack and exclaiming the joy it will be to see the prosecutor hang or burn for treason. (Order on Mot. 8:8–12). Judge Leen found that the Government had demonstrated a "credible risk that public disclosure of broad discovery the government has agreed to produce . . . may be used for the improper purpose of threatening, intimidating, or influencing potential witnesses, or, at a minimum, chilling their willingness to testify." (*Id.* 20:26–21:2). This Court agrees that the Government has established a "particular factual demonstration of potential harm" based on the pattern of conduct by defendants' supporters. *See Smith*, 985 F. Supp. 2d at 523. The Court finds a credible risk exists that these supporters will continue to resort to the intimidation of victims, witnesses, and law enforcement by public ridicule, harassment, and threats of violence. This credible risk establishes good cause as it shows disclosure will result in a "clearly defined, specific, and serious injury"

causing economic or physical harm if the identity of the victims, witnesses, or law enforcement officers are revealed. *See id.*

C. *Particularized Showing*

The Intervenors also assert that "contrary to established Ninth Circuit precedent, the magistrate judge's order requires the parties to submit confidential documents under seal without requiring the submitting party to make a particularized showing that good cause exists to seal each particular document." (Intervenors' Obj. 9:3–6). However, a broad protective order shielding confidential information does not offend the First Amendment as long as it is "entered on a showing of good cause as required by Rule 26(c)," is limited to pretrial discovery, and "does not restrict the dissemination of the information if gained from other sources." *Rhinehart,* 467 U.S. at 37. Here, the Protective Order clearly applies only to pretrial discovery and defines confidential documents narrowly to exclude anything within the public domain. (Protective Order 1:20–24). Further, in her Order, Judge Leen already found good cause for the documents identifying victims, witnesses and law enforcement to be deemed confidential. (*See* Order on Mot. 6:19–8:21, 20:24–21:2).

The Intervenors fail to explain why an additional particularized showing of good cause in each instance should be required.[4] To the contrary, such a requirement would seem to be an inefficient, duplicitous endeavor causing unnecessary delay. *See United States v. Bulger*, 283 F.R.D. 46, 53 n.11 (D. Mass. 2012) (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1123 nn.18–19 (3rd Cir. 1986) (explaining that a protective order is "particularly useful in cases involving large-scale discovery" because it "expedite[s] the flow of discovery and

---

[4] Indeed, after demonstrating good cause exists, the protective order "extend[s] broad protection to all documents produced . . . without a showing of good cause for confidentiality as to any individual documents." *United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass. 2012); *see also Armour of Am. v. United States*, 73 Fed. Cl. 597, 599 (2006) (collecting cases that support broad protective orders, "particularly in complex cases or cases involving large-scale discovery, upon a threshold showing of good cause by the party seeking protection.").

1   avoid[s] the time consuming, inefficient process of a document by document [sic] review.").[5]
2   Nevertheless, the Protective Order permits the parties to stipulate to modify the order or
3   petition the Court if the parties cannot agree to the requested disclosure. (*See* Protective Order
4   4:15–17); (*see also* Order on Mot. 21:11–12).

   D. Redaction

   The Intervenors claim that "the magistrate judge ignores that there are other, less restrictive alternatives which would adequately protect witnesses and law enforcement while still respecting the public's interest in this case." (Intervenors' Obj. 13:5–7). Their Objection further complains that "the magistrate judge's order fails to consider that redaction of identifying information—including the faces, names, phone numbers, and addresses—of witnesses and law enforcement officers is a practical alternative to a total ban on the dissemination of discovery materials." (*Id.* 13:7–10).

   Judge Leen clearly considered alternatives and deemed them impractical. (*See* Order on Mot. 21:3–10). This is a complex case with over 1.4 Terabytes of digital information, including hundreds of hours of audio and video recordings, along with at least 23 social media search warrant returns, consisting of over 250,000 pages of digital documents. (*See id.* 21:4–6); (Gov't Resp. to Obj. 5:1–3, ECF No. 640); (*see also supra* 2:10–11). In its Response, the Government explains that requiring it to complete another review of this information for redaction purposes is time consuming and would delay the production of discovery. (Gov't Resp. to Obj. 3:8–20). This Court agrees that, under these circumstances, there is a risk that redaction would lead to a waste of resources, delay, confusion, unintentional violations, and

---

[5] This case has been designated as complex. (*See supra* 2:10–11). "In cases of unusual scope and complexity . . . broad protection during the pretrial stages of litigation may be warranted without a highly particularized finding of good cause." *In re Terrorist Attacks*, 454 F. Supp. 2d at 222. Judge Leen specifically found that "this is a case of unusual scope and complexity which involves in excess of 1.4 terabytes of digital discovery as well as voluminous paper discovery . . . [As such, the] court lacks the time or resources to review this volume of discovery to make findings on a document-by-document basis." (Order on Mot. 21:4–10).

collateral litigation.  As Judge Leen aptly explained, "Protective orders are routinely entered to facilitate the parties' discovery exchanges precisely so that precious time and effort better spent on the merits of their claims and defenses is not wasted on protracted collateral litigation on whether individual documents are entitled to protection." (Order on Mot. 21:6–9).  The current Protective Order will promote the timely, efficient, and expeditious production of voluminous discovery information while preventing inadvertent dissemination of the information.  The Court is satisfied that the Protective Order does not offend the First Amendment, as it comports with the *Rhinehart* court's requirements of demonstrated good cause, limited to pretrial discovery, and restricted to only confidential information by expressly excluding information and documents in the public domain. (Protective Order 1:20–24); *see also Rhinehart*, 467 U.S. at 37.

Accordingly, the Intervenors' Objections (ECF No. 620) regarding the Order on Motion for Protective Order (ECF No. 608) and Protective Order (ECF No. 609) are overruled.

As the Court has determined that the current Protective Order is appropriate, Santilli's Motion to Narrow the Protective Order (ECF No. 698) and the related Motions for Joinder (ECF Nos. 729, 744, 872) are denied as moot.[6]

## IV.     CONCLUSION

**IT IS HEREBY ORDERED** that the Intervenors' Objections (ECF No. 620) are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Intervenors' Objections (ECF No. 621) are **DENIED**.

---

[6] The Court notes that this motion was not styled as an Objection.  If it had been an objection, it would clearly be untimely, as it was filed on September 30, 2016, over a month after the Court-imposed deadline.  Further, as the Government explains in its Response, if the Court were to construe this motion as a request for modification, then Santilli failed to comply with the Protective Order's requirement to "meet and confer." (Gov't Resp. to Santilli Mot. to Narrow 4:4–11); (Protective Order 4:18–20).

**IT IS FURTHER ORDERED** that the Motions for Joinder (ECF Nos. 622, 629, 631) are **GRANTED**.

**IT IS FURTHER ORDERED** that the Intervenors' Motion for Leave to File a Reply to the Government's Response (ECF No. 654) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Santilli's Motion to Narrow the Protective Order (ECF No. 698) and related Motions for Joinder (ECF Nos. 729, 744, 872) are **DENIED as moot**.

**DATED** this  30   day of November, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Court