UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br><br>    v.<br><br>CLIVEN D. BUNDY<br><br>                         Defendant. | Case No. 2:16-cr-00046-GMN-PAL<br><br>**ORDER**<br>-and-<br>**REPORT OF FINDINGS AND<br>RECOMMENDATION**<br><br>(Mot. Dismiss – ECF No. 891) |

Before the court is Defendant Cliven D. Bundy's ("Cliven Bundy") Motion to Dismiss for Violation of the Speedy Trial Act Pursuant to 18 U.S.C. §§ 3161, 3162, and the Sixth Amendment to the U.S. Constitution and/or For Denial of Right to Counsel (ECF No. 891) which was referred for a Report of Findings of Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB1-4 of the Local Rules of Practice. The court has considered the Motion, the Government's Consolidated Response (ECF No. 984), and Cliven Bundy's Reply (ECF No. 1036). Also before the court is Cliven D. Bundy's Second Motion to Continue Rule 12 Motion Filing Deadline (ECF No. 889).

## BACKGROUND

### I.      The Indictment

Defendant Cliven Bundy and 18 co-defendants are charged in a Superseding Indictment (ECF No. 27) returned March 2, 2016. Cliven Bundy is charged in 16 counts with:

- Count One – Conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371. This charge arises from conduct that allegedly occurred sometime between March of 2014 and March 2, 2016.
- Count Two – Conspiracy to impede or injure a federal officer in violation of 18 U.S.C. § 372. This charge arises from conduct that allegedly occurred sometime between March of 2014 and March 2, 2016.

1

- Count Three – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2.  This charge arises from conduct that allegedly occurred sometime between March of 2014 and March 2, 2016.

- Count Four – Assault on a federal officer in violation of 18 U.S.C. § 111(a)(1), (b) and § 2. This charge arises from conduct that allegedly occurred on April 9, 2014.

- Count Five – Assault on a federal officer in violation of 18 U.S.C. § 111(a)(1), (b) and § 2. This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Six – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Seven – Threatening a federal law enforcement officer, in violation of 18 U.S.C. § 115(a)(1)(B) and § 2.  This charge arises from conduct that allegedly occurred on April 11, 2014.

- Count Eight – Threatening a federal law enforcement officer in violation of 18 U.S.C. § 115(a)(1)(B) and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Nine – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Ten – Obstruction of the due administration of justice in violation of 18 U.S.C. § 1503 and § 2.   This charge arises from conduct that allegedly occurred on April 6, 2014.

- Count Eleven – Obstruction of the due administration of justice in violation of 18 U.S.C. § 1503 and § 2.  This charge arises from conduct that allegedly occurred on April 9, 2014.

- Count Twelve – Obstruction of the due administration of justice in violation of 18 U.S.C. § 1503 and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Thirteen – Interference with interstate commerce by extortion in violation of 18 U.S.C. § 1951 and § 2.  This charge arises from conduct that allegedly occurred between April 2, 2014, and April 9, 2014.

- Count Fourteen – Interference with interstate commerce by extortion in violation of 18 U.S.C. § 1951 and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Fifteen – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Sixteen – Interstate travel in aid of extortion in violation of 18 U.S.C. § 1952 and § 2.  This charge arises from conduct that allegedly occurred sometime between April 5, 2014 and April 12, 2016.

The Superseding Indictment (ECF No. 27) in this case arises out of a series of events related to a Bureau of Land Management ("BLM") impoundment of Cliven Bundy's cattle

2

1   following a two-decade-long battle with the federal government.  Beginning in 1993, Cliven

2   Bundy continued to graze cattle on land commonly referred to as the "Bunkerville Allotment"

3   without paying required grazing fees or obtaining required permits.  The United States initiated

4   civil litigation against Cliven Bundy in 1998 in the United States District Court for the District of

5   Nevada.  The court found that Cliven Bundy had engaged in unauthorized and unlawful grazing

6   of his livestock on property owned by the United States and administered by the Department of

7   the Interior through the BLM.  The court permanently enjoined Cliven Bundy from grazing his

8   livestock on the Allotment, ordered him to remove them, and authorized the BLM to impound any

9   unauthorized cattle.  Bundy did not remove his cattle or comply with the court's order and

10  injunction. The United States went back to court.  Subsequent orders were entered in 1999 and

11  2013 by different judges in this district permanently enjoining Bundy from trespassing on the

12  Allotment and land administered by the National Park Service ("NPS") in the Lake Mead National

13  Recreation Area,[1] ordering Bundy to remove his cattle, and explicitly authorizing the United States

14  to seize, remove, and impound any of Bundy's cattle for future trespasses, provided that written

15  notice was given to Bundy.

16          On February 17, 2014, the BLM entered into a contract with a civilian contractor in Utah

17  to round up and gather Bundy's trespass cattle.  BLM developed an impoundment plan to establish

18  a base of operations on public lands near Bunkerville, Nevada, about 7 miles from the Bundy ranch

19  in an area commonly referred to as the Toquop Wash.  On March 20, 2014, BLM also entered into

20  a contract with an auctioneer in Utah who was to sell impounded cattle at a public sale.  Bundy

21  was formally notified that impoundment operations would take place on March 14, 2014.  The

22  following day, Bundy allegedly threatened to interfere with the impoundment operation by stating

23  publicly that he was "ready to do battle" with the BLM, and would "do whatever it takes" to protect

24  "his property."  The superseding indictment alleges that after being notified that BLM intended to

25  impound his cattle, Bundy began to threaten to interfere with the impoundment operation, and

26

27  _____

28  [1] By 2012, Bundy's cattle had multiplied and he also began grazing his cattle on land administered by the
    NPS in the Lake Mead National Recreation Area without obtaining grazing permits or paying grazing fees.

made public statements he intended to organize people to come to Nevada in a "range war" with BLM and would do whatever it took to protect his cattle and property.

The superseding indictment alleges that, beginning in March 2014, the 19 defendants charged in this case planned, organized, conspired, led and/or participated as followers and gunmen in a massive armed assault against federal law enforcement officers to threaten, intimidate, and extort the officers into abandoning approximately 400 head of cattle owned by Cliven Bundy. The removal and impoundment operation began on April 5, 2014.  On April 12, 2014, defendants and hundreds of recruited "followers" executed a plan to recover the cattle by force, threats, and intimidation.  Defendants and their followers demanded that officers leave and abandon the cattle and threatened to use force if the officers did not do so.  The superseding indictment alleges armed gunmen took sniper positions behind concrete barriers and aimed their assault rifles at the officers. Defendants and their followers outnumbered the officers by more than 4 to 1, and the potential firefight posed a threat to the lives of the officers, as well as unarmed bystanders which included children.  Thus, the officers were forced to leave and abandon the impounded cattle.

After the April 12, 2014 confrontation with federal officers, the superseding indictment alleges that the leaders and organizers of the conspiracy organized armed security patrols and check points in and around Cliven Bundy's Bunkerville ranch to deter and prevent any future law enforcement actions against Bundy or his co-conspirators, and to protect Bundy's cattle from future law enforcement actions.

## II.    Procedural History

Cliven Bundy was initially arrested on February 11, 2016, in the District of Oregon on a criminal Complaint (ECF No. 1) and warrant issued in this district.  An Indictment (ECF No. 5) was returned February 17, 2016, charging Bundy and co-defendants Ryan Bundy, Ammon Bundy, Ryan Payne, and Peter Santilli with 16 felony counts.  A Superseding Indictment (ECF No. 27) was returned March 2, 2016.  All 19 defendants made their appearances in this case in this district between March 4, 2016, and April 15, 2016.  At the initial appearance of each defendant, the government stated its position that this was a complex case that would require special scheduling review.  All 19 defendants are currently joined for trial pursuant to the provisions of the Speedy

Trial Act, 18 U.S.C. §§ 3161–3174 ("Speedy Trial Act" or "STA").  All 19 defendants have been detained pending trial.

In an Order (ECF No. 198) entered March 25, 2016, the court directed the parties to meet and confer as required by LCR 16-1 to discuss whether this case should be designated as complex, and, if so, to attempt to arrive at an agreed-upon complex scheduling order addressing five specified topics for discussion.  The order gave the parties until April 18, 2016, to file a stipulated proposed complex case schedule if all parties were able to agree, or if they were not, to file a proposed schedule with supporting points and authorities stating each party's position with respect to whether or not the case should be designated as complex, a proposed schedule for discovery, pretrial motions, and trial, and any exclusions of time deemed appropriate under the STA.

A Proposed Complex Case Schedule (ECF No. 270) was filed on April 18, 2016.  In it, the government and 13 of the 19 defendants agreed that the case should be designated as complex. The 13 defendants who stipulated to the proposed schedule included: Cliven Bundy, Mel Bundy, Dave Bundy, Blaine Cooper, Gerald Delemus, O. Scott Drexler, Richard Lovelien, Steven Stewart, Todd Engel, Gregory Burleson, Joseph O'Shaughnessy, Micah McGuire and Jason Woods.  Three defendants, Ammon Bundy, Peter Santilli, and Brian Cavalier, indicated that they would "defer the decision to agree or disagree, pending further consultation with counsel and/or have taken no position as to the filing of this pleading."  Three defendants, Ryan Bundy, Eric Parker, and Ryan Payne, disagreed that the case should be designated as a complex case "to the extent time is excluded under the STA."

The same 13 defendants who initially stipulated that the case should be designated as complex, agreed that the May 2, 2016 trial date should be vacated, and that the trial in this matter should be set on the first available trial track beginning "in or around February 2017."  Three defendants, Ammon Bundy, Peter Santilli, and Brian Cavalier, "deferred the decision to agree or disagree about a trial date pending further consultation with counsel, or have not taken a position."

The 13 defendants who stipulated the case should be designated as complex and a trial date set in February 2017, stipulated "that all time from the entry of Defendants' pleas in this case until the trial of this matter is excluded for purposes of the STA pursuant to 18 U.S.C. § 3161(h)(7)(A)

as the ends of justice outweigh the interest of the public and the defendants in a speedy trial." Ammon Bundy, Peter Santilli and Brian Cavalier "deferred the decision to agree or disagree about the exclusion of time, pending further consultation with counsel, or have taken no position on the matter." Ryan Bundy stated he disagreed "to the extent any exclusion of time denies him the right to a speedy trial under the STA." Eric Parker stated he disagreed "with no further position stated." Ryan Payne stated he disagreed "with the exclusion of time to the extent it denies him the right to a speedy trial under the STA."

The court held a scheduling and case management conference on April 22, 2016, to determine whether this case should be designated as complex. Eighteen of the nineteen defendants appeared with their counsel. Defendant Ryan Bundy appeared pro se with standby counsel, Angela Dows. At the scheduling and case management conference on April 22, 2016, many of the defendants who had initially stipulated to the complex case schedule and a February 2017 trial date, changed positions. The positions of each of the defendants were stated on the record at the hearing and memorialized in the court's Case Management Order (ECF No. 321) entered April 26, 2016. The court found the case was a complex case within the meaning of 18 U.S.C. § 3161(h)(7)(B)(ii), and set the trial for February 6, 2017. The case management order made findings concerning why this case was deemed complex within the meaning of 18 U.S.C. § 3161(h)(7)(B), and the court's findings on exclusion of time for purposes of the STA. The case management order also set deadlines for filing motions to sever, motions for filing pretrial motions and notices required by Rule 12, and LR 12(1)(b). No defendant filed objections to the determination that this case was complex, the court's Speedy Trial Act tolling and exclusion findings, or any other provision of the court's case management order.

### III.   The Parties' Positions

#### A.   The Motion to Dismiss

Cliven Bundy seeks an order dismissing the indictment in this case against him pursuant to 18 U.S.C. § 3162(a)(2) for violation of the Speedy Trial Act. He also argues the superseding indictment should be dismissed because he has been denied counsel of his choice for his criminal legal defense team for the past eight months. He argues he has lost eight months of trial preparation

and the trial is scheduled for only four months from now.  At the time the motion was filed, he was in the process of obtaining new counsel to replace Joel Hansen after the court barred his additional counsel of choice, Larry Klayman.  He argues that the district judge did not provide a valid basis for refusing to admit Mr. Klayman *pro hac vice*.  Time is ticking for Cliven Bundy to have a defense team in place.  The court set a deadline for filing motions which passed before Cliven Bundy could confirm substitute counsel for Mr. Hansen who was forced to withdraw for health reasons.  Although the court granted an extension of the deadline for filing motions to accommodate substitute counsel, the absence of Mr. Klayman has severely handicapped Bundy's defense and forced new counsel to "scramble to familiarize himself with this complex case in less than a week prior to the October 17, 2016 motion filing deadline."

The court's denial of Mr. Klayman's pro hac vice application, Bundy argues, has denied him of his Sixth Amendment right to counsel of his choice, and defects in his prosecution resulting from the lack of a criminal defense team of his choosing cannot be remedied on appeal.  The court should therefore dismiss the superseding indictment for violation of his Sixth Amendment rights to counsel of his own choosing.

Bundy also asks the court dismiss the superseding indictment because the trial in this case is set for February 2017, more than a year after his arrest, and far in excess of the 70 days after the superseding indictment was filed against him.  Under 18 U.S.C. § 3161, a trial is required to commence within 70 days from the filing of the information or indictment, or from the date the defendant first appeared before a judicial officer of the court in which the charge is pending, whichever occurs last.  Trial is scheduled to take place at least 327 days after his arraignment on March 10, 2016.  The delay in bringing this case to trial was made at the prosecutor's request.  Although at first defense counsel for many of the 19 defendants acquiesced to the delay in trial, and to designate the case as complex, the conduct of the government prosecutors caused them to revoke their consent and demand a speedy trial.

Bundy argues that none of the exclusions or exceptions to 18 U.S.C. § 3161(d)-(k) apply in this case.  Therefore, 18 U.S.C. § 3162(a)(2) mandates dismissal of the charges.

The Ninth Circuit has held that a one-year delay is presumptively prejudicial. Bundy also argues that he is entitled to dismissal of the superseding indictment for violation of his Sixth Amendment right to a speedy trial. He argues he can meet the four-factor test the Supreme Court articulated in *Barker v. Wingo*, 407 U.S. 514 (1972). He was indicted in February 2016, and trial has been set for February 2017, a year after his indictment and arrest. The delay is wholly attributable to the government and Mr. Bundy has not done anything to cause delay outside of filing a single pro hac vice motion which was still on appeal to the Ninth Circuit at the time this motion was filed. The delay has severely prejudiced him because he has been in "solitary confinement and will continue to be confined in that manner." The court should therefore dismiss the superseding indictment with prejudice against refiling charges in the future.

**B. The Government's Consolidated Response**

The government filed a single response to Cliven Bundy's Motion to Dismiss for Violations of the Speedy Trial Act and Second Motion for a Continuance of the Deadline for Filing Rule 12 Motions. The government argues that Bundy is taking inconsistent positions by claiming violations of his Sixth Amendment right to counsel and violations of the Speedy Trial Act while at the same time arguing he needs more time to file pretrial motions. The government opposes any further enlargement of time to file pretrial motions.

Following a case management hearing on April 22, 2016, the court entered a case management order, which vacated the May 2, 2016 trial setting and set the trial for February 6, 2017, for all of the defendants. The order made specific findings regarding exclusions of time under the Speedy Trial Act, excluding all of the time between arraignment and the February 2017 trial date. The case management order also set dates for production of discovery and pretrial motions. On July 6, 2016, Bundy filed an emergency petition with the Ninth Circuit for a writ of mandamus requesting that the district court be ordered to admit Klayman pro hac vice. On September 23, 2016, Joel Hansen filed a motion to withdraw as counsel stating his health concerns and need to schedule surgery near the time of trial would interfere with his ability to represent Mr. Bundy.

1     The court held a hearing on the motion to withdraw on September 29, 2016, at which both
2  Mr. Hansen and Mr. Bundy were present.  Attorney Warren Markowitz was present at defense
3  counsel table as a potential replacement for Mr. Hansen.  The court granted Hansen's motion to
4  withdraw subject to a 30-day transition period.  Counsel for Mr. Bundy requested a two-week
5  extension of time to file his pretrial motions which were then due on October 3, 2016, indicating
6  there was one substantive motion he expected to file on Bundy's behalf.  The court granted this
7  request and extended the deadline to October 17, 2016, and also granted Mr. Bundy two weeks to
8  obtain new counsel.  On October 12, 2016, the day before the hearing to confirm new counsel,
9  Attorney Hansen sent the court a letter advising that Attorney Bret Whipple would be making an
10 appearance as co-counsel during the 30-day period in which attorney Hansen would continue to
11 represent Bundy.
12     On October 13, 2016, Mr. Hansen did not appear.  However, attorney Bret Whipple
13 appeared with Mr. Bundy representing he was entering an appearance for the limited purpose of
14 assisting in the filing of pretrial motions.  Cliven Bundy did not submit a financial affidavit as the
15 court directed if he intended to request court-appointed counsel.  An unsigned financial affidavit
16 that had been submitted on his behalf was reviewed and the court indicated it did not appear he
17 qualified for court-appointed counsel based on his significant assets.  After canvassing Bundy and
18 Attorney Whipple, the court continued the hearing until October 21, 2016, to allow Mr. Bundy and
19 Mr. Whipple to finalize a retention agreement.  The court reminded Mr. Bundy that he needed to
20 resolve this issue because the case was currently set for trial with his co-defendants who were
21 asserting their right to go to trial as currently scheduled.  Mr. Whipple advised the court that he
22 felt comfortable he would be able to meet the motion deadline of October 17, 2016, as Mr. Bundy
23 had been provided with a copy of a draft motion for his final approval.  These two motions were
24 filed October 17, 2016.
25     At the continued October 21, 2016 hearing to confirm counsel, Attorney Jeb Bond appeared
26 for Mr. Whipple on Mr. Bundy's behalf.  Mr. Bundy was present.  During the hearing, Attorney
27 Bond represented to the court that negotiations for retention were nearly complete.  The court
28 granted counsel's request for a continuation of the hearing until October 26, 2016, to enable

counsel to finalize their agreement.  On October 24, 2016, Attorney Whipple filed a Notice of Attorney Appearance in which he stated he had been retained by Cliven Bundy "for the purpose of full representation through the duration of trial."  The court therefore vacated the October 26, 2016 hearing.

On October 28, 2016, the Ninth Circuit denied Bundy's request for a writ of mandamus to grant Klayman's pro hac vice petition.  Cliven Bundy filed an emergency petition requesting a hearing en banc.  In the emergency petition, Bundy filed a declaration under penalty of perjury stating that although Bret Whipple had entered an appearance, he had not finalized his retention of him, and he had not yet been paid a retainer.

The government argues that Bundy has not been denied any Sixth Amendment right to counsel based on the court's denial of the pro hac vice application, which the Ninth Circuit has now affirmed.  The Ninth Circuit found that Mr. Klayman's extensive history of egregious conduct was more than sufficient to deny his petition to appear pro hac vice in this case, and that no Sixth Amendment violation occurred.

The government also asserts that there has been no violation of Bundy's Sixth Amendment right to a speedy trial.  The February 6, 2017 trial date is presumptively timely under the Sixth Amendment.  Bundy was arrested February 11, 2016, and his trial will proceed February 6, 2017, less than one year from his arrest.  The trial date comports with the Speedy Trial Act, which recognizes that criminal prosecutions vary widely and there are valid reasons for greater delay in particular cases.  The case management order in this case excluded all time between the arraignment of the last co-defendant, and the currently scheduled trial date of February 6, 2017, citing the exclusions under 18 U.S.C. §§ 3161(h)(7)(A) and (h)(8)(B)(1)(i) and (ii).  Bundy's motion to dismiss ignores these findings and fails to acknowledge that his own petition for a writ of mandamus has, alone, tolled all time between July 6, 2016, and the date the government's response was filed under 18 U.S.C. § 3161(h)(1)(C).

The government maintains that this case was appropriately designated as complex. Attorney Joel Hansen's health issues are not acts that are attributable to the United States.  Bundy has spent months litigating whether attorney Klayman should be admitted as counsel in this case

1    "seemingly refusing to focus on the case at bar."  The government argues that a defendant who is

2    not ready for pretrial motions is also not ready for trial.  Yet, Mr. Bundy moves for a rehearing en

3    banc of the denial of his petition for a writ of mandamus, pursuing what could be months of

4    briefing and argument before a higher court.  This also demonstrates that he is not ready for trial.

5    The government believes his motion to dismiss is not made in good faith, but as a means to "game

6    the system" by pressing for a speedy trial on the one hand, while claiming that he is not ready for

7    trial on the other.  The government therefore asks that the court deny both motions.

8        **C.  Bundy's Reply**

9        Cliven Bundy's reply disputes that his two motions are contradictory or inconsistent.  Mr.

10   Bundy was denied his chance to have a speedy trial which is an error warranting dismissal.

11   However, since that ship has now sailed, he asks the court to either dismiss the case against him,

12   or grant him more time to file pretrial motions given the short time he has now had his fully-

13   retained trial counsel.  Counsel advises that he "absolutely does not expect to file any additional

14   motions which would jeopardize the February 6, 2017 trial date."  The motion to extend the

15   deadlines was filed out of an abundance of caution because current counsel had just come into the

16   case and wished to preserve the right to present pretrial motions challenging evidentiary or

17   discovery issues.

18        **DISCUSSION**

19   **I.      Applicable Standards**

20       The Sixth Amendment guarantees the accused the right to a speedy trial.  The Sixth

21   Amendment right to a speedy trial is a fundamental right that serves to: (1) "prevent undue

22   oppressive incarceration prior to trial"; (2) "minimize anxiety and concern accompanying public

23   accusation"; and (3) "limit the possibilities that long delay will impair the ability of the accused to

24   [present a defense]."  *United States v. Ewell*, 383 U.S. 116, 120 (1966).  The Supreme Court has

25   established a four-factor test to determine challenges to a defendant's Sixth Amendment speedy

26   trial rights: (1) whether the delay was uncommonly long; (2) whether the government or the

27   defendant was responsible for the delay; (3) whether the defendant has asserted his or her right to

28   a speedy trial; and (4) whether the Defendant suffered prejudice.  *Doggett v. United States*, 505

U.S. 647, 651 (1992).  This four-factor test was first announced in *Barker v. Wingo*, 407 U.S. 514 (1972), which found that none of the four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."  *Id.* at 530–33 (holding that a five-year delay in bringing a case to trial did not violate a defendant's speedy trial right).

The Ninth Circuit considers a delay in excess of one year as "presumptively prejudicial." *United States v. Murillo*, 288 F.3d 1126, 1132–33 (9th Cir. 2002).  The complexity of the case and nature of the charges are factors the court considers in determining whether delay in particular cases violates a defendant's Speedy Trial Act.  *See*, *e.g.*, *United States v. Saenz*, 623 F.3d 461, 464 (7th Cir. 2010) (finding no speedy trial violation because the case was complex and involved a conspiracy case with 19 co-defendants); *United States v. Brown*, 498 F.3d 523, 531 (6th Cir. 2007) (finding no speedy trial violation because complex case involved multiple crimes, defendants, and events occurring in multiple states); *United States v. King*, 483 F.3d 969, 976 (9th Cir. 2007) (finding no speedy trial violation because the case involved a complex conspiracy, multiple defendants, and defendant substituted new counsel halfway through it); *United States v. Register*, 182 F.3d 820, 827 (11th Cir. 1999) (finding no speedy trial violation because of the complex nature of the case involving multiple defendants).

## II.    Analysis and Decision.

Mr. Bundy claims the indictment should be dismissed because his Sixth Amendment right to a speedy trial and to counsel of his choice have been violated.  The Ninth Circuit has now heard and ruled on Mr. Bundy's petition for writ of mandamus challenging the district judge's denial of attorney Larry Klayman's application for admission pro hac vice.  In a 35-page published opinion the Ninth Circuit held that "the district court had more than ample cause to turn down Klayman's application" for reasons described at length.  *See In re Bundy*, 840 F.3d 1034 (9th Cir. 2016).

Additionally, Bundy has been represented by counsel throughout this prosecution, and has never been without counsel in this case. On September 23, 2016, attorney Joel Hansen moved to withdraw as counsel for Mr. Bundy shortly before the October 3, 2016 deadline for filing pretrial motions, citing his back problems and need for surgery. The court set the matter for hearing on September 29, 2016, and canvassed Mr. Hansen at some length about why he was moving to

withdraw, whether back surgery had been scheduled, and if his health problems were causing him to move to withdraw from other cases. Mr. Hansen's surgery had not been scheduled, and he told the court it was because he was seeking necessary insurance company approval. He also told the court that he was not seeking to withdraw from other cases. However, he was seeking to withdraw from representing Mr. Bundy because he had been in other federal trials and did not believe he could physically withstand the rigors of a multi-week trial with the full-day schedules that federal judges typically follow. He did not think he was physically capable of sitting and standing for prolonged periods of time. Attorney Warren Markowitz appeared with Mr. Hansen at the September 29, 2016 hearing and was introduced as an out of state attorney Mr. Hansen knew, had confidence in, and thought might be willing to represent Mr. Bundy. The court inquired whether Mr. Hansen was prepared to timely file pretrial motions. He told the court that he had been thinking of pretrial motions to file on behalf of Mr. Bundy and "had a motion in mind" challenging federal jurisdiction but had not yet prepared the motion. He believed he could file it by the October 3, 2016 deadline. However, the court, *sua sponte* granted a two-week extension until October 17, 2016, for counsel for Bundy to file pretrial motions.

Mr. Bundy asked for 30 days to confirm new counsel. The court denied this request and initially gave him two weeks, setting the matter for a status and confirmation of counsel hearing on October 13, 2016. The court also indicated it would require Mr. Hansen to remain as counsel of record to insure continuity for a 30-day transition period. Mr. Hansen sent the court a letter on October 12, 2016, stating that Cliven Bundy was indigent and suggesting the court should appoint counsel.

At the October 13th hearing, Mr. Hansen did not appear. The court was told that Mr. Hansen had traveled out of state on another case. Attorney Bret Whipple filed a notice of association of counsel and appeared indicating he had been retained by Mr. Bundy to file pretrial motions. The court inquired whether Mr. Bundy was asking that the court appoint counsel for him inasmuch as Mr. Hansen's letter suggested he was indigent. Mr. Bundy was advised that if he intended to apply for court-appointed counsel, he would be required to fill out a CJA financial

affidavit under penalty of perjury. Mr. Bundy indicated he understood, and hoped to be able to retain counsel. The court continued the matter until 3:00 pm the same day.

At the continued 3:00 pm hearing, Mr. Bundy had not filled out the CJA financial affidavit. The court was handed an unsigned CJA financial affidavit that Mr. Whipple told the court was based on information obtained about Mr. Bundy's financial status from his wife, Carol Bundy. On reviewing the unsigned form, it was clear that Mr. Bundy did not qualify for court-appointed counsel. Mr. Bundy addressed the court and stated that he had never applied for any form of public assistance, his children had never had any free school lunches, and he would like to see if he could "pay his own way" and retain counsel. He indicated that his problem was that he did not have cash flow. The court pointed out that the financial information his wife provided indicated he had substantial assets including a significant amount of cash on hand, and that cash flow was not the criteria for determining whether he qualified for court appointed counsel. The court explained that Mr. Bundy needed to make the necessary arrangements to retain counsel soon because he was joined for trial with his co-defendants who were set for trial February 6, 2017, substitute counsel would need sufficient time to prepare, and further delay could affect the co-defendants desire to proceed to trial. The court continued the hearing for confirmation of counsel until October 21, 2016.

On October 21, 2016, attorney Jeb Bond appeared on behalf of Brett Whipple indicating Mr. Whipple had flown to Oregon to watch proceedings in the Oregon prosecution. However, Mr. Bond represented that negotiations for representation were nearly complete and should be finalized within a matter of days. Mr. Bundy agreed and stated he was confident he would be able to reach an agreement with Mr. Whipple to represent him. Based on these representations the court granted an extension and continued the hearing to October 26, 2016. Mr. Bundy asked, through Mr. Bond, that the court waive his appearance if Mr. Whipple filed a notice of appearance in compliance with the Local Criminal Rules. The court inquired if this was Mr. Bundy's request. Mr. Bundy stated he would rather not be transported from the detention facility and spend all day in the Marshal's lockup if counsel filed a notice of appearance. The court granted his request. On October 24, 2016, Mr. Whipple filed a Notice of Appearance of Counsel (ECF No 912) stating he had been "retained

by the defendant Cliven Bundy as his counsel of record, for the purpose of full representation throughout the duration of trial…." The court therefore vacated the hearing. In short, Mr. Bundy has been continuously represented by counsel.

With respect to his remaining claims, Mr. Bundy initially stipulated this was a complex case that should be set for trial in February 2017. He stipulated "that all time from the entry of Defendants' pleas in this case until the trial of this matter is excluded for purposes of the STA pursuant to 18 U.S.C. § 3161(h)(7)(A) as the ends of justice outweigh the interest of the public in a speedy trial." He subsequently changed his mind between the time the Propose Complex Case Schedule (ECF No 270) was filed on April 18, 2016, and the April 22, 2016 hearing. He has also changed his mind about a number of other things, including whether he should be tried separately or joined for trial with all of his co-defendants. Most recently, in opposition to the government's motion to sever this case into three groups for three separate trials, Mr. Bundy asked to be jointly tried with all of his co-defendants on February 6, 2017. However, he asked that if the court was going to order some form of severance, that he go to trial last to allow his co-defendants to be tried before him because he had the wherewithal to sustain his family while awaiting trial.

Mr. Bundy did not file objections or appeal the court's findings in its April 26, 2016 Case Management Order (ECF No 321) that this was a complex case and excluding and tolling the time for bringing the matter for trial under the provisions of the Speedy Trial Act cited in the order. The government also correctly points out that Mr. Bundy's interlocutory appeal of the district judge's order denying Mr. Klayman's application for admission to practice pro hac vice in this case also tolls the time for bringing the case for trial under the Speedy Trial Act. *See* 18 U.S.C. § 3162(h)(1)(C). Although the Ninth Circuit denied his petition for a writ of mandamus to direct the district judge to admit Mr. Klayman, Mr. Bundy has a pending petition for rehearing en banc.

For the reasons explained, Mr. Bundy's Sixth Amendment right to counsel of his choosing and to a speedy trial have not been violated. Additionally, as his current counsel timely filed a motion to dismiss challenging the court's subject matter jurisdiction (within the two-week extension the court sua sponte granted), and has now indicated he has no intention of filing any

1  additional motions that would delay the trial, his motion for an extension of time to file pretrial

2  motions will also be denied.

3     **IT IS ORDERED** that Cliven D. Bundy's Second Motion to Continue Rule 12 Motion

4  Filing Deadline (ECF No. 889) is **DENIED**.

5     **IT IS RECOMMENDED** that Cliven D. Bundy's Motion to Dismiss (ECF No. 891) be

6  **DENIED.**

7     DATED this 22nd day of December, 2016.

8

9                                              _____

10                                             PEGGY A. LEEN
                                               UNITED STATES MAGISTRATE JUDGE