UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                          Plaintiff,<br><br>        v.<br><br>CLIVEN BUNDY, et al.,<br><br>                                          Defendants. | Case No. 2:16-cr-00046-GMN-PAL<br><br>**ORDER**<br>– AND –<br>**REPORT OF FINDINGS AND RECOMMENDATION**<br><br>(Mots. to Dismiss – ECF Nos. 702, 710) |

This matter is before the court on Defendants Peter T. Santilli, Jr. and Ryan W. Payne's Motions to Dismiss (ECF No. 702, 710). These Motions are referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4 of the Local Rules of Practice. On December 9, 2016, the court held a hearing on these Motions. Present was counsel for Payne, William Carrico, Brenda Weksler, Ryan Norwood, and Cristen Thayer, counsel for Santilli, Chris Rasmussen, and counsel for the government, Steven Myhre, Nicholas Dickinson, Nadia Ahmed, and Erin Creegan.

The court has considered the Motions, the Joinders of Defendants Cliven D. Bundy, Melvin D. Bundy, Ammon E. Bundy, Peter T. Santilli, Jr., Dave H. Bundy, Joseph D. O'Shaughnessy, Eric J. Parker, O. Scott Drexler, Richard R. Lovelien, Steven A. Stewart, Todd C. Engel, Gregory P. Burleson, Micah L. McGuire, Jason D. Woods (ECF Nos. 713, 715, 721, 722, 728, 739, 761, 762, 779, 784, 821, 827, 836, 846, 880), the government's Response (ECF No. 921), Payne's Reply (ECF No. 950), and the arguments of counsel at the hearing.

## BACKGROUND

### I.    THE SUPERSEDING INDICTMENT

The superseding indictment (ECF No. 27) in this case arises out of a series of events related to a Bureau of Land Management ("BLM") impoundment of Cliven Bundy's cattle following a two-decade-long battle with the federal government. Beginning in 1993, Cliven Bundy continued

1

to graze cattle on land commonly referred to as the "Bunkerville Allotment" without paying required grazing fees or obtaining required permits.  The United States initiated civil litigation against Cliven Bundy in 1998 in the United States District Court for the District of Nevada.  The court found that Cliven Bundy had engaged in unauthorized and unlawful grazing of his livestock on property owned by the United States and administered by the Department of the Interior through the BLM.  The court permanently enjoined Cliven Bundy from grazing his livestock on the Allotment, ordered him to remove them, and authorized the BLM to impound any unauthorized cattle.  Bundy did not remove his cattle or comply with the court's order and injunction. The United States went back to court.  Subsequent orders were entered in 1999 and 2013 by different judges in this district permanently enjoining Bundy from trespassing on the Allotment and land administered by the National Park Services ("NPS") in the Lake Mead National Recreation Area,[1] ordering Bundy to remove his cattle, and explicitly authorizing the United States to seize, remove, and impound any of Bundy's cattle for future trespasses, provided that written notice was given to Bundy.

On February 17, 2014, the BLM entered into a contract with a civilian contractor in Utah to round up and gather Bundy's trespass cattle.  BLM developed an impoundment plan to establish a base of operations on public lands near Bunkerville, Nevada, about seven miles from the Bundy ranch in an area commonly referred to as the Toquop Wash.  On March 20, 2014, BLM also entered into a contract with an auctioneer in Utah who was to sell impounded cattle at a public sale.  Bundy was formally notified that impoundment operations would take place on March 14, 2014.  The following day, Bundy allegedly threatened to interfere with the impoundment operation by stating publicly that he was "ready to do battle" with the BLM, and would "do whatever it takes" to protect "his property."  The superseding indictment alleges that after being notified that BLM intended to impound his cattle, Bundy began to threaten to interfere with the impoundment operation, and made public statements he intended to organize people to come to Nevada in a "range war" with BLM and would do whatever it took to protect his cattle and property.

---

[1]  By 2012, Bundy's cattle had multiplied and he also began grazing his cattle on land administered by the NPS in the Lake Mead National Recreation Area without obtaining grazing permits or paying grazing fees.

The superseding indictment alleges that, beginning in March 2014, the 19 defendants charged in this case planned, organized, conspired, led and/or participated as followers and gunmen in a massive armed assault against federal law enforcement officers to threaten, intimidate, and extort the officers into abandoning approximately 400 head of cattle owned by Cliven Bundy. The removal and impoundment operation began on April 5, 2014. On April 12, 2014, defendants and hundreds of recruited "followers" executed a plan to recover the cattle by force, threats, and intimidation. Defendants and their followers demanded that officers leave and abandon the cattle and threatened to use force if the officers did not do so. The superseding indictment alleges armed gunmen took sniper positions behind concrete barriers and aimed their assault rifles at the officers. Defendants and their followers outnumbered the officers by more than 4 to 1, and the potential firefight posed a threat to the lives of the officers, as well as unarmed bystanders which included children. Thus, the officers were forced to leave and abandon the impounded cattle.

After the April 12, 2014 confrontation with federal officers, the superseding indictment alleges that the leaders and organizers of the conspiracy organized armed security patrols and check points in and around Cliven Bundy's Bunkerville ranch to deter and prevent any future law enforcement actions against Bundy or his co-conspirators, and to protect Bundy's cattle from future law enforcement actions.

## II. CHARGES AND STATUTES RELEVANT TO THE CURRENT MOTION

As relevant to the current motions, all 19 defendants are charged in the following counts:

- Count Two – Conspiracy to impede or injure a federal officer in violation of 18 U.S.C. § 372. This charge arises from conduct that allegedly occurred sometime between March of 2014 and March 2, 2016.
- Count Three – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2. This charge arises from conduct that allegedly occurred sometime between March of 2014 and March 2, 2016.
- Count Five – Assault on a federal officer in violation of 18 U.S.C. § 111(a)(1), (b) and § 2. This charge arises from conduct that allegedly occurred on April 12, 2014.
- Count Six – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2. This charge arises from conduct that allegedly occurred on April 12, 2014.
- Count Eight – Threatening a federal law enforcement officer in violation of 18 U.S.C. § 115(a)(1)(B) and § 2. This charge arises from conduct that allegedly occurred on April 12, 2014.

- Count Nine – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.
- Count Fourteen – Interference with interstate commerce by extortion in violation of 18 U.S.C. § 1951 and § 2.  This charge arises from conduct that allegedly on April 12, 2014.
- Count Fifteen – Use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and § 2.  This charge arises from conduct that allegedly occurred on April 12, 2014.

Counts Three, Six, Nine, and Fifteen (the "§ 924(c) Counts") each allege use and carry of a firearm in relation to a crime of violence pursuant to 18 U.S.C. § 924(c) and § 2.[2]  Santilli and Payne's motions contend that the § 924(c) Counts must be dismissed because the predicate crimes alleged in Counts Two, Five, Eight, and Fourteen (collectively, the "underlying charges") are not crimes of violence within the meaning of 18 U.S.C. § 924(c)(3).  Section 924(c) defines the term "crime of violence" as a felony offense that:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).  Subsection (A) is often referred to as the "force clause" or the "elements clause," and subsection (B) is known as the "residual clause" or the "risk-of-force clause."

## III.   THE PARTIES' POSITIONS

### A.  Defendant Santilli's Position

Santilli's Motion (ECF No. 902) contends that Count Three must be dismissed because the conspiracy offense charged in Count Two is not a "crime of violence" within the meaning of 18 U.S.C. § 924(c)(3).  Count Two charges defendants with conspiracy to impede or injure a federal officer in violation of 18 U.S.C. § 372.  The motion asserts that, under the categorical approach, § 372 criminalizes more conduct than the conduct defined as a "crime of violence" in § 924(c)(3)(A) (the "force clause") because a conspiracy does not require physical force or "attach the requisite mens rea," *i.e.*, the statute does not require that the physical force be inflicted intentionally, as opposed to recklessly or negligently.  Additionally, § 372 is an indivisible statute

---

[2]  18 U.S.C. § 2 addresses aiding and abetting.

with regard to the phrase "force, intimidation, or threat" because these words refer to three means of conspiring to prevent a federal official from discharging his duties, not alternative elements of the offense.  Therefore, the court cannot apply the modified categorical approach in its analysis. Santilli argues that even if § 372 is divisible, the alternative elements of § 372 would still fail to state a crime of violence under the force clause.

Santilli also argues that the alternative "crime of violence" definition stated in § 924(c)(3)(B) (the "residual clause") is void for vagueness.  The Supreme Court recently struck down a similar provision defining "violent felony" in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), because it was unconstitutionally vague.  *Johnson v. United States*, --- U.S. ----, 135 S. Ct 2551 (2015) ("*Johnson II*").  Pursuant to *Johnson II*, Count Three cannot qualify as a crime of violence because § 924(c)(3)(B)'s residual clause is equally vague.

Because Count Three fails to state a predicate crime of violence under § 924(c)(3) as a matter of law, Santilli asserts that dismissal of Count Three is the only proper remedy.  Santilli did not file a reply brief and the deadline to do so has now expired.

**B.  Defendant Payne's Position**

Payne's Motion (ECF No. 710) argues that all four § 924(c) Counts must be dismissed because the predicate crimes alleged in the underlying charges are not crimes of violence under § 924(c)(3).  *See also* Reply (ECF No. 950).  In addition, the court should strike the language in Count 1, subsection (c), that cites the alleged § 924(c) violations as predicate offenses for a conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371.

Like Santilli's motion, Payne's motion contends that § 924(c)(3)(B)'s residual clause is unconstitutionally vague under *Johnson II*, which found that the ACCA's residual clause was void for vagueness.  The term "crime of violence" appears throughout the federal criminal law, including § 924(c)(3), the ACCA, immigration statutes, and sentencing guidelines, and the definition is similar in all these statutes.  Although the Ninth Circuit has not addressed the constitutionality of § 924(c)(3)(B)'s residual clause in light of *Johnson II*, it has held that a similarly-worded statute incorporated into the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, suffered from the same deficits as the ACCA's residual clause.  *Dimaya v. Lynch*,

803 F.3d 1110 (9th Cir. 2015), *cert. granted*, 137 S. Ct. 31 (Sept. 29, 2016).[3]  The INA incorporates the "crime of violence" definition stated in 18 U.S.C. § 16, which has a force clause and a residual clause similar to those in the ACCA and § 924(c).  Because *Johnson II* and *Dimaya* held the nearly identical residual clauses of the ACCA and § 16(b) unconstitutionally void for vagueness under the Due Process clause, § 924(c)(3)(B) is also unconstitutionally void for vagueness.

Payne acknowledges that the Supreme Court recently granted certiorari in *Dimaya* and other circuits have concluded that § 924(c)(3)(B)'s residual clause is not unconstitutionally vague.  However, *Dimaya* remains binding precedent in the Ninth Circuit.  As such, § 924(c)(3)(B)'s residual clause cannot be used to evaluate whether the underlying charges allege cognizable crimes of violence to support the § 924(c) Counts.  In his Reply, Payne adds that the government cannot cite any decision in the Ninth Circuit concluding that § 924(c)(3)(B)'s residual clause is constitutional after *Dimaya*, and the government's arguments largely reiterate those specifically considered and rejected by *Johnson II* and *Dimaya*.

Under § 924(c)(3)(A)'s force clause, the underlying charges also fail to state a crime of violence because the statutes at issue are not a categorical match to the "crime of violence" definition.  Payne argues that the underlying charges criminalize more conduct than what is defined by the force clause.  In particular, a § 372 conspiracy, as alleged in Count Two, can never qualify as a crime of violence because (1) the phrase "force, intimidation, or threat" in § 372 does not require proof that the defendant used, attempted to use, or threatened to use physical force; (2) § 372 does not attach the necessary mens rea, *i.e.*, the statute does not require that physical force be inflicted intentionally as opposed to recklessly or negligently; and (3) § 372 is an inchoate offense that does not even require proof of an overt act.

With regard to Count Five, Payne contends 18 U.S.C. § 111 is categorically overbroad because it encompasses conduct devoid of physical force, such as a simple assault involving jolting an arm, grabbing a jacket, or spitting.  Payne acknowledges that the Ninth Circuit held in *United States v. Juvenile Female*, 566 F.3d 943, 947 (9th Cir. 2009), that an assault charged under § 111(b)

---

[3]  Oral argument before the Supreme Court is scheduled for January 17, 2017.  *See Lynch v. Dimaya*, No. 15-1498.

satisfied the similarly-worded force clause in § 16(a).  However, he argues that the *Juvenile Female* decision predates both *Johnson v. United States*, --- U.S. ----, 559 U.S. 133 (2010) ("*Johnson I*"), and *Johnson II*, which undermine the Ninth Circuit's reasoning.

Regarding Count Eight, Payne contends that 18 U.S.C. § 115(a)(1)(b) is categorically overbroad because it criminalizes a mere threat to commit a simple assault and does not require that the threat be communicated to the target.  Count Fourteen alleges extortion under the Hobbs Act, 18 U.S.C. § 1951.  Payne argues that § 1951 is categorically overbroad because a defendant can be convicted of extortion without proof of violence, such as bribery of public officials or fear of purely economic injury.  These economic harms fail to meet the force clause's requirement of physical force.

In addition, Payne asserts that the statutes at issue are not divisible, and the modified categorical approach is inapplicable to the court's analysis of the underlying charges.  Payne acknowledges that another judge in this district has held that the Hobbs Act is divisible and creates six functionally separate crimes.  *See United States v. Smith*, No. 2:11-cr-00058-JAD-CWH (Order ECF No. 230), 2016 WL 2901661, at *4 (D. Nev. May 18, 2016) (Dorsey, J.).  However, *Smith* predates the Supreme Court's decision in *Mathis v. United States*, --- U.S. ----, 136 S. Ct. 2243 (2016), which stated that a statute is not divisible simply because it contains disjunctive phrasing.  Payne also acknowledges that the Ninth Circuit has held that § 111 is divisible and creates three separate offenses.  *United States v. Dominguez-Maroyoqui*, 748 F.3d 918, 919–20 (9th Cir. 2014).  However, Payne contends that *Dominguez-Maroyoqui* interpreted a prior version of the statute and the Ninth Circuit has not addressed whether the current version is divisible.  Under *Mathis*, § 111 may now be considered indivisible.  Because each of the statutes at issue in the underlying charges provide alternative ways of committing the offenses, they are classic examples of separate "means," rather than separate "elements."  Accordingly, these statutes are not divisible and the modified categorical approach does not apply.  For these reasons, the court should dismiss the § 924(c) Counts.

### C.  The Government's Position

The government's Omnibus Response (ECF No. 921) to Santilli and Payne's motions

primarily argues that § 924(c)(3)(B)'s residual clause remains constitutional in the wake of *Johnson II*; therefore, all four of the underlying charges qualify as crimes of violence under that provision. In addition, two of the predicate offenses, Counts Five and Fourteen, qualify as crimes of violence under § 924(c)(3)(A)'s force clause. Thus, the § 924(c) Counts properly allege crimes of violence and the motions to dismiss should be denied.

The government points out that, after *Johnson II*, three circuits have specifically addressed the constitutionality § 924(c)(3)(B)'s residual clause and all three uniformly held that *Johnson II* does not invalidate § 924(c)(3)(B), rejecting arguments that the clause is void for vagueness just like the ACCA's residual clause. These circuits held that the statutory language of § 924(c)(3)(B) is distinctly narrower than the ACCA. Unlike the ACCA's residual clause, § 924(c)(3)(B): (1) creates a new offense when a violent crime involves a firearm, instead of enhancing a recidivist's sentence; (2) lacks a history of confusion and misinterpretation, (3) limits the risk of force analysis to whether force was used during the commission of the offense, (4) deals with physical force rather than physical injury, and (5) does not have a confusing set of enumerated examples. Additionally, *Johnson II* expressly held that the decision did not apply to other federal statutes using similar language. The government also contends that *Johnson II* did not replace the Supreme Court's other vagueness precedent, which requires Payne and Santilli to raise an as-applied challenge before this facial challenge.

The government also disputes that *Dimaya* controls the outcome here. In *Dimaya*, the Ninth Circuit explicitly stated it did not reach the constitutionality of other applications of § 16(b)'s residual clause outside of the INA or cast doubt on the constitutionality of the crime of violence definition in § 16(a)'s force clause. The government acknowledges that *Dimaya* is binding on this court, even though the Supreme Court granted certiorari to review the decision. However, since *Dimaya* is under review, the court should decline to unnecessarily extend *Dimaya*'s holding beyond § 16(b) to § 924(c)(3)(B) when the decision expressly limited its reach.

The government argues that all four underlying charges qualify as crimes of violence pursuant to § 924(c)(3)(B)'s residual clause. Count Two's conspiracy charge under § 372 is a crime of violence because conspiring to prevent federal employees from performing their jobs by

force, intimidation, or threat necessarily raises a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.  Although Payne argues the offense must usually, frequently, or generally involve the use of force, the correct assessment is whether the offense, by its nature, involves the use of force.  Common sense dictates that a § 372 conspiracy does.  Regarding Count Five, the Ninth Circuit has held that 18 U.S.C. § 111 sets forth three separate offenses.  The most serious of the three prohibits aggravated assault on a federal officer or employee and using a deadly or dangerous weapon or inflicting bodily injury while doing so.  *See* 18 U.S.C. § 111(a)(1), (b).  In *Juvenile Female*, the Ninth Circuit affirmed that an aggravated assault under § 111(b) is a crime of violence.  It is still good law, and that decision establishes that Count Five qualifies under both § 924(c)(3)(B)'s residual clause and force clause.  With regard to Count Eight, the government has not found case law construing a violation of 18 U.S.C. § 115(a)(1)(b) as a crime of violence, but the offense qualifies as such because a threat, by its nature, may involve the use of force.  As to Count Fourteen's Hobbs Act extortion charge, the government asserts that Ninth Circuit case law holds a conspiracy to commit robbery under § 1951 is a crime of violence.  Thus, extortion must also be a crime of violence.

Although the government maintains that analysis under the § 924(c)(3)(A)'s force clause is unnecessary, the Response argues that assault on a federal officer and Hobbs Act extortion, as charged in Counts Five and Fourteen, clearly qualify as crimes of violence under the force clause. The Ninth Circuit has defined generic extortion with the exact same elements as § 1951 extortion. Thus, a violation of § 1951 necessarily violates the generic definition of extortion and serves as a predicate crime of violence under § 924(c)(3)(A)'s force clause as well as its residual clause. Citing *United States v. Bell*, 158 F. Supp. 3d 906, 914–16, 918 (N.D. Cal. 2016), the government contends that *Juvenile Female* remains binding and forecloses the argument that an aggravated assault charged under § 111(b) is not a crime of violence.

The government has not identified reported case law addressing whether Count Three (§ 372 conspiracy to impede or injure a federal officer) or Count Eight (§ 115(a)(1)(B) threatening a federal officer) categorically qualify as crimes of violence under § 924(c)(3)(A)'s force clause. However, because all four underlying charges qualify as predicate crimes of violence under

§ 924(c)(3)(B)'s residual clause and violations of § 111(b) and § 1951 also qualify under § 924(c)(3)(A)'s force clause, this court should only address the propriety of the § 924(c) Counts under the residual clause and should avoid the murky question of whether § 372 and § 115(a)(1)(B) also qualify under the force clause.  For these reasons, the government asks the court to deny Santilli and Payne's motions to dismiss the § 924(c) Counts.

## DISCUSSION

**I.   LEGAL STANDARDS**

### D.  Rule 12 of the Federal Rules of Civil Procedure[4]

Pursuant to Rule 12, a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1).  Rule 12(b)(3) specifies the motions which must be made before trial.  A pretrial motion to dismiss a criminal case is appropriate when it involves questions of law rather than fact.  *United States v. Schulman*, 817 F.2d 1355, 1358 (9th Cir. 1987).

In ruling on a pretrial motion to dismiss, the district court is "bound by the four corners of the indictment." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014); *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) ("On a motion to dismiss an indictment for failure to state an offense the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged.").  The court should not consider evidence that does not appear on the face of the indictment.  *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996)).  Thus, a defendant is not entitled to a pre-trial evidentiary hearing to obtain a preview of the government's evidence and an opportunity to cross-examine its witnesses.  *Id.* at 669 ("A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence.").

In determining whether a cognizable offense has been charged, the court does not consider whether the government can *prove* its case, only whether accepting the facts as alleged in the indictment as true, a crime has been alleged.  *United States v. Milovanovic*, 678 F.3d 713, 717 (9th Cir. 2012).  Rule 12 motions cannot be used to determine "general issues of guilt or innocence," which "helps ensure that the respective provinces of the judge and jury are respected." *Boren*, 278

---

[4]  All references to a "Rule" or the "Rules" in this Order refer to the Federal Rules of Criminal Procedure.

F.3d at 914 (citation omitted).  A defendant may not challenge a facially-sufficient indictment on the ground that the allegations are not supported by adequate evidence.  *Jensen*, 93 F.3d at 669 (citation omitted).  However, dismissal of a criminal charge is appropriate when: (1) the indictment fails to recite an essential element of the charged offense," *United States v. Ezeta*, 752 F.3d 1182, 1184 (9th Cir. 2014); or (2) the charge is based on "a statute that is unconstitutional on its face or as applied."  *United States v. Mayer*, 503 F.3d 740, 747 (9th Cir. 2007) (citing *United States v. Lopez*, 514 U.S. 549 (1995)).

### E.  Challenges to Statute for Unconstitutional Vagueness

The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property, without due process of law.  U.S. Const. amend. V; *see also Valenzuela Gallardo v. Lynch*, 818 F.3d 808, 819 (9th Cir. 2016) (quoting *Johnson II*, 135 S. Ct. at 2556). The Due Process Clause requires that a criminal law provide the kind of notice that will enable ordinary people to understand what the law prohibits.  *United States v. Williams*, 553 U.S. 285, 304 (2008).  "The prohibition of vagueness in criminal statutes is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law, and a statute that flouts it violates the first essential of due process."  *Valenzuela Gallardo*, 818 F.3d at 819 (quoting *Johnson II*, 135 S. Ct. at 2556–57) (internal bracketing omitted).  For criminal statutes, "the requirement for clarity is enhanced."  *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013) (quoting *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009)).  However, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."  *Williams*, 553 U.S. at 304 (citation omitted).  The Supreme Court has repeatedly held that a "strong presumptive validity" attaches to Congressional acts; thus, "statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.  *United States v. Nat'l Dairy Prod. Corp.*, 372 U.S. 29, 32 (1963); *see also Skilling v. United States*, 561 U.S. 358, 403 (2010).

A criminal statute is unconstitutionally vague "if it is not sufficiently clear to provide guidance to citizens concerning how they can avoid violating it and to provide authorities with principles governing enforcement."  *United States v. Chhun*, 744 F.3d 1110, 1117 (9th Cir. 2014)

(quoting *Harris*, 705 F.3d at 932).  "[M]ere speculation about possible vagueness in hypothetical situations not before the court will not support a facial attack on a statute that is valid in the vast majority of its intended applications."  *Hess v. Bd. of Parole & Post-Prison Supervision*, 514 F.3d 909, 913 (9th Cir. 2008) (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000)) (internal quotation marks omitted).  The Ninth Circuit has recognized three reasons for invalidating vague statutes: "(1) to avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of laws based on arbitrary and discriminatory enforcement by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms."  *United States v. Osinger*, 753 F.3d 939, 945 (9th Cir. 2014) (quoting *Kilbride*, 584 F.3d at 1256).

## II.   ANALYTICAL FRAMEWORK FOR § 924(C) CRIME OF VIOLENCE DETERMINATIONS

To decide these Motions, the court must determine whether the predicate offenses charged qualify as crimes of violence under § 924(c)(3).  The term "crime of violence" appears in a number of different federal statutes, including the ACCA, 18 U.S.C. § 924(e), the INA, 8 U.S.C. § 1101 *et seq.*, and the federal Sentencing Guidelines ("U.S.S.G.").  Whether a crime qualifies as a crime of violence for the purposes of these various federal statutes is an evolving area of federal law.  The statutory definitions are similar but not identical.  Courts apply various tests to determine whether an offense qualifies as a crime of violence.

### A.  The Categorical Approach

To determine whether a charged offense is a "crime of violence" under § 924(c), courts employ the three-step "categorical approach" first announced in *Taylor v. United States*, 495 U.S. 575 (1990).  *Mathis*, 136 S. Ct. at 2248.  In *Taylor*, the Supreme Court examined the ACCA and found it impermissible for a particular crime to "sometimes count towards enhancement and sometimes not, depending on the facts of the case."  495 U.S. at 601.  Thus, the Supreme Court instructed judges to look only to the elements of the offense, not to the facts of the defendant's conduct.  *Mathis*, 136 S. Ct. at 2251 (quoting *Taylor*, 495 U.S. at 601).  The categorical approach directs courts to ignore the particular facts of a case and determine whether the statutory elements of a crime sufficiently match the elements of the crime's generic definition.  *Id*. at 2248 (citing

1    *Taylor*, 495 U.S. at 600–01); *see also United States v. Garcia-Santana*, 774 F.3d 528, 533 (9th

2    Cir. 2014) ("The 'generic' definition of an offense is determined by 'the contemporary usage of

3    the term'.") (quoting *Taylor*, 495 U.S. at 592); *United States v. Werle*, 815 F.3d 614, 618 (9th Cir.

4    2016) (noting that a "generic crime" is "the offense as commonly understood").  A crime is not a

5    categorical match qualifying as a "crime of violence" if the charging statute punishes "a broader

6    swath of conduct" than the conduct covered by the generic definition of the crime.  *Descamps v.*

7    *United States*, --- U.S. ----, 133 S. Ct. 2276, 2281 (2013); *United States v. Benally*, 843 F.3d 350,

8    2016 WL 6574490, at *2 (9th Cir. 2016).

9         In addition to § 924(c)(3), federal courts have utilized the "categorical approach" for crime-

10   of-violence determinations in several other contexts, including sentencings and deportation

11   proceedings.  *See*, *e.g.*, *Descamps*, 133 S. Ct. at 2281 (applying the categorical approach to the

12   ACCA); *Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004) (applying the categorical approach to the "crime

13   of violence" definition stated in 18 U.S.C. § 16 and incorporated by the INA); *United States v.*

14   *Piccolo*, 441 F.3d 1084, 1086–87 (9th Cir. 2006) (applying the categorical approach to the "crime

15   of violence" definition found in U.S.S.G. § 4B1.2)).

16        The Ninth Circuit has applied the categorical approach to crime-of-violence determinations

17   under § 924(c) without regard to whether the offense is "a current or prior crime."  *Piccolo*, 441

18   F.3d at 1086–87 (citing *United States v. Amparo*, 68 F.3d 1222, 1224–26 (9th Cir. 1995); *United*

19   *States v. Mendez*, 992 F.2d 1488, 1489–91 (9th Cir. 1993)).  Numerous district courts, particularly

20   within the Ninth Circuit, have questioned the utility of using the categorical approach when a court

21   determines whether a concurrently-charged offense, rather than a prior conviction, qualifies as a

22   crime of violence for the purposes of a pretrial motion to dismiss.[5]  These decisions state

23   persuasive reasons why the categorical approach should not apply to motions to dismiss.  However,

24   this court is bound by Ninth Circuit precedent in *Piccolo* and *Amparo* to apply the categorical

---

25   [5]  *See*, *e.g.*, *United States v. Standberry*, 139 F. Supp. 3d 734, 737 (E.D. Va. 2015); *United States v. Bundy*,
26   No. 3:16-cr-00051-BR, 2016 WL 3361490, at *2 (D. Or. June 10, 2016); *United States v. Frazier*, No. 2:15-
     cr-0044-GMN-GWF, 2016 WL 4191047, at *3–*4 (D. Nev. May 20, 2016) (collecting cases), *adopted by*
27   2016 WL 4180966; *United States v. Smith*, No. 2:11-cr-00058-JAD-CWH, 2016 WL 2901661, at *3 (D.
     Nev. May 18, 2016); *United States v. Sandoval*, No. 2:15-cr-00159-JCM-NJK, 2015 U.S. Dist. LEXIS
28   176277 (D. Nev. Oct. 27, 2015), *adopted by* 2016 U.S. Dist. LEXIS 19055.

approach.

1. <u>Step One: Identifying the Elements of a Crime</u>

At step one of the categorical approach, the court must "identify the elements of the statute necessary to secure a conviction," *Uppal v. Holder*, 605 F.3d 712, 714 (9th Cir. 2010), and compare the elements of the offense to the elements of the generic offense defined by federal law. *Almanza-Arenas v. Lynch*, 815 F.3d 469, 475 (9th Cir. 2016) (en banc).  To do this, courts look only to the statutory definitions of an offense, *i.e.*, the "elements," not to the particular underlying facts satisfying a statutory element, *i.e.*, the "means."  *Descamps*, 133 S. Ct. at 2283–84.  Means are the "various factual ways of committing some component of the offense," for which a jury need not make a specific finding to convict.  *Mathis*, 136 S. Ct. at 2249; *see also Descamps*, 133 S. Ct. at 2288 (describing "means" as "legally extraneous circumstances").  The Supreme Court has instructed that distinguishing between elements and facts is pivotal:

> "Elements" are the "constituent parts" of a crime's legal definition—the things the "prosecution must prove to sustain a conviction."  At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant, and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty.  Facts, by contrast, are mere real-world things—extraneous to the crime's legal requirements.  They are "circumstances" or "events" having no "legal effect or consequence": In particular, they need neither be found by a jury nor admitted by a defendant.

*Mathis*, 136 S. Ct. at 2248 (internal bracketing and citation omitted).  The Supreme Court provided this illustration: if a jury can convict a defendant of using a "deadly weapon" even though some jurors conclude that he used a knife while others conclude he used a gun, then the deadly weapon provision is a fact-based means of committing the crime—not an element the government must prove beyond a reasonable doubt.  *Id.* at 2249.

To identify the elements of a criminal statute, courts examine the text of the statute and case law interpreting and applying the statute.  *Id*. at 2256; *Ramirez v. Lynch*, 810 F.3d 1127, 1131 (9th Cir. 2016).  If statutory alternatives carry different punishments, "they must be elements." *Mathis*, 136 S. Ct. at 2256 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).  Courts also look to model jury instructions.  *Almanza-Arenas*, 815 F.3d at 480 (citing *Chavez-Solis v. Lynch*, 803 F.3d 1004, 1013 (9th Cir. 2015) (finding that "pattern jury instructions are a useful tool" in assessing statutes).  If these sources fail to provide clear answers, courts may look at "the record

14

of a prior conviction" itself for the "sole and limited purpose" of determining whether the listed items are elements of the crime. *Mathis*, 136 S. Ct. at 2256–57 (quoting *Rendon v. Holder*, 782 F.3d 466, 473–74 (9th Cir. 2015) (Kozinki, J., dissenting from denial of reh'g en banc)). Record documents such as an indictment or jury instructions may show a single umbrella term or state all the possible means of committing the crime, therefore, demonstrating that the statute contains an indivisible list of means. *Id.* at 2257. Conversely, an indictment or jury instructions might reference one alternative element and exclude all others, therefore, showing that the statute contains a list of elements. *Id.* Thus, *Mathis* instructs that courts may use extra-statutory sources to confirm the elements of the charging statute. *Id.*; *see also Almanza-Arenas*, 815 F.3d at 478 (courts may confirm a statutory interpretation by examining the record documents to see whether a "statute displays alternative elements instead of alternative means of committing the same crime"); *Ramirez*, 810 F.3d at 1135. Although a court can take a preliminary peek at the record documents to identify a statute's elements, it may only make further use of the documents if it determines the statute is divisible. *Mathis*, 136 S. Ct. at 2256–57.

Once a court determines the elements of the current charge or prior conviction, it compares the offense's elements to the elements of the generic offense to see if they are a categorical match. *Almanza-Arenas*, 815 F.3d at 476. The underlying crime is a categorical match if "its *elements* are the same as, or narrower than, those of the generic offense." *Mathis*, 136 S. Ct. at 2248. When a statute provides alternative means as various factual ways to satisfy one element of an offense, the court "has no call to decide which of the statutory alternatives was at issue." *Id.* at 2249, 2256. If the elements of a criminal offense cover "any more conduct than the generic offense," is not a predicate for a § 924(c) charge, "even if the defendant's actual conduct (*i.e.*, the facts of the crime) fits within the generic offense's boundaries." *Id.* at 2248. "Under the categorical approach, the crime-of-violence determination 'functions as an on-off switch': An offense qualifies as a crime of violence 'in all cases or in none'." *United States v. Dominguez-Maroyoqui*, 748 F.3d 918, 920 (9th Cir. 2014) (quoting *Descamps*, 133 S. Ct. at 2287) (internal bracketing omitted).

### 2. Step Two: Determining Whether the Criminal Statute is Divisible

When a statute is "overbroad" because it criminalizes more conduct than the generic

offense, the court proceeds to step two to decide whether the statute is "divisible" or "indivisible." *Almanza-Arenas*, 815 F.3d at 476.  In other words, the court determines whether the statute has "multiple, alternative elements, and so effectively creates 'several different crimes'." *Id*. (quoting *Descamps*, 133 S. Ct. at 2285).  Divisible statutes "contain multiple, alternative *elements* of functionally separate crimes," but indivisible statutes "contain multiple, alternative *means* of committing the crime. *Rendon v. Holder*, 764 F.3d 1077, 1085 (9th Cir. 2014) (citing *Descamps*, 133 S. Ct. at 2285 n.2); *United States v. Cabrera–Gutierrez*, 756 F.3d 1125, 1137 n.16 (9th Cir. 2014) ("[W]hat must be divisible are the elements of the crime, not the mode or means of proving an element.").  If the statute has a " 'single, indivisible set of elements' with different means of committing one crime, then it is indivisible," and the inquiry ends with a finding that there is no categorical match to the generic federal offense.  *Almanza-Arenas*, 815 F.3d at 476 (quoting *Descamps*, 133 S. Ct. at 2286).  However, if the statute has alternative elements stating multiple crimes, it is divisible, and the court applies the modified categorical approach at step three.  *Id*. at 476 (quoting *Lopez–Valencia v. Lynch*, 798 F.3d 863, 867–68 (9th Cir. 2015)).

### 3.   Step Three: the Modified Categorical Approach

Under the modified categorical approach, the court takes a deeper look at the record documents to determine the specific crime with which the defendant was charged or convicted. *Mathis*, 136 S. Ct. at 2249; *see also Benally*, 843 F.3d 350, 2016 WL 6574490, at *2 (citing *Descamps*, 133 S. Ct. at 2281).  The record documents, sometimes referred to as the "*Shepard* documents*," may include such materials as an indictment, jury instructions, plea colloquy, or a plea agreement.  *Descamps*, 133 S. Ct. at 2284–85 (examining *Shepard v. United States*, 544 U.S. 13 (2005)).  By reviewing the record documents, a court can discover what the prosecutor includes as elements of the crime and what elements must either be proved to the jury or plead as part of a guilty plea.  *Almanza-Arenas*, 815 F.3d at 479.  This is because a "prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives." *Descamps*, 133 S. Ct. at 2290 (citation omitted).  "The modified approach thus acts not as an exception, but instead as a tool" for the court to identify the crime actually charged from the alternatives so that it can be compared to the generic offense.  *Id*. at 2285; *Mathis*, 136 S. Ct. at

2253 ("[T]he modified approach serves—and serves solely—as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque.").

### B.  The Mens Rea and Physical Force Requirements for § 924(c) Crimes of Violence

For an offense to be considered a crime of violence under § 924(c)(3), the offense must be a categorical match, require a higher mens rea than accidental or negligent conduct, and involve "physical force."  In *Leocal*, the Supreme Court determined that both § 16(a) and § 16(b) require a higher mens rea greater than "merely accidental or negligent conduct."  543 U.S. at 11.  The Ninth Circuit has uniformly applied a mens rea requirement to crime of violence determinations, including those under § 924(c)(3).  *See, e.g.*, *Benally*, 843 F.3d 350, 2016 WL 6574490, at *3–*4 (holding that the "use" of physical force required by § 924(c)(3)(A)'s force clause must be intentional, not just reckless or negligent); *United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015) (noting that the ACCA's force clause requires intentional force); *United States v. Narvaez-Gomez*, 489 F.3d 970, 976 (9th Cir. 2007) (extending the heightened mens rea requirement to U.S.S.G. § 2L1.2); *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006) (holding that recklessness and gross negligence are not sufficient mens rea to establish a crime of violence under § 16(a)'s force clause) (en banc); *see also Bell*, 158 F. Supp. 3d at 912 (collecting cases).

The term "physical force" as used in § 924(c)(3) has specialized meaning.  In *Johnson I*, the Supreme Court considered whether a conviction for simple battery under Florida law met the "physical force" requirement of the ACCA's force clause, 18 U.S.C. § 924(e)(2)(B)(i).[6]  The Supreme Court held that the term "physical force" required "*violent* force—that is, force capable of causing physical pain or injury to another person."  559 U.S. at 140.  *Johnson I* noted that the

---

[6]  *Compare* 18 U.S.C. § 924(e)(2)(e)(2)(B)(i) ("violent felony" means an offense "has as an element the use, attempted use, or threatened use of physical force against the person of another") *and* U.S.S.G. 2L1.2 ("crime of violence" means an offense "that has as an element the use, attempted use, or threatened use of physical force against the person of another") *with* 18 U.S.C. § 924(c)(3)(A) ("crime of violence" means a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person *or property* of another") (emphasis added) *and* 18 U.S.C. § 16(a) ("crime of violence" means "an offense "that has as an element the use, attempted use, or threatened use of physical force against the person *or property* of another") (emphasis added).  The force clauses in the ACCA and U.S.S.G. 2L1.2 are nearly identical to § 924(c)(3)(A) and § 16(a).  Sections 924(c) and 16(a) simply add "property" to their definitions.

word "violent" standing alone signified a substantial degree of force, but when placed with the word "felony," the term "violent felony" clearly conveys strong physical force. *Id.* However, *Johnson I* did not require a specific amount of force to satisfy the physical force requirement. *See United States v. Castleman*, --- U.S. ----, 134 S. Ct. 1405, 1417, (2014) (Scalia, J., concurring in part and concurring in judgment) (rejecting the argument that *Johnson I* "requires force capable of inflicting 'serious' bodily injury," as opposed to "force capable of causing physical pain or injury, serious or otherwise").

Recent Ninth Circuit opinions have applied *Johnson I*'s physical force requirement to crime of violence determinations under the ACCA's force clause. *See, e.g., United States v. Parnell*, 818 F.3d 974, 979 (9th Cir. 2016) (conviction for armed robbery under Massachusetts law criminalizing any force however slight did not qualify as a violent felony under the ACCA's force clause because the degree of force was insufficient under *Johnson I*); *Werle*, 815 F.3d at 621–22 (conviction did not qualify as a violent felony under the ACCA's force clause because the Washington riot statute did not require the level of force defined in *Johnson I*). The Ninth Circuit has also extended *Johnson I*'s physical force requirement to § 16(a) and Sentencing Guideline § 4B1.2. *See, e.g., Dominguez–Maroyoqui*, 748 F.3d at 920–21 (discussing U.S.S.G. § 2L1.2); *Rodriguez–Castellon v. Holder*, 733 F.3d 847, 854 (9th Cir. 2013) (addressing 18 U.S.C. § 16(a)).

Although the Ninth Circuit has not specifically extended the *Johnson I* definition of "physical force" to § 924(c)(3), a number of district courts have done so when analyzing § 924(c)(3)(A)'s force clause. *See, e.g., Bell*, 158 F. Supp. 3d at 912 (collecting cases). Both the force clause and the residual clause of § 924(c)(3) define a crime of violence to include "*physical force* against the person or property of another." 18 U.S.C. § 924(c)(3)(A), (B) (emphasis added). Therefore, it follows that the use of physical force or the substantial risk of using physical force required by § 924(c)(3) is also violent force. *Cf. Leocal*, 543 U.S. at 11 (when construing both parts of § 16, courts must not forget they "ultimately are determining the meaning of the term 'crime of violence' "). The ordinary meaning of "crime of violence," combined with the statutory "emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent, active crimes." *Id.*

The court will therefore apply the specialized physical force and mens rea requirements in its analysis of the whether the underlying charges meet § 924(c)(3)'s crime of violence definition.

### C. *Dimaya* Does Not Compel a Finding that § 924(c)(3)(B)'s Residual Clause is Unconstitutionally Vague

Relying on the Supreme Court's *Johnson II* and the Ninth Circuit's *Dimaya*, Santilli and Payne's motions assert that § 924(c)(3)(B)'s residual clause is unconstitutionally vague. In *Johnson II*, the Supreme Court held that imposing an increased sentence under the ACCA's residual clause violates due process because the clause is unconstitutionally vague. *Id*. at 2563. The ACCA defines "violent felony" to include any crime punishable by imprisonment of over one year that "is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). The italicized closing words of this definition have come to be known as the ACCA's residual clause. *Johnson II*, 135 S. Ct. at 2555–56. The Supreme Court found that the ACCA's residual clause required district courts to "picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction presents a *serious potential risk of physical injury*." *Id*. at 2557 (emphasis added) (citation omitted). Doing so impermissibly pushed courts "beyond deciding whether creation of risk is an element of the crime." *Id*. In addition, the ACCA's residual clause created grave uncertainty about how courts should estimate the risk posed by a crime or how much risk it takes for a crime to qualify as a violent felony. *Id*. at 2257–58. Together, these uncertainties produced more unpredictability and arbitrariness than the Due Process clause tolerates. *Id*. at 2258.

The Supreme Court also noted that the ACCA's residual clause created numerous splits among the lower federal courts. *Id*. at 2259–60. The division between the lower courts was not about whether the residual clause covers any particular crime; rather, the Supreme Court found it "most telling" that there was "pervasive disagreement about the nature of the inquiry" and the "kinds of factors one is supposed to consider." *Id*. at 2560. The doctrine of stare decisis allowed the Court to revisit its earlier decisions regarding the ACCA's residual clause because the application of those decisions proved "unworkable" over time. *Id*. at 2562. For these reasons,

*Johnson II* held that the ACCA's residual clause violated the Constitution's prohibition of vague criminal laws.  *Id*. at 2563.

*Johnson II* expressly overruled two prior Supreme Court cases which held that the residual clause of the ACCA was constitutional.  *James v. United States*, 550 U.S. 192 (2007), *and Sykes v. United States*, 564 U.S. 1 (2011), *overruled by Johnson II*, 135 S. Ct. at 2563.  However, the *Johnson II* Court stated that its decision did not call into question the ACCA's applicability to the four enumerated offenses (burglary, arson, extortion, and use of explosives) in the residual clause, or the remainder of the ACCA's definition of a violent felony in its force clause.  *Id*.  Additionally, the majority specifically rejected the argument that "dozens of federal and state criminal laws" using terms such as " 'substantial risk,' 'grave risk,' and 'unreasonable risk' " would be placed in constitutional doubt by the decision.  *Id*. at 2561.  Almost all of the statutes using those terms require courts to gauge "the riskiness of conduct in which an individual defendant engages *on a particular occasion*."  *Id*.  The majority stated that they did not doubt the constitutionality of laws calling for "the application of a qualitative standard such as 'substantial risk' to real-world conduct."  *Id*.

Relying on *Johnson II*, the Ninth Circuit held in *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), that § 16(b)'s residual clause suffered from the same deficits as the ACCA's residual clause. In *Dimaya*, the Ninth Circuit granted a petition for review of a decision by the Board of Immigration Appeals, which involved the petitioner's conviction for burglary under California Penal Code § 459.  The Board of Immigration Appeals affirmed an immigration judge's determination that the petitioner was removable and ineligible for any relief because he had a prior conviction for a "crime of violence" as defined in 18 U.S.C. § 16, which is incorporated into the INA's definition of an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F).  *Dimaya*, 803 F.3d at 1111–12.  The ACCA's residual clause defined a "violent felony" to include "conduct that presents a *serious potential risk* of *physical injury to another*."  18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added).  Similarly-worded but not identically so, § 16(b)'s residual clause defined a "crime of violence" as a felony offense "that, by its nature, involves a *substantial risk that physical force against the person or property of another may be used in the course of committing the*

*offense*."  *Id*. at 1114 (emphasis added).  *Dimaya* held that *Johnson II*'s "reasoning applies with equal force to the similar statutory language and identical mode of analysis used," *i.e.*, the categorical approach.  *Id*. at 1115.

The *Dimaya* court found that § 16(b)'s residual clause presents the "same combination of indeterminate inquiries" as the ACCA's residual clause based on (1) the judicial assessment of risk to an imaginary "ordinary case" and (2) the " 'uncertainty about how much risk it takes for a crime to qualify as a violent felony'."  803 F.3d at 1112 (quoting *Johnson II*, 135 S. Ct. at 2558).  Like the ACCA's residual clause, § 16(b)'s residual clause required the court to assess "whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a substantial risk of force" but offered no reliable way to choose between the competing assertions of what a crime looks like in the ordinary case.  *Id*. at 1116 (quoting *Johnson II*, 135 S. Ct. at 2558; *Delgado–Hernandez v. Holder*, 697 F.3d 1125, 1128 (9th Cir. 2012)).  The *Dimaya* court saw no reason why this aspect of *Johnson II* would not apply to § 16(b).  *Id*.

*Dimaya* acknowledged that the "ACCA's residual clause required courts to evaluate whether an offense posed 'a *serious potential risk*' while the relevant INA definition asks whether an offense poses 'a *substantial risk*'."  *Id*. at 1117 n.9 (comparing § 924(e)(2)(B)(ii) with § 16(b)) (emphasis added).  However, the *Dimaya* court found that measuring a "substantial risk" was no less arbitrary than measuring a "serious potential risk" and the government did not suggest otherwise.  *Id*.  The imprecise judicial application of the "serious potential risk" standard to § 16(b), when combined with the uncertainty in determining the degree of risk involved in an ordinary case, gave judges no more guidance than the ACCA "as to what constitutes a substantial enough risk of force to satisfy the statute."  *Id*. at 1117.  Thus, *Dimaya* held that § 16(b)'s residual clause was unconstitutionally vague because it was subject to identical unpredictability and arbitrariness as the ACCA's residual clause.  *Id*. at 1120.  However, the *Dimaya* court specifically limited the decision's reach: "Our decision does not reach the constitutionality of applications of 18 U.S.C. § 16(b) outside of 8 U.S.C. § 1101(a)(43)(F) or cast any doubt on the constitutionality of 18 U.S.C. § 16(a)'s definition of a crime of violence."  *Id*. at 1120 n.17.

Since *Johnson II*, federal courts across the country have split on whether other residual

clauses are also unconstitutionally vague.  *Johnson II* specifically rejected the notion that, because the ACCA's residual clause was found unconstitutionally vague, other federal and state criminal laws using the terms "substantial risk," "grave risk," and "unreasonable risk," would be "in constitutional doubt."  135 S. Ct. at 2561.  Nevertheless, *Dimaya* held that the "minor distinctions" between the residual clauses in the ACCA and § 16(b) did not undermine the applicability of *Johnson II*'s fundamental holding to § 16(b).  803 F.3d at 1120.  Additionally, in *United States v. Hernandez-Lara*, 817 F.3d 651 (9th Cir. 2016), the Ninth Circuit found that *Dimaya* controlled, and held that § 16(b), as incorporated in U.S.S.G. § 2L1.2(b)(1)(C), was unconstitutionally vague. *Id*. at 652–53, *petition for cert. filed*, No. 16-617 (U.S. Nov. 7, 2016).  Since *Dimaya*, the Third, Sixth, Seventh, and Tenth Circuits have also held that § 16(b) is void for vagueness, while the en banc Fifth Circuit held that the statute is not unconstitutionally vague.[7]

Although the Ninth Circuit has yet to address the constitutionality of § 924(c)(3)(B)'s residual clause, the Second, Sixth, and Eighth Circuits have held that it is *not* unconstitutionally vague.[8]  The Fourth Circuit considered supplemental briefing after *Johnson II* but found it unnecessary to decide whether § 924(c)'s residual clause was void for vagueness based on the principle of constitutional avoidance.  *United States v. Fuertes*, 805 F.3d 485, 499 n.5 (4th Cir. 2015), *cert. denied sub nom. Ventura v. United States*, 136 S. Ct. 1220 (2016).  The Seventh Circuit, relying on its holding that § 16(b) is void for vagueness, recently held that the residual clause in § 924(c)(3)(B) is also unconstitutionally vague.  *United States v. Cardena*, 842 F.3d 959,

---

[7] *See Baptiste v. Attorney Gen.*, 841 F.3d 601 (3d Cir. 2016); *Golicov v. Lynch*, 837 F.3d 1065 (10th Cir. 2016); *Shuti v. Lynch*, 828 F.3d 440 (6th Cir. 2016), *reh'g en banc denied* (Nov. 15, 2016); *United States v. Vivas-Ceja*, 808 F.3d 719 (7th Cir. 2015), *reh'g en banc denied* (Mar. 14, 2016); *but see United States v. Gonzalez-Longoria*, 831 F.3d 670 (5th Cir. 2016) (holding that § 16(b) is not unconstitutionally vague) (en banc), *petition for cert. filed*, No. 16-6259 (U.S. Sept. 30, 2016).  Notably, in two recent opinions reviewing crime of violence determinations under § 924(c), the Third Circuit stated that *Baptiste*'s holding regarding § 16(b)'s residual clause would not necessarily resolve a question regarding 924(c)(3)(B)'s residual clause because *Baptiste* "considered whether the defendant's *prior* state conviction constituted a predicate violent offense," not "whether a federal offense that was *contemporaneously* tried with § 924(c) possession may properly serve as a predicate offense."  *United States v. Galati*, --- F.3d ----, 2016 WL 7336610, at *3 n.10 (3d Cir. Dec. 19, 2016); *United States v. Robinson*, --- F.3d ----, 2016 WL 7336609, at *2 n.5 (3d Cir. Dec. 19, 2016).

[8] *See United States v. Prickett*, 839 F.3d 697 (8th Cir. 2016) (per curium); *United States v. Hill*, 832 F.3d 135 (2d Cir. 2016); *United States v. Taylor*, 814 F.3d 340 (6th Cir. 2016), *petition for cert. filed*, No. 16-6392 (U.S. Oct. 12, 2016); *see also United States v. Checora*, 155 F. Supp. 3d 1192, 1203 (D. Utah 2015).

996 (7th Cir. 2016).

The language in § 924(c)(3)(B)'s residual clause at issue here is nearly identical to the language in § 16(b)'s residual clause.  *Compare* 18 U.S.C. § 924(c)(3)(B) ("crime of violence" means a felony offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense") *with* 18 U.S.C. § 16(b) ("crime of violence" means a felony offense "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense").  Based on the similarities between the language of § 16(b) and § 924(c)(3)(B), several district courts in the Ninth Circuit have held that *Dimaya* directs a finding that § 924(c)(3)(B)'s residual clause is unconstitutionally vague.[9]  Payne urges the court to follow their lead.

Established Supreme Court and Ninth Circuit precedent have, with some exceptions, interpreted the "crime of violence" definitions in § 16, § 924(c), U.S.S.G. § 4B1.2, and the ACCA interchangeably.  "Although the definitions are not always interchangeable, similar statutory language suggests that the definitions may be similarly interpreted.  *United States v. Chandler*, 743 F.3d 648, 650 n.1 (9th Cir. 2014) (citation omitted), *cert. granted*, *judgment vacated on other grounds*, 135 S. Ct. 2926 (2015), *vacated and remanded*, 619 F. App'x 641 (9th Cir. 2015).  For example, in *Johnson I*, the Supreme Court relied on its prior interpretation of § 16 to analyze the phrase "physical force" in the ACCA.  559 U.S. at 140 (citing *Leocal*, 543 U.S. at 11).  The Ninth Circuit has also used analysis of the Sentencing Guidelines' crime of violence definition to guide its interpretation of violent felony in the ACCA.  *Chandler*, 743 F.3d at 650 (citation omitted).  In *Benally*, the Ninth Circuit relied on *Leocal* and *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006) (en banc), to construe the phrase "physical force" in § 924(c)(3).  843 F.3d 350, 2016 WL 6574490, at *3.  Although *Leocal* and *Fernandez-Ruiz* both addressed § 16, the *Benally* court stated that because the wording of § 924(c)(3) and § 16 "is virtually identical, we interpret their

---

[9] *See*, *e.g.*, *United States v. Bundy*, 2016 WL 3361490, at *4–*6 (D. Or. June 10, 2016); *United States v. Baires-Reyes*, --- F. Supp. 3d ----, 2016 WL 3163049, at *4–*5 (N.D. Cal. June 7, 2016); *United States v. Smith*, 2016 WL 2901661, at *6 (D. Nev. May 18, 2016); *United States v. Lattanaphom*, 159 F. Supp. 3d 1157, 1162–64 (E.D. Cal. 2016); *Bell*, 158 F. Supp. 3d at 921–24.

plain language in the same manner." *Id*. (citing *Park v. I.N.S.*, 252 F.3d 1018, 1022 (9th Cir. 2001) (applying an interpretation of § 924(c)(3) to § 16), *overruled on other grounds by Fernandez-Ruiz*, 466 F.3d 1121).

The Ninth Circuit has observed that § 924(c)'s crime of violence definition is very similar to a "violent felony" in the ACCA, *Chandler*, 743 F.3d at 650; however, similar or even identical statutory language does not always lead to uniform interpretation. *Johnson I*, 559 U.S. at 139–40. "Ultimately, context determines meaning." *Id*.; *see also* A. Scalia & B. Garner, *Reading Law* 32 (2012) ("Like ambiguity, vagueness can often be clarified by context."). For example, the Supreme Court came to different conclusions about the meaning of "force" in the context of ACCA's force clause, 18 U.S.C. § 924(e)(2)(B)(i), and 18 U.S.C. § 922(g)(9), which prohibits the possession of firearms by a person convicted by a misdemeanor crime of domestic violence, as defined by 18 U.S.C. § 921(a)(33)(A). *Compare Johnson I*, 559 U.S. at 140 ("physical force" required "violent force"), *with Castleman*, 134 S. Ct. at 1410 ("offensive touching" satisfied the "misdemeanor-specific meaning of 'force' "). Additionally, in *Nijhawan v. Holder*, 557 U.S. 29, 36 (2009), the Supreme Court rejected a petitioner's argument that an INA provision defining "aggravated felony," 8 U.S.C. § 1101(a)(43), should be interpreted like the ACCA's "violent felony" definition.

The Ninth Circuit has also declined to import similar criminal definitions into the immigration context. *See, e.g.*, *United States v. Rivera-Constantino*, 798 F.3d 900, 906 (9th Cir. 2015) (rejecting defendant's assertion that a generic conspiracy definition in the immigration context was binding on the interpretation of a sentencing guideline, noting "we will not blindly import a definition when the context makes clear that doing so would be inappropriate"); *Chandler*, 743 F.3d at 652 n.2 (noting that *United States v. Garcia-Santana*, 743 F.3d 666 (9th Cir. 2014), did not govern the case because the INA's "aggravated felony" definition substantially differed from the ACCA's "violent felony" definition); *United States v. Leal–Vega*, 680 F.3d 1160, 1165 (9th Cir. 2012) (noting that case law in the immigration context did not definitively resolve an issue "because the text of the immigration statute . . . differs from the text of the Sentencing Guidelines"). These findings align with Judge Callahan's observation in her dissent in *Dimaya*:

24

"Although the terms 'crime of violence,' 'violent felony,' and 'aggravated felonies' may appear to be synonymous to a lay person, courts have recognized that, as used in their statutory contexts, they are distinct terms of art covering distinct acts with different legal consequences." 803 F.3d at 1121 (Callahan, J., dissenting).[10]

A number of well-reasoned district court decisions in this circuit have held that *Johnson II* and *Dimaya* compel the conclusion that the residual clause of § 924(c)(3)(B) is constitutionally vague. *See*, *supra* note 9. However, the Ninth Circuit has yet to address the issue and explicitly stated that its holding in *Dimaya* did not reach the constitutionality of 16(b) outside of 8 U.S.C. § 1101(a)(43)(F) or cast any doubt on the constitutionality of 18 U.S.C. § 16(a)'s definition of a crime of violence. Moreover, three circuits that have addressed whether § 924(c)(3)(B) is constitutionally vague in light of *Johnson II* have upheld it as constitutional. The Second, Sixth, and Eighth Circuits have all concluded that § 924(c)(3)(B) is considerably narrower that the ACCA residual clause the Supreme Court found unconstitutional in *Johnson II*, and that much of *Johnson II*'s analysis does not apply to § 924(c)(3)(B). *See, e.g.*, *United States v. Taylor*, 814 F.3d 340, 379 (6th Cir. 2016) ("The Supreme Court and other circuits have also held that language identical to that used in § 924(c)(3)(B) is narrower than language identical to that used in the ACCA residual clause.") (citing *Leocal*, 543 U.S. at 10 n. 7).

As Judge Callahan's dissent in *Dimaya* points out, the Supreme Court in *Johnson II* did not even mention *Leocal v. Ashcroft*, 543 U.S. 1 (2004). In *Leocal*, the Supreme Court analyzed identical language to that contained in § 924(c)(3)(B) to determine whether a Florida conviction for driving under the influence was a crime of violence under § 16(a) or § 16(b). A unanimous court held it was not. *Id*. at 4. However, in reaching its holding, the Supreme Court indicated that the relevant inquiry in determining whether an offense qualifies as a crime of violence is not simply whether there is a substantial risk of physical injury. *Id*. at 10–11. Rather, it held that the relevant

---

[10] *See also United States v. Gomez-Leon*, 545 F.3d 777 (9th Cir. 2008):

> Confusingly, the phrase "crime of violence" is used to identify predicate offenses in a wide variety of contexts, but there are at least four different ways to determine whether an offense constitutes a "crime of violence." What may be a predicate offense under one approach is not necessarily a predicate offense under another approach.

*Id*. at 786–87 (collecting statutes) (internal citation omitted).

25

1   inquiry is whether there is a substantial risk that a *defendant* will use physical force against the

2   victim in committing the crime.  *Id*.  *Leocal* explained that burglary would be a crime of violence

3   under § 16(b) "*not* because the offense can be committed in a generally reckless way or because

4   someone may be injured, but because burglary, by its nature, involves a substantial risk that *the*

5   *burglar* will use force against a victim in committing the crime."  *Id*. at 10 (emphasis in original).

6        *Leocal* is binding Supreme Court precedent.  It considered a nearly identical residual clause

7   in § 16(b) and had no difficulty applying the statute.  Like the dissenting judge in *Dimaya*, the

8   court finds it significant that *Johnson II* did not mention, let alone call into question, the Supreme

9   Court's holding in *Leocal*.  *Leocal* addressed, and decided, whether a crime qualified as a crime

10  of violence because it is a crime, that by its nature, involves a substantial risk that the defendant

11  will use force against a victim in committing the crime.  Although it found that driving under the

12  influence was not a crime of violence, it explained that burglary is a crime, that by its nature

13  involves a substantial risk the defendant will use physical force against the victim in committing

14  the offense.  Thus, it is not surprising that in *Johnson II* the Supreme Court stated that its holding

15  would not call into question the constitutionality of dozens of other state and federal statutes that

16  use terms such as "substantial risk," "grave risk," and "unreasonable risk" in applying a qualitative

17  standard to "real-world conduct." 135 S. Ct at 2561.

18       In *Dimaya*, the Ninth Circuit held that § 16(b) was unconstitutionally vague applying the

19  principles established in *Johnson II*.  The Supreme Court has now accepted certiorari to resolve a

20  conflict in the circuits about whether the residual clause in § 16(b) is unconstitutionally vague.

21  *Dimaya* is binding precedent in this circuit and would be binding in this court if this was a § 16(b)

22  case.  It is not.  The court will take the Ninth Circuit at its word and will avoid deciding the

23  constitutionality of § 924(c)(3)(B)'s residual clause in a pretrial motion to dismiss based on the

24  well settled principle of constitutional avoidance.

25       "The Supreme Court has long held that courts should interpret statutes in a manner that

26  avoids deciding substantial constitutional questions."  *Kim Ho Ma v. Ashcroft*, 257 F.3d 1095,

27  1106 (9th Cir. 2001) (citing *DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades*

28  *Council*, 485 U.S. 568, 575 (1988); *United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916)).

The canon of constitutional avoidance is a rule of statutory interpretation.  *Id*.  The Supreme Court has recognized this "cardinal principle" to apply "where an otherwise acceptable construction of a statute would raise serious constitutional problems."  *DeBartolo*, 485 U.S. at 575.  In such cases, the court "will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress."  *Id*.  In other words, when deciding "which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail— whether or not those constitutional problems pertain to the particular litigant before the court." *Clark v. Martinez*, 543 U.S. 371, 380–81 (2005).

Following the canon of constitutional avoidance, courts must resort to "every reasonable construction" in order to "save a statute from unconstitutionality."  *DeBartolo*, 485 U.S. at 575 (collecting cases) (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)).  Thus, the rule is a "paramount principle of judicial restraint," *Kim Ho Ma*, 257 F.3d at 1106, and "a means of giving effect to congressional intent, not of subverting it."  *Clark*, 543 U.S. at 382.  "The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction; and the canon functions as *a means* of *choosing between them*."  *Id.* at 385 (emphasis in original) (citing *Almendarez–Torres v. United States*, 523 U.S. 224, 237–238 (1998); *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909)).  The Supreme Court has repeatedly instructed that the canon of constitutional avoidance applies when the constitutional issue is "substantial," "difficult," "serious," or "grave."  *See, e.g.*, *Jones v. United States*, 526 U.S. 227, 239 (1999); *Allentown Mack Sales v. NLRB*, 522 U.S. 359, 387 (1998); *United States v. Winstar Corp.*, 518 U.S. 839, 875 (1996); *Crowell v. Benson*, 285 U.S. 22, 62 (1932).

Here, the Second, Sixth, and Eighth Circuits have all held that the residual clause in § 924(c) is more narrow than the statute the Supreme Court found unconstitutional in *Johnson II*, and the Ninth Circuit has yet to decide the issue.  Although the Ninth Circuit found nearly identical language in § 16(b) unconstitutionally vague, it explicitly limited its holding.  *Leocal* remains binding Supreme Court precedent, and the Supreme Court has now accepted certiorari to resolve

the circuit split.  Under these circumstances, the court finds the canon of constitutional avoidance should apply to interpret § 924(c)(3)(B)'s residual clause to avoid the constitutional challenge.  *See Fuertes*, 805 F.3d at 499 n.5.  The "strong presumptive validity" attaching to Congress' enactments requires courts, if possible, "to construe, not condemn."  *Skilling*, 561 U.S. at 403 (quoting *Nat'l Dairy Prod. Corp.*, 372 U.S. at 32).  The *Mathis* Court recently noted that a "good rule of thumb" for reading its decisions is that "what they say and what they mean are one and the same."  136 S. Ct. at 2254.  Following this guidance, the court will not extend *Johnson II*'s holding outside of the ACCA context or *Dimaya*'s holding outside of the immigration context.  *Johnson II* expressly stated the decision did not call into constitutional doubt statutes using the term "substantial risk," which is used in § 924(c)(3)(B)'s residual clause.  The Supreme Court reiterated this in *Welch v. United States*, --- U.S. ----, 136 S. Ct. 1257, 1262 (2016) (noting that *Johnson II*'s analysis "cast no doubt on the many laws that 'require gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion*' ") (quoting *Johnson II*, 135 S. Ct. at 2561).  Accordingly, the court will address whether the predicate offenses qualify as crimes of violence under either the force clause or the residual clause of § 924(c)(3).

### III.   ANALYSIS OF THE UNDERLYING CHARGES

#### 1.  Count Two – Conspiracy to Impede or Injure a Federal Officer

Under the categorical approach, the court must first identify the elements of Count Two's conspiracy offense.  18 U.S.C. § 372 provides:

> If two or more persons in any State, Territory, Possession, or District conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof, or to induce by like means any officer of the United States to leave the place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties, each of such persons shall be fined under this title or imprisoned not more than six years, or both.

The plain language of § 372 and the Ninth Circuit's general conspiracy instruction set forth the elements the government must prove: (1) there was an agreement between two or more persons to commit the crime charged in the indictment (*i.e.*, the object of the conspiracy); (2) the defendant

28

became a member of the conspiracy knowing of its object and intending to help accomplish it; and (3) the object of the conspiracy. *See* 9th Cir. Model Crim. Jury Instructions, 8.20 "Conspiracy – Elements" (2010 ed.) (modified Dec. 2016); *United States v. Alghazouli*, 517 F.3d 1179, 1189 (9th Cir. 2008) (holding that a jury must be instructed "on an element of the crime that is the object of the conspiracy"). Five conspiracy objects are stated in § 372: (A) preventing, "by force, intimidation, or threat," any person from accepting or holding any office, trust, or place of confidence under the United States; (B) preventing, "by force, intimidation, or threat," any officer of the United States from discharging his official duties; (C) inducing, "by like means," any officer of the United States to leave the place where he is required to perform his official duties; (D) injuring an officer of the United States in his person or property on account of his lawful discharge of official duties, or while engaged in the lawful discharge thereof; or (E) injuring the property of an officer of the United States so as to molest, interrupt, hinder, or impede him in the discharge of his official duties. Although the Ninth Circuit has not directly addressed the elements of a § 372 offense, the First, Sixth, Eighth, Tenth, and Eleventh Circuits have and those opinions comport with the court's analysis.[11]

Payne argues that the objects stated in § 372 are means of committing an offense, not elements. However, the superseding indictment and case law interpreting § 372 do not support his argument. The Supreme Court instructs that courts may take a preliminary peek at the indictment

---

[11] *See United States v. Myers*, 524 F. App'x 479, 483 (11th Cir. 2013) ("A charge of conspiracy to prevent by intimidation a judicial officer from discharging his official duties, in violation of 18 U.S.C. § 372, requires the Government to prove that the defendant conspired to prevent, by force, intimidation, or threat, any officer of the United States from discharging his official duties."); *United States v. Hopper*, 436 F. App'x 414, 425 (6th Cir. 2011) ("The clause of § 372 which is the subject of Count One of the indictment simply requires an intent to injure an individual in his person or property, that the individual is an officer of the United States, and that the injury is planned to occur while the individual is engaged in the lawful discharge of his duties."); *United States v. Gerhard*, 615 F.3d 7, 20 (1st Cir. 2010) ("The charge in the indictment Count 1 under § 372 quoted only one clause of several in the statute, each of which defines a discrete crime."); *United States v. Beale*, 620 F.3d 856, 864 (8th Cir. 2010) (to sustain a § 372 conviction, "the government must submit sufficient evidence to prove that (1) a conspiracy existed, (2) the appellants voluntarily entered into the conspiracy, and (3) the members of the conspiracy conspired to prevent by force, intimidation or threat, an officer of the United States from discharging her duties"); *United States v. Rakes*, 510 F.3d 1280, 1288 (10th Cir. 2007) (a conviction under § 372 requires: "(1) two or more persons to conspire (2) to prevent any person from discharging the duties of their office under the United States (3) by force, intimidation, or threat"). *See also United States v. Crozier*, 268 F. App'x 604, 606 (9th Cir. 2008) (finding that the district court correctly interpreted § 372 "to apply to the injuring of property owned by the federal government and in the control of the officer").

for the sole purpose of seeing whether the government referenced one alternative element to the exclusion of all others. *Mathis*, 136 S. Ct. at 2256–57.  Here, the Superseding Indictment (ECF No. 27) alleges that defendants knowingly and willfully conspired "to prevent by force, intimidation, and threats of violence, federal law enforcement officers from discharging the duties of their office under the United States, and to induce by force, intimidation, and threats, federal law enforcement officers to leave the place where their duties were required to be performed …." *Id.* ¶ 158.  These allegations reference only two objects stated in § 372, objects B and C identified above, and excludes the other three objects.  When a statute contains alternative elements, a prosecutor must generally select the relevant element from the list of alternatives.  *See Dixon*, 805 F.3d at 1198.  Thus, the superseding indictment demonstrates that the objects listed in § 372 are separate elements of an offense.  Additionally, the First, Sixth, Eighth, Tenth, and Eleventh Circuits have stated the elements of a § 372 offense according to the specific object alleged in the indictment.  *See*, *supra* note 11.  Those opinions confirm that the § 372 objects are alternative elements rather than means of committing an offense.  Thus, § 372 is divisible, and the modified categorical approach may be applied.  *See, e.g.*, *United States v. Gerhard*, 615 F.3d 7, 20 (1st Cir. 2010) (each clause in § 372 "defines a discrete crime").

Payne asserts that § 372 fails to meet § 924(c)(3)'s physical force requirement because it lacks an overt act as an element of the offense.  The generic definition of conspiracy and certain federal conspiracy statutes add the additional element of an overt act.  *See, e.g.*, *United States v. Garcia-Santana*, 774 F.3d 528, 534–37 (9th Cir. 2014) (concluding that an overt act is an element of the generic definition of conspiracy); 18 U.S.C. § 371 (conspiracy to defraud the United States); 18 U.S.C. § 1511(a) (conspiracy to obstruct state or local law enforcement).  However, other conspiracy statutes require no overt act.  *See, e.g.*, *Whitfield v. United States*, 543 U.S. 209, 212–15 (2005) (proof of overt act not necessary for conspiracy to commit money laundering); *United States v. Shabani*, 513 U.S. 10, 15–16 (1994) (proof of overt act not necessary to violate drug statutes).  The plain language of § 372 does not require the government to prove an overt act.  Analyzing predicate offenses under § 924(c)(3)(A)'s force clause, certain district courts have held that conspiracy statutes which do not require an overt act, such as the Hobbs Act or

§ 372, are not crimes of violence because a defendant could be convicted of conspiracy merely for *agreeing* to accomplish the object of the conspiracy.[12]

The Ninth Circuit has not addressed whether a § 372 conspiracy satisfies the crime of violence definition of § 924(c)(3). However, in *United States v. Mendez*, 992 F.2d 1488 (9th Cir. 1993), the Ninth Circuit held that a conspiracy to commit an offense recognized as a crime of violence is itself a crime of violence under § 924(c)(3)(B)'s residual clause. The *Mendez* court held that Hobbs Act robbery "indisputably qualifies as a crime of violence" because it contains the element of actual or threatened force or violence. *Id*. at 1491. It found that "where conspirators agree to use 'actual or threatened force, or violence' to obtain personal property from another" under the Hobbs Act, "the risk that physical force may be used in the course of the conspiracy is substantial within the meaning of § 924(c)(3)(B)." *Id*. at 1492. The Ninth Circuit drew on the Second Circuit's reasoning:

> The existence of a criminal grouping increases the chances that the planned crime will be committed beyond that of a mere possibility. Because the conspiracy itself provides a focal point for collective criminal action, attainment of the conspirators' objectives becomes instead a significant *probability*. Thus, ascribing an ordinary meaning to the words, a conspiracy to commit an act of violence is an act involving a "substantial risk" of violence.

*Id*. at 1491 (quoting *United States v. Chimurenga*, 760 F.2d 400, 404 (2nd Cir. 1985)). Congress did not intend to allow a defendant charged with conspiracy to avoid a "crime of violence" determination "simply because his arrest prevents the bringing about of the conspiracy's objectives." *Id*.; *see also United States v. Juvenile Male*, 118 F.3d 1344, 1350 (9th Cir. 1997) (finding that a RICO conspiracy to commit Hobbs Act robberies is a crime of violence for purposes of the Juvenile Delinquency Act, 18 U.S.C. § 5032). Notably, a Hobbs Act conspiracy offense does not require an overt act for conviction.

---

[12] *See, e.g.*, *United States v. Baires-Reyes*, --- F. Supp. 3d ----, 2016 WL 3163049, at *2 (N.D. Cal. June 7, 2016) (because a conspiracy to commit robbery can be proven without use of physical force, the offense does not qualify as crime of violence under § 924(c)(3)(A)'s force clause); *Bundy*, 2016 WL 3361490, at *3–*4 (holding that § 372 conspiracy did not qualify as crime of violence under § 924(c)(3)(A)'s force clause); *Smith*, 2016 WL 2901661, at *5, n.54 ("Even if an overt act were required, a defendant could be convicted based on an agreement to commit the robbery and purchasing a ski mask to conceal his identity during the planned robbery. This still does not satisfy the force clause.").

31

Here, the court finds that Count Two's § 372 offense qualifies as a predicate crime of violence under § 924(c)(3)(B)'s residual clause.  The superseding indictment alleges a § 372 a conspiracy to prevent, by force, intimidation, and threats, federal law enforcement officers from discharging their duties, or to induce them, by like means, to leave their duty station.  As *Mendez* makes clear, the alleged conspiracy significantly increased the chances that crimes would occur.  The defendants in this case were not charged with the other conspiratorial objects provided in § 372 that do not require an agreement to use "force, intimidation, and threats," objects D and E identified above.  By its nature, as charged,  Count Two's § 372 offense involves a substantial risk of the use of physical force against another person.  Accordingly, the court will recommend that the Motions be denied as to Count Three.

### 2.   Count Five – Assault on a Federal Officer

Under the categorical approach, the court must first identify the elements of Count Five's assault offense, which is charged under § 111(a)(1), and (b).  Section 111 states, in relevant part:

> (a) In general.--Whoever--
>
>> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; …
>
> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.
>
> (b) Enhanced penalty.--Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 111.  Ninth Circuit case law and model jury instructions indicate that the government must prove the following elements for an offense charged under § 111(b): (1) the defendant forcibly assaulted a federal officer or employee; (2) the defendant did so while the federal officer or employee was engaged in, or on account of his or her official duties; (3) the defendant used a deadly or dangerous weapon or inflicted bodily injury.  9th Cir. Model Crim. Jury Instructions 8.4 (2010 ed.) (modified Dec. 2015).  Notably, the model jury instructions contain two instructions for § 111: one for § 111(a) (Instruction 8.3, "Assault on Federal Officer or Employee") and one for

§ 111(b) (Instruction 8.4, "Assault on Federal Officer or Employee [With a Deadly or Dangerous Weapon] [Which Inflicts Bodily Injury]").  The two differ in the third element.  Instruction 8.3 does not require the use of a deadly or dangerous weapon or infliction of bodily injury.  Thus, to establish a violation of § 111(b), the government must establish a violation of § 111(a) *plus* the use of a deadly or dangerous weapon or the infliction of bodily injury.

Under its plain language, § 111(b) qualifies as a crime of violence under § 924(c)(3)(A)'s force clause.  In *United States v. Juvenile Female*, 566 F.3d 943, 947 (9th Cir. 2009), the Ninth Circuit held that an assault charged under § 111(b) qualified as a crime of violence under § 16(a)'s force clause.  Although an offense charged under § 111(a) *alone* is not a crime of violence under § 924(c)(3)(A)'s force clause, an offense charged under § 111(b) is a crime of violence.  They are separate crimes.  *Bell*, 158 F. Supp. 3d at 914–18 (discussing *Juvenile Female*, 566 F.3d at 947 (aggravated assault under § 111(b) *is* a crime of violence) and *Dominguez–Maroyoqui*, 748 F.3d at 920–22 (felony assault under § 111(a) is not a crime of violence)).  Payne argues that the third element of the § 111(b) offense does not require physical force and *Juvenile Female* merely assumed that it did.  Relying on *Juvenile Female*, the *Bell* court rejected this argument and held that an aggravated assault charged under § 111(b) is a crime of violence under § 924(c)(3)(A).  158 F. Supp. 3d at 914–16.  *Bell* recognized that the Ninth Circuit had already established a "violent force" requirement under § 16 by the time *Juvenile Female* was decided, and *Bell* carefully analyzed the two means of satisfying the third element (use of a deadly or dangerous weapon *or* the infliction of bodily injury) and found both meet the force requirement.  *Id*. at 914 (quoting *Juvenile Female*, 566 F.3d at 948).  Payne points out that *Juvenile Female* predates both *Johnson I* and *Johnson II*, and contends that those decisions undermine the Ninth Circuit's reasoning.[13]  The court disagrees.  As the *Bell* court concluded, *Juvenile Female* is consistent with *Johnson I*, and *Juvenile Female* is still binding.  *Id*. at 915–16.  *Cf. United States v. Rafidi*, 829 F.3d 437, 443–46 (6th Cir. 2016) (a § 111(b) conviction constitutes a crime of violence within the meaning

---

[13]  Payne fails to explain how exactly *Johnson II* undermines *Juvenile Female*.  Because *Johnson II* focused on a *residual* clause, it does not guide the court's analysis under a *force* clause with respect to the type of force necessary to qualify as a crime of violence.

of § 924(c)(3)(A)).

The court finds that *Juvenile Female* forecloses Payne's argument that the § 111(b) offense does not qualify as a crime of violence under § 924(c)(3)(A)'s force clause.  Because a § 111(b) offense clearly satisfies the crime of violence definition under § 924(c)(3)(A)'s force clause, the court need not analyze the statute under the § 924(c)(3)(B)'s residual clause.  Accordingly, the court will recommend that Payne's motion be denied as to Count Six.

### 3.  Count Eight – Threatening a Federal Law Enforcement Officer

Under the categorical approach, the court must first identify the elements of Count Eight's threat offense, which is charged under § 115(a)(1)(B).[14]  Section 115 provides, in relevant part:

(a)(1) Whoever-- …

> (B) threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section,

> with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished….

18 U.S.C. § 115(a)(1).  Section 115(b) provides different punishments for assault, kidnapping, murder, and threats.  Relevant here, § 115(b)(4) states that a "threat made in violation of this section shall be punished by a fine under this title or imprisonment for a term of not more than 10 years, or both, except that imprisonment for a threatened assault shall not exceed 6 years."  When statutory alternatives carry different punishments, "they must be elements."  *Mathis*, 136 S. Ct. at 2256 (citing *Apprendi*, 530 U.S. at 490); *Cf. Garcia v. Lynch*, --- F. App'x. ----, 2016 WL 6819705, at *1 (9th Cir. Nov. 18, 2016) (citing *Mathis* and concluding that Oregon statute prohibiting drug distribution "is divisible as between possession and delivery of methamphetamine because it provides different punishments for each").  Thus, § 115(a) presents alternative elements creating functionally separate crimes and it is divisible.  *See Rendon*, 764 F.3d at 1085.  To convict under

---

[14]  Subsection (A) criminalizes the same conduct as Subsection (B) when aimed at family members: "The only pertinent difference between § 115(a)(1)(B) and § 115(a)(1)(A) is that subsection (A) covers threats against immediate family members of federal law enforcement officers and United States officials or judges, as opposed to threats made against the officials themselves."  *United States v. Hinkson*, 349 F. Supp. 2d 1350, 1354 (D. Idaho 2004).

18 U.S.C. § 115(a)(1)(B), the government must prove: "(1) the defendant made a threat, (2) against a federal law enforcement officer, United States official or judge, (3) with the intent to impede, intimidate, interfere with or retaliate against that officer or official, (4) while he or she was engaged in or on account of the performance of his or her official duties." *United States v. Hinkson*, 349 F. Supp. 2d 1350, 1354 (D. Idaho 2004) (citing *United States v. Orozco–Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990), *overruled in part on other grounds by Planned Parenthood of the Columbia / Willamette, Inc. v. American Coalition of Life Activists*, 290 F.3d 1058 (9th Cir. 2002) (en banc)).

The Ninth Circuit has not addressed the question of whether a threat offense under § 115(a)(1)(B) is a crime of violence under § 924(c)(3). Section 115(a)(1)(B) does not specifically require that a defendant threaten an official with violent force; however, Ninth Circuit case law interpreting § 115(a)(1)(B) holds that to be convicted of the offense requires proof of a "true threat," which meets the physical force requirement of § 924(c)(3)(A). *See, e.g.*, *Orozco–Santillan*, 903 F.2d at 1265–66 (holding that the "true threat" definition applies when evaluating threats under § 115(a)(1)(B)); *United States v. Stewart*, 420 F.3d 1007, 1016–19 (9th Cir. 2005). "A 'true threat' is criminally actionable, unprotected free speech." *Hinkson*, 349 F. Supp. 2d at 1355 (citation omitted). A "true threat" is subject to criminal liability only when the speaker subjectively intends the speech as a threat. *United States v. Bagdasarian*, 652 F.3d 1113, 1117–18 (9th Cir. 2011); *see also Elonis v. United States*, --- U.S. ----, 135 S. Ct. 2001, 2012 (2015) (to convict for communicating a threat, the government must prove a defendant made a communication for the subjective purpose of issuing a threat). A statement is a true threat if it communicates a "serious expression of intent to harm or assault." *Stewart*, 420 F.3d at 1016–17 (citation omitted); *see also Virginia v. Black*, 538 U.S. 343, 359 (2003). The Supreme Court has recognized that the prohibition on true threats "protects individuals from the fear of violence" in addition to protecting people "from the possibility that the threatened violence will occur." *Black*, 538 U.S. at 360. This line of cases addressing true threats indicates that criminal threat statutes, such as § 115(a)(1)(B), proscribe threats of violence.

Additionally, the Eleventh Circuit has expressly held that a § 115(a)(1)(B) offense was a crime of violence as defined by the federal sentencing guidelines. *United States v. Bonner*, 85

35

F.3d 522, 526–27 (11th Cir. 1996) (addressing U.S.S.G. § 4B1.2).  In *Bonner*, the defendant pleaded guilty to twenty counts of threatening to assault and murder an Assistant U.S. Attorney in retaliation for her previous prosecution of him, in violation of § 115(a)(1)(B).  85 F.3d at 523.  The district court found that the defendant's threats fell within the § 4B1.2 definition of a crime of violence.  *Id*.  Like § 924(c)(3)(A)'s force clause, U.S.S.G. § 4B1.2's crime of violence definition required as an "element the use, attempted use, or threatened use of physical force against the person of another."  *See id.* at 527.  The *Bonner* court affirmed the district court's finding because "the use or threatened use of force" was an element of the § 115(a)(1)(B) conviction for making threats.  *Id*. at 527.  In *United States v. Ladwig*, 432 F.3d 1001 (9th Cir. 2005), the Ninth Circuit agreed with the Eleventh Circuit's reasoning in the *Bonner* decision.  The Ninth Circuit held that the defendant's conviction under a Washington statute addressing threats to kill another person was a "violent felony" under the ACCA's force clause, and rejected the argument that it was "nonsensical" to conclude that making a harassing telephone call is a "violent felony."  *Id*. at 1005.  *Ladwig* quoted *Bonner*'s conclusion that the § 115(a)(1)(B) offense was a crime of violence because "the use or threatened use of force is an element of the crime."  *Id*. at 1002.

The court agrees with the reasoning in *Bonner* and *Ladwig* and, therefore, finds that § 115(a)(1)(B) meets the physical force requirement of § 924(c)(3)(A)'s force clause.  Accordingly, § 115(a)(1)(B) is not overbroad and it may serve as a predicate crime of violence for a § 924(c) offense because a true threat involves the threatened use of physical force.  Because a § 115(a)(1)(B) offense clearly satisfies the crime of violence definition under § 924(c)(3)(A)'s force clause, the court need not analyze the statute under the § 924(c)(3)(B)'s residual clause.  The court will recommend that Payne's Motion be denied as to Count Nine.

4.  Count Fourteen – Interference with Interstate Commerce by Extortion

Under the categorical approach, the court must first identify the elements of Count Fourteen's extortion offense, which is charged under 18 U.S.C. § 1951.  The Hobbs Act states the following, in relevant part:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any

36

> person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both. …
>
> (b) As used in this section-- …
>
>> (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

18 U.S.C. § 1951.  As relevant here, the elements of a Hobbs Act violation are (1) extortion and (2) a nexus with interstate commerce.  *United States v. Zemek*, 634 F.2d 1159, 1173 (9th Cir. 1980) (citing *Stirone v. United States*, 361 U.S. 212, 218 (1960)); *see also United States v. Bynum*, 327 F.3d 986, 992 (9th Cir. 2003).  The Ninth Circuit has expressly adopted the Hobbs Act definition of extortion as the generic federal definition in analyzing whether extortion is a crime of violence under the ACCA.  *United States v. Velasquez-Bosque*, 601 F.3d 955, 959 (9th Cir. 2010) (citing *United States v. Anderson*, 989 F.2d 310, 312–13 (9th Cir. 1993)); *see also Dixon*, 805 F.3d at 1196 n.3 (citing *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409 (2003) (generic extortion is "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats")).  As such, the court can easily conclude that the elements of Hobbs Act extortion are a categorical match to the generic definition.

### a.  Hobbs Act Extortion is Not Overbroad Because it Creates Three Different Crimes

Payne asserts that the Hobbs Act is overbroad because the extortion element could be accomplished by obtaining property "under color of official right," and this is an indivisible means of committing extortion that would not satisfy the physical force requirement.  However, the relevant case law, the Ninth Circuit's model jury instructions, and the superseding indictment all indicate that the Hobbs Act extortion lists three alternative elements creating three separate offenses: (1) extortion by public officials under color of official right; (2) extortion by private individuals by force, and (3) extortion by private individuals by non-violent threat.

First, the Supreme Court has interpreted Hobbs Act extortion as distinguishing between conduct by public officials (*i.e.*, "under color of official right") and conduct by private individuals (*i.e.*, "force, violence, or fear").  *Evans v. United States*, 504 U.S. 255, 260–65 (1992); *see also Wilkie v. Robbins*, 551 U.S. 537, 564 n.12 (2007) (noting that "the Hobbs Act expanded the scope

of common law extortion to include private perpetrators while retaining the core idea of extortion as a species of corruption, akin to bribery").  The *Evans* court explained that the Hobbs Act was amended in 1946 to expand the legislation's reach beyond public officials.  504 U.S. at 261–63.  Congress did so in direct response to *United States v. Teamsters*, 315 U.S. 521 (1942), which expressly "exempted labor from laws prohibiting robbery and extortion, whereas Congress had intended to extend such laws to all American citizens."  *Evans*, 504 U.S. at 263.  Analyzing the amended statute, the Court held:

> the word "induced" is a part of the definition of the offense by the private individual, but not the offense by the public official.  In the case of the private individual, the victim's consent must be "induced by wrongful use of actual or threatened force, violence or fear."  In the case of the public official, however, there is no such requirement.  The statute merely requires of the public official that he obtain "property from another, with his consent, ... under color of official right."  The use of the word "or" before "under color of official right" supports this reading.

*Id*. at 265.  *Evans* plainly separates extortion offenses committed by public officials and those committed by private individuals.

Second, the Ninth Circuit's model jury instructions indicate that Hobbs Act extortion lists alternative elements creating three separate offenses.  Three separate instructions are provided for Hobbs Act extortion: Instruction 8.142 "Hobbs Act – Extortion or Attempted Extortion *by Force*;" Instruction 8.142A, "Hobbs Act – Extortion or Attempted Extortion *by Non-Violent Threat*;" and Instruction 8.143, "Hobbs Act – Extortion or Attempted Extortion *Under Color of Official Right*."  *See* 9th Cir. Model Crim. Jury Instructions (2010 ed.) (emphasis added).[15]  The three model jury instructions for Hobbs Act extortion show three variants of the offense—alternative elements creating three separate extortion crimes.  Instruction 8.142 expressly requires the use of actual or threatened force, violence, or fear as an element, while 8.142A and 8.143 do not.  Instruction 8.142A requires threat of economic harm or some other nonviolent harm.  Instruction 8.143 requires that the public official/defendant know the specified property was given in return for taking or withholding some official action, or for an express promise to perform a particular official action.

---

[15]  Instructions 8.142 and 8.142A were last modified in June 2014.  Instruction 8.143 was last modified in June 2016.

Third, the allegations stated in the superseding indictment identify only one alternative element of Hobbs Act extortion, and excludes the other elements. *Mathis* instructs that the court may take a preliminary peek at the indictment for the sole purpose of seeing whether the government referenced one alternative element to the exclusion of all others. 136 S. Ct. at 2256–57. Count Fourteen alleges:

> On or about April 12, 2014, in the Federal District of Nevada, and elsewhere, [defendants] aided and abetted by each other, and by others known and unknown to the Grand Jury, did obstruct, delay and affect commerce, and attempt to obstruct, delay and affect commerce, and the movement of articles and commodities in such commerce, by extortion, as those terms are defined in [§ 1951], in that the defendants did obtain, and attempt to obtain, approximately 400 head of cattle at or near Bunkerville, Nevada, from the care, custody, and possession of the [Special Agent-in-Charge] and such other federal law enforcement officers engaged in impoundment operations, with their consent having been induced *by the wrongful use of force, violence, and fear* as described herein.

Superseding Indictment (ECF No. 27) ¶¶ 181–82 (emphasis added). The allegations in Count Fourteen indicate that the Hobbs Act states alternative elements for extortion because it alleges "the wrongful use of force, violence, and fear," but excludes all language regarding economic or some other nonviolent harm. Because prosecutors must generally select the relevant element from the list of alternatives, the superseding indictment confirms that Hobbs Act extortion statute contains alternative elements. *See Dixon*, 805 F.3d at 1198.

Two of the three alternative elements identified in the Hobbs Act extortion statute—extortion by non-violent force and extortion under color of official right—would not satisfy the force requirement and are, therefore, overbroad for the purposes of § 924(c)(3). Thus, the court must continue to step two of the categorical approach to determine whether the Hobbs Act is divisible. *See Almanza-Arenas*, 815 F.3d at 476. Because the Hobbs Act extortion statute contains multiple alternative elements creating functionally separate crimes, the statute is divisible. *See Rendon*, 764 F.3d at 1085 (citing *Descamps*, 133 S. Ct. at 2285 n.2). Numerous courts have found that the Hobbs Act is divisible. *See, e.g.*, *Smith*, 2016 WL 2901661, at *4;[16] *see also Mendez*, 992

---

[16] *Smith* concluded that the Hobbs Act creates "six functionally separate crimes": (1) interference with commerce by robbery; (2) interference with commerce by extortion; (3) attempt to interfere with commerce by robbery; (4) attempt to interfere with commerce by extortion; (5) conspiracy to interfere with commerce by robbery; and (6) conspiracy to interfere with commerce by extortion. 2016 WL 2901661 at *4. As

1    F.2d at 1491 (employing modified categorical approach and noting that the court need only find

2    that the charged crime is a crime of violence).

3         Payne asserts, however, that *Smith* and similar Hobbs Act case law predate *Mathis*, in

4    which the Supreme Court stated that a statute is not divisible simply because it contains disjunctive

5    phrasing.  This statement is true, but it was true long before *Mathis*.  *See* 136 S. Ct. at 2250 (quoting

6    *Schad v. Arizona*, 501 U.S. 624, 636 (1991)); *see also Almanza-Arenas*, 815 F.3d at 478 ("The

7    mere use of the disjunctive term 'or' does not automatically make a statute divisible.").  Payne

8    does not explain how applying *Mathis* would render the Hobbs Act indivisible.  More importantly,

9    the Ninth Circuit has recognized that *Mathis* and *Descamps* did not alter "*Taylor*'s holding setting

10   forth the pure categorical approach; rather, those decisions clarified when the modified categorical

11   approach applies."  *United States v. Martinez–Gomez*, --- F. App'x ----, 2016 WL 4254986, at *1

12   (9th Cir. Aug. 12, 2016) (citing *Mathis*, 136 S. Ct. at 2251–54; *Descamps*, 133 S. Ct. at 2283–86).

13   Additionally, the Supreme Court's analysis of the Act creating separate offenses for public

14   officials and private individuals in *Evans* clearly supports a finding that the Hobbs Act is a divisible

15   statute.  *See* 504 U.S. at 265.  The court finds that the Hobbs Act is divisible; thus, the analysis

16   continues to step three—the modified categorical approach.

17               *b.   Hobbs Act Extortion by Force is a Crime of Violence under*
18                    *§ 924(c)(3)(A)'s Force Clause Because it Includes Force as an Element*

19        Under the modified categorical approach, the court must determine the specific crime with

20   which the defendants are charged.  *See Mathis*, 136 S. Ct. at 2249; *Benally*, 843 F.3d 350, 2016

21   WL 6574490, at *2 (citing *Descamps*, 133 S. Ct. at 2281).  Because Hobbs Act extortion offense

22   is a current charge, rather than a prior conviction, the court looks to the charging documents to see

23   what the government specifically charged.  The superseding indictment charges defendants with

24   "interference with interstate commerce by extortion," without specifying a variant of the separate

25   Hobbs Act extortion offenses.  Since none of the 19 defendants are alleged to be public officials,

26   it is clear they are not charged with extortion under color of official right.  *See* Instruction 8.143

27

28   explained, this court further identifies three variants of interference with commerce by extortion.

40

(requiring the jury to find that "the defendant was a public official").  Because the Superseding Indictment (ECF No. 27) alleges that defendants extorted federal law enforcement officers "by the wrongful use of force, violence, and fear," defendants are charged with Hobbs Act extortion by force.  *Id.* ¶¶ 181–82.

To convict a defendant of Hobbs Act extortion by force, the government must prove: (1) the defendant induced a victim to part with property by the wrongful use of actual or threatened force, violence, or fear; (2) the defendant acted with the intent to obtain property; and (3) commerce from one state to another was affected in some way.  *See* Instruction 8.142.  The comments with the Instruction 8.142 indicate that acts or threats of physical violence are necessary for a conviction.  *Id.* (quoting *Scheidler*, 547 U.S. at 23 ("Congress did not intend to create a freestanding physical violence offense in the Hobbs Act.  It did intend to forbid acts or threats of physical violence in furtherance of a plan or purpose to engage in what the statute refers to as robbery or extortion (and related attempts or conspiracies).").

Payne asserts that "fear" cannot satisfy the physical force requirement because fear does not require physical harm or injury and can be accomplished by creating fear of economic loss.  In the context of Hobbs Act robbery, courts have easily rejected this argument.  *See*, *e.g.*, *United States v. Howard*, 650 F. App'x 466, 468 (9th Cir. May 23, 2016) (unpublished), *as amended* (June 24, 2016); *United States v. Wells*, No. 14-cr-00280-JCM-GWF, 2015 WL 10352877, at *5–*6 (D. Nev. Dec. 30, 2015) (Hobbs Act robbery is crime of violence under § 924(c)(3)(A) and the Supreme Court's *Castleman* decision forecloses idea that fear or intimidation does not satisfy the physical force requirement), *adopted by* 2016 WL 697107 (Feb. 19, 2016).  In *Howard*, the court rejected the argument that Hobbs Act robbery was not a crime of violence under § 924(c)(3)(A) because fear and intimidation may not require physical force.  650 F. App'x at 468.  The *Howard* court relied on *United States v. Selfa*, 918 F.2d 749, 751 (9th Cir. 1990), which examined a federal bank robbery statute that may be violated by "force and violence, or by *intimidation*," 18 U.S.C. § 2113(a) (emphasis added),[17] and found that intimidation satisfies the requirement of a

---

[17]  The Hobbs Act uses the word "fear" rather than "intimidation," but this was a distinction without a difference in *Howard*.

1    "threatened use of physical force." *Id*. ("intimidation" means willfully "to take, or attempt to take,

2    in such a way that would put an ordinary, reasonable person *in fear of bodily harm*").   Because

3    bank robbery by intimidation qualified as a crime of violence under U.S.S.G. § 4B1.2, which uses

4    a nearly identical crime of violence definition as § 924(c), "Hobbs Act robbery by means of fear

5    of injury also qualified as crime of violence." *Id*.  The court agrees with this reasoning.  To the

6    extent that Hobbs Act extortion could be accomplished by "fear," case law requires that to sustain

7    a conviction the government must prove that the fear used would put a reasonable, ordinary person

8    in fear of bodily harm, which satisfies the force requirement.

9         Hobbs Act extortion by force includes the wrongful use of actual or threatened force,

10   violence, or fear as an element.  Because extortion by force involves the use, attempted use, or

11   threatened use of physical force, Count Fourteen qualifies as a predicate crime of violence to

12   support a § 924(c) offense  The court will therefore recommend that Payne's motion be denied as

13   to Count Fifteen.

14        For the reasons explained,

15        **IT IS ORDERED** that the Motions for Joinder by Defendants Cliven D. Bundy, Melvin

16   D. Bundy, Ammon E. Bundy, Peter T. Santilli, Jr., Dave H. Bundy, Joseph D. O'Shaughnessy,

17   Eric J. Parker, O. Scott Drexler, Richard R. Lovelien, Steven A. Stewart, Todd C. Engel, Gregory

18   P. Burleson, Micah L. McGuire, Jason D. Woods (ECF Nos. 713, 715, 721, 722, 728, 739, 761,

19   762, 779, 784, 821, 827, 836, 846, 880) are **GRANTED**.

20        **IT IS RECOMMENDED** that:

21        1.  Defendant Peter T. Santilli, Jr.'s Motion to Dismiss (ECF No. 702) be **DENIED**.

22        2.  Defendant Ryan W. Payne's Motion to Dismiss (ECF No.  710) be **DENIED**.

23        Dated this 30th day of December, 2016.

24

25                                             _____
                                              PEGGY A. LEEN
26                                            UNITED STATES MAGISTRATE JUDGE

27

28