1
2
3
4

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br><br>        v.<br><br>RYAN W. PAYNE,<br><br>                                    Defendant. | Case No. 2:16-cr-00046-GMN-PAL<br><br>**ORDER**<br>– AND –<br>**REPORT OF FINDINGS AND RECOMMENDATION**<br><br>(Mot. to Dismiss – ECF No. 712) |

This matter is before the court on Defendant Ryan W. Payne's Motion to Dismiss Counts Ten, Eleven, and Twelve of the Superseding Indictment (ECF No. 712), filed October 3, 2016. This Motion is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4 of the Local Rules of Practice. The court has considered the Motion, the Joinders of Defendants Cliven D. Bundy, Ammon E. Bundy, Mel D. Bundy, Peter T. Santilli Jr., Dave H. Bundy, O. Scott Drexler, Richard R. Lovelien, Steven A. Stewart, Todd C. Engel, Joseph D. O'Shaughnessy, Micah L. McGuire, Jason D. Woods (ECF Nos. 717, 720, 724, 731, 741, 752, 764, 782, 827, 838, 848, 880), the government's Response (ECF No. 923), and Payne's Reply (ECF No. 952).

## BACKGROUND

### I.    THE SUPERSEDING INDICTMENT

Defendant Ryan Payne and 18 co-defendants are charged in a Superseding Indictment (ECF No. 27) returned March 2, 2016, alleging 16 separate counts. The superseding indictment in this case arises out of a series of events related to a Bureau of Land Management ("BLM") impoundment of Cliven Bundy's cattle following a two-decade-long battle with the federal government. Beginning in 1993, Cliven Bundy continued to graze cattle on land commonly referred to as the "Bunkerville Allotment" without paying required grazing fees or obtaining required permits. The United States initiated civil litigation against Cliven Bundy in 1998 in the

United States District Court for the District of Nevada.  The court found that Cliven Bundy had engaged in unauthorized and unlawful grazing of his livestock on property owned by the United States and administered by the Department of the Interior through the BLM.  The court permanently enjoined Cliven Bundy from grazing his livestock on the Allotment, ordered him to remove them, and authorized the BLM to impound any unauthorized cattle.  Bundy did not remove his cattle or comply with the court's order and injunction. The United States went back to court.  Subsequent orders were entered in 1999 and 2013 by different judges in this district permanently enjoining Bundy from trespassing on the Allotment and land administered by the National Park Services ("NPS") in the Lake Mead National Recreation Area,[1] ordering Bundy to remove his cattle, and explicitly authorizing the United States to seize, remove, and impound any of Bundy's cattle for future trespasses, provided that written notice was given to Bundy.

On February 17, 2014, the BLM entered into a contract with a civilian contractor in Utah to round up and gather Bundy's trespass cattle.  BLM developed an impoundment plan to establish a base of operations on public lands near Bunkerville, Nevada, about seven miles from the Bundy ranch in an area commonly referred to as the Toquop Wash.  On March 20, 2014, BLM also entered into a contract with an auctioneer in Utah who was to sell impounded cattle at a public sale.  Bundy was formally notified that impoundment operations would take place on March 14, 2014.  The following day, Bundy allegedly threatened to interfere with the impoundment operation by stating publicly that he was "ready to do battle" with the BLM, and would "do whatever it takes" to protect "his property."  The superseding indictment alleges that after being notified that BLM intended to impound his cattle, Bundy began to threaten to interfere with the impoundment operation, and made public statements he intended to organize people to come to Nevada in a "range war" with BLM and would do whatever it took to protect his cattle and property.

The superseding indictment alleges that, beginning in March 2014, the 19 defendants charged in this case planned, organized, conspired, led and/or participated as followers and gunmen in a massive armed assault against federal law enforcement officers to threaten, intimidate,

---

[1] By 2012, Bundy's cattle had multiplied and he also began grazing his cattle on land administered by the NPS in the Lake Mead National Recreation Area without obtaining grazing permits or paying grazing fees.

and extort the officers into abandoning approximately 400 head of cattle owned by Cliven Bundy. The removal and impoundment operation began on April 5, 2014.  On April 12, 2014, defendants and hundreds of recruited "followers" executed a plan to recover the cattle by force, threats, and intimidation.  Defendants and their followers demanded that officers leave and abandon the cattle and threatened to use force if the officers did not do so.  The superseding indictment alleges armed gunmen took sniper positions behind concrete barriers and aimed their assault rifles at the officers. Defendants and their followers outnumbered the officers by more than 4 to 1, and the potential firefight posed a threat to the lives of the officers, as well as unarmed bystanders which included children.  Thus, the officers were forced to leave and abandon the impounded cattle.

After the April 12, 2014 confrontation with federal officers, the superseding indictment alleges that the leaders and organizers of the conspiracy organized armed security patrols and check points in and around Cliven Bundy's Bunkerville ranch to deter and prevent any future law enforcement actions against Bundy or his co-conspirators, and to protect Bundy's cattle from future law enforcement actions.

## II.   CHARGES AND STATUTES RELEVANT TO THE CURRENT MOTION

The current motion contests three counts of the Superseding Indictment (ECF No. 27):

- Count Ten – Obstruction of the due administration of justice in violation of 18 U.S.C. § 1503 and § 2.[2]  This count alleges that Defendants Cliven Bundy, Ryan Bundy, Ammon Bundy, Ryan Payne, Peter Santilli, and Dave Bundy "threatened to impede the execution of federal Court Orders when R. Bundy, D. Bundy, and others working with them, attempted to impede and obstruct a BLM convoy at or near Nevada State Route 170 while the convoy was engaged in impoundment operations," on April 6, 2014.  *Id.* ¶¶ 173–74.

- Count Eleven – Obstruction of the due administration of justice in violation of 18 U.S.C. § 1503 and § 2.  This count alleges that Cliven Bundy, Ryan Bundy, Ammon Bundy, Ryan Payne, Peter Santilli, and Mel Bundy "threatened force and violence and used force and violence to impede and thwart the execution of federal Court Orders in that the defendants did impede and obstruct, and attempt to impede and obstruct, a BLM convoy while it was engaged in impoundment operations near Nevada State Route 170" on April 9, 2014.  *Id.* ¶¶ 175–76.

- Count Twelve – Obstruction of the due administration of justice in violation of 18 U.S.C. § 1503 and § 2.  This count alleges that Payne and all co-defendants "threatened force and violence and used force and violence to impede, instruct, and thwart the execution of federal Court Orders by assaulting and extorting federal officers at the Impoundment Site," on April 12, 2014.  *Id.* ¶¶ 177–78.

---

[2]  18 U.S.C. § 2 addresses aiding and abetting.

In general, Counts Ten, Eleven, and Twelve (the "§ 1503 Counts") allege that defendants obstructed the due administration of justice by: (1) impeding and obstructing, and attempting to impede and obstruct, a BLM convoy while it was engaged in operations to impound the trespassing cattle; and (2) assaulting and extorting federal officers at the impoundment site.

In relevant part, § 1503 states:

> Whoever . . . *corruptly or by threats or force,* or by any threatening letter or communication, *influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice,* shall be punished as provided in subsection (b) . . . .

18 U.S.C. § 1503(a) (emphasis added).  The italicized portion is known as § 1503's "omnibus clause."

## DISCUSSION

### I.   LEGAL STANDARDS

Pursuant to Rule 12 of the Federal Rule of Criminal Procedure,[3] a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1).  Rule 12(b)(3) specifies the motions which must be made before trial.  Among them is a motion to dismiss for failure to state an offense.  Fed. R. Crim. P. 12(b)(3)(v).  A pretrial motion to dismiss a criminal case is appropriate when it involves questions of law rather than fact.  *United States v. Schulman*, 817 F.2d 1355, 1358 (9th Cir. 1987).

In ruling on a pretrial motion to dismiss, the district court is "bound by the four corners of the indictment." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014); *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) ("On a motion to dismiss an indictment for failure to state an offense the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged.").  The court should not consider evidence that does not appear on the face of the indictment.  *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996)).  Thus, a defendant is not entitled to a pre-trial evidentiary hearing to obtain a preview of the government's evidence and an opportunity to cross-examine its witnesses.  *Id.* at 669 ("A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence.").

---

[3]  All references to a "Rule" or the "Rules" in this Order refer to the Federal Rules of Criminal Procedure.

In determining whether a cognizable offense has been charged, the court does not consider whether the government can *prove* its case, only whether accepting the facts as alleged in the indictment as true, a crime has been alleged. *United States v. Milovanovic*, 678 F.3d 713, 717 (9th Cir. 2012). Rule 12 motions cannot be used to determine "general issues of guilt or innocence," which "helps ensure that the respective provinces of the judge and jury are respected." *Boren*, 278 F.3d at 914 (citation omitted). A defendant may not challenge a facially-sufficient indictment on the ground that the allegations are not supported by adequate evidence. *Jensen*, 93 F.3d at 669 (citation omitted). However, the court may dismiss an indictment if "it fails to recite an essential element of the charged offense." *United States v. Ezeta*, 752 F.3d 1182, 1184 (9th Cir. 2014) (citing *United States v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005)).

## II.   THE PARTIES' POSITIONS

### A.  Payne's Motion

The current motion asserts that the § 1503 Counts fail to state offenses because: (1) the civil case between Cliven Bundy and the government ended months before defendants allegedly impeded and obstructed a BLM convey from executing federal court orders to impound Bundy's cattle; and (2) the omnibus clause of § 1503 is constitutionally overbroad.

Payne contends that the underlying civil case, *United States v. Bundy*, 2:98-cv-00531,[4] ended on October 9, 2013, with the entry of a permanent injunction that enjoined Cliven Bundy from trespassing on the specified public lands and permitted the United States to seize and remove to impound any trespassing cattle. *Id*., Order (ECF No. 56) (granting the government's Motion to Enforce Judgment and entering permanent injunction). Section 1503 requires a nexus to a pending judicial proceeding and only applies to conduct similar in nature to interfering with witnesses and jurors. Because the alleged conduct occurred in April 2014, after the *Bundy* civil case ended, the § 1503 Counts lack a nexus to a pending proceeding. Additionally, impeding the Bureau of Land Management ("BLM") from impounding cattle is not "similar in nature" to juror intimidation or

---

[4]  Payne's Motion refers to case no. 2:98-cv-00531 as "the underlying *Bundy* civil case" and "the civil *Bundy* case." Mot. at 3, 6. As discussed below, this was not the only civil case in which the government obtained a permanent injunction and judgment against Cliven Bundy for trespassing cattle.

influencing a juror. Payne maintains that § 1503 proscribes conduct that obstructs the administration of justice, "not *post hoc* enforcement of civil orders."

Payne further argues that § 1503's omnibus clause is constitutionally overbroad.  Citing Judge Kozinski's concurrence in *United States v. Bonds*, 784 F.3d 582 (9th Cir. 2015) (en banc), Payne claims that § 1503's "amorphous nature" is at "odds with the constitutional requirement that individuals have fair notice as to what conduct may be criminal."  Mot. at 8 (quoting *Bonds*, 784 F.3d at 584–85).  In the context of threatening statements, Judge Kozinski called for a "prudential limitation" requiring that the statement be "material."  *Id*. at 585 (citing *United States v. Thomas*, 612 F.3d 1107, 1128–29 (9th Cir. 2010)).  Because the superseding indictment does not specify the alleged threatening communications, the government cannot prove that materiality. Payne asserts that the omnibus clause of § 1503 is unconstitutionally overbroad particularly in a case like this where the government has indicted 19 defendants with a myriad of conduct over three days.

### B.  The Government's Response

In its Response (ECF No. 923), the government contends that the charging language of the § 1503 Counts tracks the language of § 1503.  The allegation in these counts contain the elements of the offense charged and fairly inform the defendants of the charges against which they must defend.  This is the only relevant inquiry in a Rule 12 motion to dismiss.  Payne's motion is based on speculation about what evidence may be introduced at trial concerning violations of multiple court orders.  None of that evidence is before the court or necessary to rule on the current motion.

The government points out that all of the cases cited by Payne in his motion involve *post*-conviction reviews of the sufficiency of the evidence to sustain convictions under § 1503.  These cases do not involve *pre*-trial motions to dismiss challenging whether the indictment states an offense under Rule 7(c), and are thus not relevant.

The government relies on two cases from the Eighth and Third Circuits upholding convictions under § 1503 when defendants were charged with obstructing the execution of court orders.  *United States v. Sussman*, 709 F.3d 155, 168–70 (3rd Cir. 2013) (affirming § 1503 conviction when defendant had knowledge of final court order and permanent injunction explicitly ordering delivery of gold coins to federal agency but he removed coins from safety deposit box,

holding that collection of judgment did not concern "some ancillary proceedings" but rather "the processes authorized by law"); *United States v. Frank*, 354 F.3d 910, 916–19 (8th Cir. 2004) (affirming § 1503 conviction of defendant who had knowledge that a court order was issued to seize his vehicle but then moved the car, concealed its location, and told agents he could not help them when he was asked for the car's location).

The government also cites *United States v. Thomas*, 612 F.3d 1107 (9th Cir. 2010), in support of its arguments.  There, the Ninth Circuit affirmed a § 1503 conviction rejecting the defendant's arguments that the government failed to plead and prove materiality.  *Id.* at 1128. The court held that materiality was "a requisite element of conviction."  However, it did not hold that the government must plead materiality in an indictment.

The government claims that Payne is essentially asking the court to review the evidence and consider matters outside the four corners of the superseding indictment which controlling authority clearly proscribes.  The court should therefore deny the motion to dismiss.

**III.   ANALYSIS**

### A. The Court Orders and Permanent Injunctions entered in the *Bundy* Civil Cases Constitute Pending Judicial Proceeding for Purposes of a § 1503 Offense

Payne contends that "the *Bundy* civil case" was complete on October 9, 2013, with the entry of a permanent injunction; thus, there was no pending judicial proceeding in April 2014 when the alleged criminal conduct occurred and the § 1503 Counts fail to state a requisite nexus to a judicial proceeding.  As an initial matter, the superseding indictment does not refer to a single permanent injunction or court order.  Rather, it refers to multiple court orders and injunctions entered by this court in civil proceedings involving Defendant Cliven Bundy.  The district court first entered a permanent injunction in November 1998. *United States v. Bundy*, No. 2:98-cv-0531 ("*Bundy I*"), 1998 U.S. Dist. LEXIS 23835 (D. Nev. Nov. 3, 1998), Order (No. 19) (granting motion for summary judgment).  The Ninth Circuit affirmed the district court's ruling in July 1999. *United States v. Bundy*, 178 F.3d 1301 (9th Cir. 1999); *see also Bundy I*, No. 2:98-cv-0531, Order (No. 42).  The district court modified the injunction and entered judgment in September 1999. *Bundy I*, No. 2:98-cv-0531, Judgment (No. 46).  The United States filed a second civil suit against

1   Cliven Bundy because by then his cattle had multiplied and were also grazing on land managed by

2   the National Park Service within the boundaries of the Lake Mead National Recreation Area.

3   *United States v. Bundy*, 2:12-cv-0804 ("*Bundy II*"), 2013 WL 3463610 (D. Nev. July 9, 2013),

4   Order (ECF No. 35) (granting motion for summary judgment and permanently enjoining trespass).

5   The permanent injunction entered in *Bundy I* was modified in October 2013 to explicitly authorize

6   the United States to seize, remove, and impound any of Cliven Bundy's cattle for future trespasses,

7   provided that he was given written notice.   *Bundy I*, No. 2:98-cv-0531, Order (ECF No. 56)

8   (granting motion to enforce injunction).

9          To state an offense under § 1503's omnibus clause, the government must allege that (1) the

10  defendant influenced, obstructed, or impeded, or tried to influence, obstruct, or impede the due

11  administration of justice; and (2) the defendant acted corruptly, or by threats or force, or by any

12  threatening communication, with the intent to obstruct justice.   *See, e.g.*, 9th Cir. Model Jury

13  Instruction 8.131.  "Obstruction of justice requires acts to thwart some aspect of the Government's

14  judicial function." *United States v. Weber*, 320 F.3d 1047, 1050 (9th Cir. 2003) (citation omitted).

15  Thus, a defendant can only be convicted under § 1503 if there is a pending judicial proceeding.

16  *Id*.  A judicial proceeding typically terminates "when the deadline for filing a timely notice of

17  appeal has passed." *United States v. Fleming*, 215 F.3d 930, 936 (9th Cir. 2000) (citation omitted).

18  However, the requirement of "a pending proceeding is intertwined with the intent element of the

19  crime of endeavoring to obstruct justice."   *Id*. at 937 (citing *Pettibone v. United States*, 148 U.S.

20  197, 206–07 (1893) (holding that a person lacking knowledge of a pending proceeding necessarily

21  lacks an intent to obstruct justice)).   The Supreme Court described this intersection of the judicial

22  proceeding and the defendant's intent as a "nexus requirement":

23          The action taken by the accused must be with an intent to influence judicial or grand
        jury proceedings; it is not enough that there be an intent to influence some ancillary
24          proceeding, such as an investigation independent of the court's or grand jury's
        authority.  Some courts have phrased this showing as a "nexus" requirement—that
25          *the act must have a relationship in time, causation, or logic with the judicial
        proceedings*.  In other words, the endeavor must have the "natural and probable
26          effect" of interfering with the due administration of justice.

27  *United States v. Aguilar*, 515 U.S. 593, 599 (1995) (internal quotation and citation omitted)

28  (emphasis added).

A final or permanent injunction is a continuing process over which a court of equity necessarily retains jurisdiction in order to do equity. *See, e.g.*, *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932). Courts have inherent authority to enforce a permanent injunction where the enjoined party continues to engage in conduct that violates the injunction. *See Sys. Fed'n No. 91, Ry. Emp. Dep't, ALF-CIO v. Wright*, 364 U.S. 642, 646–47 (1961). Furthermore, "sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen." *Wright*, 364 U.S. at 647; *see also Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 380 (1992) (reaffirming the court's "need for flexibility" in administering injunctive relief). The power to modify derives from "the fact that an injunction often requires *continuing supervision* by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief." *Wright*, 364 U.S. at 647 (emphasis added).

The Ninth Circuit has not addressed a § 1503 prosecution in which a defendant's conduct was alleged to violate a permanent injunction. However, the Third and Eighth Circuits have upheld § 1503 convictions involving violations of final orders and permanent injunctions. *See, e.g.*, *United States v. Sussman*, 709 F.3d 155, 168–70 (3d Cir. 2013); *United States v. Frank*, 354 F.3d 910, 916–19 (8th Cir. 2004). In both *Sussman* and *Frank*, the underlying judicial proceedings were no longer "pending" since final orders and injunctions had been entered and appellate review exhausted. However, both courts affirmed convictions for obstruction of justice for violations of court orders entered in earlier judicial proceedings.

In *Sussman*, the government initiated criminal charges under § 1503 in 2008. The charges stemmed from an underlying civil action in which the Federal Trade Commission ("FTC") obtained a judgment and other forms of equitable relief against Sussman and his co-defendant arising out of their abusive debt collection activities. The district court granted the FTC a temporary restraining order, which included an asset freeze provision prohibiting Sussman and his co-defendants from accessing any safety deposit boxes in their names or to which they had access. The Court of Appeals affirmed the district court's final order in the civil case, and Sussman petitioned for rehearing, which was denied. A day after one of Sussman's attorneys advised him

not to enter the bank to access his safety deposit box where gold coins were kept, Sussman entered the bank and emptied out all of the gold coins.  The bank subsequently realized it had made a mistake allowing Sussman to have access to the box and contacted the FTC.  The FTC initiated an investigation and demanded the coins back.  Although Sussman eventually returned the coins, the FTC initiated criminal proceedings under § 1503 for obstruction of justice.

Sussman was convicted and appealed his criminal conviction.  On appeal, the Third Circuit rejected all of Sussman's arguments that he could not be convicted for obstruction for violating the orders and temporary restraining order entered by the district court in connection with the FTC action.  It specifically rejected Sussman's arguments that he could not be convicted because the underlying orders involved "some ancillary proceeding" as distinguished from a judicial proceeding as required by the statute.  The bank was maintaining Sussman's box containing the gold coins as a frozen account pursuant to a direct court order. The Third Circuit found the omnibus provision of § 1503 "is all-embracing and designed to meet any corrupt conduct in an endeavor to obstruct or interfere with the due administration of justice."  It rejected all of Sussman's contentions that his conviction could not be based on violations of orders entered in the underlying FTC case which as no longer "pending" and sustained his conviction.

Payne argues that *Sussman* is distinguishable because the defendant appealed from the underlying injunction which found that the FTC had an ownership interest in the coins in the frozen account.  Reply at 5–6.  However, Sussman emptied the gold coins from his safety deposit box after his petition for rehearing en banc was denied.  709 F.3d at 160–61.

In *Frank*, the defendant and his co-defendant were convicted in federal court in 1988 of burning down the house of an Iowa district court judge who had entered an adverse ruling against him.  Both defendants were subsequently indicted and convicted for devising and participating in a scheme to defraud the United States in its efforts to collect a fine and restitution payments arising from the arson conviction.  The government's case against both defendants was premised largely on the theory that they had agreed with others to hide Frank's assets from the government and to lie about the existence and ownership of those assets.  On appeal, Frank and his co-defendant challenged the sufficiency of the evidence supporting their convictions.  One of the counts charged

obstruction and aiding and abetting the obstruction of justice in relation to the "administration, supervision, and execution" of financial obligations imposed on Frank.  The evidence at trial provided examples of the defendants' conduct, including evidence that: (1) the defendants planned with others to give false information to the grand jury, (2) Frank told an auto dealer to withhold information from investigators, (3) the defendants contacted another auto dealer who had business dealings with Frank during the grand jury investigation, and (4) the defendants conducted transactions in names other than Frank to avoid the enforcement of the prior judgment against Mr. Frank.

Both defendants were convicted of obstructing justice in violation of § 1503, and Frank was convicted on a second count of obstructing justice for moving, concealing, and refusing to advise law enforcement agents of the location of a vehicle with the knowledge that a court order had been issued to seize the vehicle.  The Eighth Circuit found that the jury was properly instructed and the evidence was sufficient to sustain Frank's conviction for obstructing justice in connection with restitution and seizure orders entered in the underlying arson case.

Payne contends that *Frank* does not square with Ninth Circuit precedent holding that a defendant cannot be convicted for interfering with the terms of another's probation.  Reply at 5 n.1 (citing *Haili v. United States*, 260 F.2d 744, 746 (9th Cir. 1958)).  The § 1503 Counts in this case do not charge defendants with interfering with the terms of another's probation.  Frank was convicted on *two* counts of obstructing justice.  Relevant to this case is the conviction "for moving, concealing, and refusing to advise law enforcement agents of the location of a Chrysler LeBaron, for the purpose of obstructing justice and with the knowledge that a court order had been issued to seize the vehicle." *Frank*, 354 F.3d at 918.  *Haili* and *Frank* are not at odds.

Here, Payne argues that the Bundy civil case was not pending in April 2014 because the district court had "entered its final order on October 9, 2013," and no party appealed.  Reply (ECF No. 952) at 5 (citing Fed. R. App. P. 4(a)(1) (a notice of appeal must be filed within 30 or 60 days after entry of the judgment or order appealed from).  Payne maintains that a proceeding is pending "while on appeal and terminates when the deadline for filing a timely notice of appeal has passed." *Id*.  However, the cases cited clearly indicate that the court issuing orders and permanent

injunctions retains jurisdiction to modify and enforce its orders and injunctions. A final order or injunction is a continuing judicial process over which the court has jurisdiction to enforce its orders. The conduct charged in the superseding indictment sufficiently pleads that the defendants obstructed justice by engaging in conduct to interfere with and thwart enforcement of multiple court orders and injunctions over which this court had continuing jurisdiction.

### B.   § 1503 is Not Constitutionally Overbroad

An indictment must contain a plain, concise and definite written statement of the essential facts constituting the offense charged. *United States v. Forrester*, 616 F.3d 929, 940 (9th Cir. 2010) (quoting Fed. R. Crim. P. 7(c)(1)). In ruling on a pretrial motion to dismiss, the court looks at the indictment as a whole, including facts which are necessarily implied, and construes it according to common sense. *United States v. Kaplan*, 836 F.3d 1199, 1216 (9th Cir. 2016).

Payne argues that the omnibus clause of § 1503 is unconstitutionally overbroad because it does not require that any threatening statements under § 1503 be material. The government alleges that Payne and others obstructed the due administration of justice by making "threatening communications," but the superseding indictment does not specify what those threatening communications were. To sustain a conviction, the government must prove materiality, that is, that the statements "had a natural tendency to influence, or [were] capable of influencing, the decision of the decision making body." Payne asserts that the government cannot prove this element because there was no "decision making body" to influence as the *Bundy* civil judgement was issued in 2013. Additionally, he argues that BLM workers do not constitute a decision making body for purposes of the statute. If materiality is not an element the government must prove, the statute is overbroad and violates Payne's due process rights.

Payne's arguments lack merit. The Ninth Circuit has not held that the government must allege the materiality of threatening statements in a superseding indictment to adequately charge a § 1503 offense. Rather, the Ninth Circuit has held the government must *prove* the implied element of materiality to convict a defendant for obstruction. *Thomas*, 612 F.3d at 1129. Faced with this authority, Payne's reply did not argue § 1503 is overbroad. The court finds that the § 1503 Counts contain the elements of the offense and enable defendants to prepare their defense. Although the

government must prove materiality of the threatening communications at trial, the superseding indictment need not be dismissed for failure to plead materiality.

## CONCLUSION

For the reasons explained,

**IT IS ORDERED** that the Motions for Joinder by Defendants Cliven D. Bundy, Ammon E. Bundy, Mel D. Bundy, Peter T. Santilli Jr., Dave H. Bundy, O. Scott Drexler, Richard R. Lovelien, Steven A. Stewart, Todd C. Engel, Joseph D. O'Shaughnessy, Micah L. McGuire, Jason D. Woods (ECF Nos. 717, 720, 724, 731, 741, 752, 764, 782, 827, 838, 848, 880) are **GRANTED** in that their requests to join in Payne's substantive arguments are granted.

**IT IS RECOMMENDED** that Defendant Ryan Payne's Motion to Dismiss Counts Three, Six, Nine, and Fifteen Due to Insufficiency of the Superseding Indictment (ECF No. 712) be **DENIED**.

Dated this 4th day of January, 2017.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE