# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:16-cr-00046-GMN-PAL |
| vs. ) | |
| ) | **ORDER** |
| CLIVEN D. BUNDY, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court are two Motions to Compel, (ECF No. 1465, 1478), and two Motions to Dismiss, (ECF No. 1491, 1492, 1493), variously filed and joined by Defendants Cliven D. Bundy, Ryan C. Bundy, Ammon E. Bundy, Ryan W. Payne, Peter T. Santilli, Jr., Melvin D. Bundy, David H. Bundy, Brian D. Cavalier, Blaine Cooper, Gerald A. Delemus, Eric J. Parker, O. Scott Drexler, Richard R. Lovelien, Steven A. Stewart, Todd C. Engel, Gregory P. Burleson, Joseph D. O'Shaughnessy, Micah L. McGuire, and Jason D. Woods (collectively "Defendants"). For the reasons discussed below, the Court GRANTS the Motions to Compel and DENIES the Motions to Dismiss.

**I.     BACKGROUND**

On January 30, 2017, the Office of Inspector General ("OIG") of the United States Department of Interior ("DOI") posted a report to its website titled "Investigative Report of Ethical Violations and Misconduct by Bureau of Land Management Officials," ("OIG Report"). (*See* Ex. 1 to Mot. to Compel ("OIG Report"), ECF No. 1465-1). The OIG Report states that an unnamed "Supervisory Agent violated Federal ethics rules when he used his influence with Burning Man officials to obtain three sold-out tickets and special passes for his father, girlfriend, and a family friend" and "misused his BLM official vehicle when he transported his

girlfriend while at the event." (*Id.* at 2). Further, the OIG Report determined that the "Supervisory Agent intervened in the hiring process by increasing the number of candidates that would be interviewed," resulting in the hiring of the Supervisory Agent's friend as a BLM special agent. (*Id.* at 3). The OIG Report concluded by stating that the OIG is "forwarding [its] report of investigation to the Assistant Secretary for Land and Minerals Management for any action deemed appropriate." (*Id.* at 16).

Although the OIG Report does not name the Supervisory Agent involved, subsequent news articles posit his identity as Supervisory Special Agent Daniel P. Love ("SSA Love") of the Bureau of Land Management ("BLM"), an agency of the DOI. (Mot. to Dismiss 4:7–20, ECF No. 1491). The Government has represented that it intends to call SSA Love as a witness during trial. (*Id.*). Each of Defendants' Motions to Compel and Motions to Dismiss complain that the Government's failure to disclose the OIG Report warrant various forms of relief. The Court considers the Motions below.

## II.  **DISCUSSION**

### A.  Motions to Compel

In the instant Motions to Compel, Defendants point out that the OIG Report posted online purports to be "a version . . . prepared for public release." (*See* OIG Report at 1). Accordingly, Defendants "request[] that the Court issue an Order to produce the unredacted report for *in camera* review." (Mot. to Compel 2:8–9, ECF No. 1465).

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court ruled that the suppression by the prosecution of evidence favorable to an accused, upon request for disclosure by the accused, violates due process where the evidence is material to the guilt or punishment of the accused. Materiality is the touchstone in the determination of whether certain evidence qualifies as *Brady* material. *United States v. Dupuy*, 760 F.2d 1492, 1501 n.3 (9th Cir. 1985). The Supreme Court later expanded the concept of exculpatory evidence to include evidence

that could be used to impeach government witnesses. *Giglio v. United States*, 405 U.S. 150 (1972).

The Ninth Circuit Court of Appeals set forth a procedure in *United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984), that "the prosecution must follow when confronted with a request by a defendant for the personnel files of testifying officers." *United States v. Henthorn*, 931 F.2d 29, 30 (9th Cir. 1991). "The government must disclose information favorable to the defense that meets the appropriate standard of materiality . . . If the prosecution is uncertain about the materiality of information within its possession, it may submit the information to the trial court for an in camera inspection and evaluation." *Id.* at 30–31 (quoting *Cadet*, 727 F.2d at 1467–68).

The OIG Report implicates exactly this type of material evidence. Indeed, the OIG Report details several violations of federal ethics regulations, misuse of government property, misuse of a government position, and "a lack of candor when interviewed." (OIG Report at 2–3). At a minimum, Defendant may use this alleged misconduct on cross-examination to impeach SSA Love. *See* Fed. R. Evid. 608(b) (permitting cross-examination on specific instances of misconduct "if probative of truthfulness or untruthfulness"). Accordingly, the Court finds that the OIG Report is material evidence. *See Silva v. Brown*, 416 F.3d 980, 987 (9th Cir. 2005) ("Impeachment evidence is especially likely to be material when it impugns the testimony of a witness who is critical to the prosecution's case.").

In light of this determination, the Court finds that the Government is subject to certain disclosure requirements if it intends to call SSA Love as a witness. In particular, the OIG Report's statement that it is "a version . . . prepared for public release" suggests that a non-public version exists. If so, the Government must disclose an unredacted version of the OIG Report pursuant to *Henthorn* if it is contained in SSA Love's personnel file. *See United States v. Santiago*, 46 F.3d 885, 895 (9th Cir. 1995) ("Under *Henthorn,* the government has a duty, upon defendant's request for production, to inspect for material information the personnel

records of federal law enforcement officers who will testify at trial."). Even if the OIG Report is not included in SSA Love's personnel file, *Brady* and *Giglio* compel its production in unredacted form. *See United States v. Jennings*, 960 F.2d 1488, 1490–91 (9th Cir. 1992) ("[The Government's *Brady*] responsibility cannot be evaded by claiming lack of control over the files or procedures of other executive branch agencies."). The Court therefore GRANTS Defendants' Motions to Compel.

To clarify, the Government need not submit the unredacted OIG Report for *in camera* review before disclosing it to Defendants, as the Court has already confirmed that the OIG Report is material. To the extent Defendants seek disclosure of the personnel records of other federal agents, the Court reminds the Government that it has a continuing duty inspect for material information the personnel records of federal law enforcement officers who will testify at trial. *See Pennsylvania v. Ritchie*, 480 U.S. 39 (1987) (noting that *Brady*'s duty to disclose is "ongoing" as "information that may be deemed immaterial upon original examination may become important as the proceedings progress"). The Government is not required to disclose the contents of personnel records unless they are material. *See, e.g.*, *Henthorn*, 931 F.2d at 30. The Court does not order disclosure beyond these requirements.

### B. Motions to Dismiss

Defendants' Motions to Dismiss argues that the Government's failure to disclose the OIG Report constitutes a *Brady* violation that warrants dismissal. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). The Court expresses no opinion on whether a *Brady* violation has occurred with respect to the OIG Report because any possible prejudice is cured by the instant Order compelling production of the OIG Report.

Further, dismissal of a valid indictment is an "extreme remedy," *United States v. Lopez*, 4 F.3d 1455, 1464 (9th Cir. 1993), and a "drastic step" that is "disfavored," *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988). "A district court may dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation." *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991). Given the only very recent release of the OIG Report, the Government's failure to disclose it falls well short of "outrageous." The Court therefore DENIES Defendants' Motions to Dismiss on the basis of a *Brady* violation.

### III. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motions to Compel, (ECF Nos. 1465, 1478), are **GRANTED**.

**IT IS FURTHER ORDERED** that if the Government intends to call SSA Love as witness, then the Government must disclose to Defendants the OIG Report in unredacted form, if such a version exists, as well as any related documents.

**IT IS FURTHER ORDERED** that Defendants' Motions to Dismiss, (ECF Nos. 1491, 1492, 1493) are **DENIED**.

**IT IS FURTHER ORDERED** that the Motions for Joinder filed by Defendants with respect to these Motions, (ECF Nos. 1489, 1495, 1496, 1498, 1502, 1503, 1507, 1510, 1511, 1512, 1513, 1519, 1520, 1522, 1523, 1524, 1525, 1526, 1538, 1540, 1541, 1542), are **GRANTED**.

**DATED** this ___8___ day of February, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge