FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 30 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re: CLIVEN BUNDY, _____ CLIVEN BUNDY, Petitioner, v. UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA, LAS VEGAS, Respondent, UNITED STATES OF AMERICA, Real Party in Interest. | No. 17-70700 D.C. No. 2:16-cr-00046-GMN-PAL-1 OPINION |

Petition for Writ of Mandamus
Submitted March 24, 2017[*]

Before: W. FLETCHER, GOULD, and BYBEE, Circuit Judges.

PER CURIAM:

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

Attorney Larry Klayman applied to be admitted *pro hac vice* in the high-profile criminal trial of Cliven Bundy.  The district court denied his application without prejudice.  Bundy filed an emergency petition with us for a writ of mandamus to force the district court to admit Klayman.  We declined to do so in October 2016.  *See In re Bundy*, 840 F.3d 1034 (9th Cir. 2016).  We wrote then:

> Under our decisions, the district court had more than ample cause to turn down Klayman's application:  he is involved in an ethics proceeding before the District of Columbia Bar, and he was not candid with the court about the status of those proceedings; he disclosed that he was twice barred *in perpetuity* from appearing *pro hac vice* before judges in the Central District of California and the Southern District of New York, but he failed to list numerous cases—all available on Westlaw or LEXIS—in which he has been reprimanded, denied *pro hac vice* status, or otherwise sanctioned for violating various local rules; and he has a record of going after judges personally, and shortly after Chief Judge Gloria Navarro denied his application, Bundy filed a frivolous *Bivens* action against her in her own court.  This litany of reasons for denying Klayman *pro hac vice* status demonstrates that the district court did not abuse its discretion, much less commit clear error.

*Id.* at 1036.  Bundy petitioned for *en banc* review, but his petition was denied on December 13, 2016.  Bundy then petitioned the Supreme Court for a writ of mandamus, but that petition, too, was denied on February 27, 2017.  *In re Bundy*, No. 16-908, 2017 WL 237570 (U.S. Feb. 27, 2017) (mem.).

Barely a week later, Bundy, through Klayman, filed the instant emergency petition for a writ of mandamus. Bundy cites to "fundamentally changed circumstances that underscore [his] compelling need to have a full legal defense team, including Klayman, ready and able to represent him at trial." Emergency Pet. for Writ of Mandamus at 6–7, Mar. 9, 2017, ECF No. 1 [hereinafter Petition]. The petition is procedurally irregular in a number of respects. First, Klayman purports to be representing Bundy in his request for a writ of mandamus. Bundy has counsel of record, Nevada attorney Bret O. Whipple. Whipple, however, did not sign the motion, file an affidavit, or otherwise join in any way Bundy's latest motion. Indeed, Bundy, in his reply filed on March 23, explains that his current attorney refused to file a new *pro hac vice* application on behalf of Klayman because Whipple did not want to "tarnish his reputation." Appellant's Br. in Reply to Hon. Gloria Navarro's Answer and Real Party in Interest's Answer at 11, Mar. 23, 2017, ECF No. 8 [hereinafter Reply]. We have no affidavit or other evidence that Bundy authorized Klayman to file this motion or still wants Klayman to join his defense team. Nevertheless, Klayman, purporting to represent Bundy, represents that "Mr. Klayman had no other recourse but to file [the] instant Emergency Petition for Writ of Mandamus." *Id.* Mr. Klayman's "recourse" is his own affair; it is not clear that he represents Bundy in anything he has presented to

3

us. Why Bundy (or Klayman) thinks that Whipple had to file a *pro hac vice* application on behalf of Klayman, but that Klayman could file a petition for a writ of mandamus on behalf of Bundy, we do not understand.

The motion is irregular for a second reason. It is not clear what Bundy wants us to do, so it is not clear what standards we must apply to the request. If Bundy is asking us to reconsider our prior decision, the request is late. We have already denied Bundy's petition for rehearing *en banc*, and the Supreme Court has denied certiorari. If, as Bundy claims, there are "fundamentally changed circumstances," then Klayman's renewed request for admission *pro hac vice* should have been addressed to the district court in the first instance. It was not, which means—we think—that Bundy or Klayman is asking this court to issue a writ of mandamus to the district court for its failure *sua sponte* to admit Klayman *pro hac vice*. So construing Bundy's motion, and because the district court and government filed answers to the petition, we will proceed to the merits.

I

There are no merits. The standards by which we approach a petition for a writ of mandamus to direct a district court to admit an out-of-state attorney *pro hac vice* have not changed since October:

4

> Mandamus "is a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947)). "As the writ is one of 'the most potent weapons in the judicial arsenal,' three conditions must be satisfied before it may issue." *Id.* (citation omitted). "First, 'the party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires . . . .'" *Id.* (first alteration in original) (quoting *Kerr v. U.S. Dist. Court*, 426 U.S. 394, 403 (1976)). Second, the petitioner must show that "[his] right to issuance of the writ is 'clear and indisputable.'" *Id.* at 381 (alteration in original) (quoting *Kerr*, 426 U.S. at 403). "Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.*

*In re Bundy*, 840 F.3d at 1040 (alterations in original). We further explained:

> Because, on direct appeal, we "normally review a denial of a motion to appear *pro hac vice* for abuse of discretion," *United States v. Walters*, 309 F.3d 589, 591 (9th Cir. 2002), our review in mandamus proceedings is "especially deferential," *In re United States*, [791 F.3d 945, 955 (9th Cir. 2016)]. On petition for a writ of mandamus, we look to see if the district court abused its discretion in a manner so obvious that the error is "clear" to all.

*Id.* at 1041.

II

We hold that the district court's failure *sua sponte* to grant Klayman *pro hac vice* status as of March 2017 was neither an abuse of discretion nor clear error. Bundy raises three claims of "changed circumstances": (1) the district court's refusal to dismiss all charges against Bundy in light of the issuance of a report that

5

may cast doubt on the credibility of one of the government's potential witnesses; (2) a hearing at which defense counsel agreed to strike the district court's husband, Brian Rutledge, who is a deputy district attorney in Clark County, from its potential witness list; and (3) the lack of federal criminal experience of Bundy's current counsel of choice, Bret Whipple. The circumstances cited by Bundy have nothing but the most attenuated connections with the denial of Klayman's *pro hac vice* application. And none of them come close to demonstrating that the "district court abused its discretion in a manner so obvious that the error is 'clear' to all." *In re Bundy*, 840 F.3d at 1041. This is particularly so when Bundy failed to present his case for "changed circumstances" to the district court in the first place. We will address each "circumstance" in turn.

A

First, Bundy complains that alleged prosecutorial misconduct occurred when the government did not promptly turn over a report on ethical misconduct by a Bureau of Land Management (BLM) official who may or may not testify for the government. The misconduct was related to an event at the Burning Man Festival in Northern Nevada, and does not involve Bundy. *See* Office of Inspector Gen., U.S. Dep't of the Interior, *Investigative Report of Ethical Violations and Misconduct of Bureau of Land Management Officials* (2017)

6

https://www.doioig.gov/sites/doioig.gov/files/EthcialViolationsAndMisconductBy BLMOfficials_Public.pdf.  Bundy argues that the district court should have dismissed the charges against Bundy, and further alleges that earlier disclosure of the report would at least have allowed Bundy and his co-defendants "to conduct a meaningful investigation, move for discovery, and effectively impeach the credibility of [the official]."  Reply at 4.  At first blush, it is unclear how this possibly constitutes a changed circumstance related to Klayman's *pro hac vice* admission and the district court's determination (as well as our own) that Klayman's admission would be a substantial impediment to the "ethical and orderly administration of justice."  *In re Bundy*, 840 F.3d at 1042 (quoting *United States v. Ries*, 100 F.3d 1469, 1471 (9th Cir. 1996)).

Bundy, likely recognizing this logical gap, claims that only if Klayman is immediately recognized as counsel will Bundy's ability to respond properly to this late-disclosed report be constitutionally adequate.  Bundy further argues that, by not dismissing the action entirely as a result of the allegedly-late-disclosed report, the district court erred.  *See* Petition at 8.  In fact, he claims this is but one in a seemingly never-ending series of "severely prejudicial ruling[s]" by the district court.  *Id.* at 9; Reply at 4.  Bundy asserts that only Klayman will be able to properly fight these prejudicial rulings.

Bundy's claim of district court error in refusing to dismiss the charges on the basis of the report is not, absent clear error, remediable at this stage of the proceedings through mandamus. *See DeGeorge v. U.S. Dist. Court*, 219 F.3d 930, 935 (9th Cir. 2000) ("[D]irect appeal after trial, as opposed to immediate review, is the typically adequate means of review."). There will be ample opportunity for Bundy to renew his claim before the district court in advance of trial. He may preserve his argument by raising his claim again at trial, which is not scheduled until April, at the earliest. And, failing that, Bundy may appeal to this court. Similarly, Bundy is free to argue that the report may be used to impeach the BLM official at trial, if he testifies. It is premature for us to grant mandamus at this point.

B

Bundy further complains about the manner by which the district court struck the district court judge's husband (Rutledge) from Bundy's proposed witness list. Upon seeing Rutledge on Bundy's witness list, the district court held an *ex parte* hearing in which Bundy and three of his co-defendants were ordered to "produce an offer of proof that complies with Federal Rule of Evidence 602 regarding their listing of the husband of the presiding judge as a witness" on their witness lists. Minute Order in Chambers, *United States v. Bundy*, No. 2:16-cr-00046-GMN-

8

PAL-1 (D. Nev. Mar. 8, 2017), ECF No. 1691; *see* Fed. R. Evid. 602 (requiring a witness to have personal knowledge). Bundy characterizes the district court's issuance of this show-cause order as "threatening to hold Whipple in contempt" and as an "attempt to neutralize anyone who even attempts to represent [Bundy]." Petition at 17.

As evidence, Bundy states that Ms. Bundy said that Whipple told her that the district court, at the *ex parte hearing*, told Whipple that he would be sanctioned unless he agreed to withdraw Rutledge. The district court informs us that it never threatened Whipple with contempt. District Ct. Judge Navarro's Answer at 2, Mar. 21, 2017, ECF No. 7 [hereinafter Dist. Ct. Answer]. (And the sealed brief filed by Whipple in response to the district court's show-cause order where Whipple effectively concedes removing the name calls into question the veracity of Bundy's double-hearsay evidence and supports the district court's recollection of events.) Bundy had wanted to call Rutledge because he worked in the district attorney's office and the Bundys had asked the district attorney's office to investigate what they claimed were abuses by federal agents. Petition at 17. When Whipple admitted that he could not satisfy Rule 602 for Rutledge and had no good faith basis for leaving the name on the list, the district court struck Rutledge's name from the witness list. Dist. Ct. Answer at 3–4. Complaints about properly

9

enforcing the rules of evidence are not the proper subjects of petitions for writs of mandamus.

C

Bundy's real complaint—or, at least, Klayman's complaint—is that these adverse rulings, combined with other factors, demonstrate that Whipple is not able to defend Bundy adequately. Bundy claims that Whipple is not fully prepared to defend Bundy because "Whipple has no federal criminal defense experience." Petition at 9. He adds, "Klayman has extensive experience in complex, contentious federal criminal defense, and Petitioner's local counsel, [Whipple], has none." *Id*. at 10; *see also id.* at 14 ("Klayman . . . has federal criminal defense experience . . . ."); *id.* at 17 ("Klayman [is] the only defense counsel with federal criminal experience that [Bundy] has been able to find . . . ."); *id.* Ex. I ¶ 9 (Bundy Aff.) ("[Whipple] does not have comparable experience to Larry Klayman who is a former federal prosecutor in any event.").

The assertions made by Bundy about his counsel are demonstrably false. Either Klayman has failed to ascertain the facts by, for example, talking with Whipple or looking at Whipple's website, or he has deliberately misled this court. Neither option paints Klayman in a good light. At best, Klayman has shown such a casual acquaintance with the facts that he is guilty of at least gross negligence in

10

his representations to this court. As both the government and the district court point out to this court in their responses to Bundy's petition, Whipple is well qualified to serve as Bundy's counsel. Dist. Ct. Answer at 4; Answer from the United States at 13, Mar. 20, 2017, ECF No. 6. Whipple has been a member of the Nevada Bar for more than twenty years. For six years, he was a public defender in Clark County, including three years in the Special Public Defender's Office, which has responsibility for capital cases in Nevada state courts. The district court verified that Whipple, now in private practice, has extensive experience in federal criminal cases. For some thirteen years, Whipple has accepted federal appointment under the Criminal Justice Act, where he has defended some 99 criminal cases, including complex, multi-defendant cases. At least one of his recent cases was the subject of a high-profile, multi-defendant, fourteen-day trial. Dist. Ct. Answer at 4.[2]

---

[2] This court had little difficulty confirming most of these facts from Whipple's website, his LinkedIn account, and PACER. *See Bret Whipple*, LinkedIn, https://www.linkedin.com/in/bret-whipple-67441117 (last visited Mar. 30, 2017); *Las Vegas Nevada Attorney Bret Whipple*, Just. L. Ctr., http://mylasvegaslawyer.com/las-vegas-nevada-attorney-bret-whipple (last visited Mar. 30, 2017). That Klayman, evidently, failed to use the most primitive modern tools to verify his serious accusations that counsel of record was not qualified is inexcusable.

Confronted with these facts, Bundy shifted his argument in his reply. First, Klayman now candidly admits in an affidavit that he "did not check Mr. Whipple's PACER history prior to preparing the Emergency Petition for Writ of Mandamus." Reply at 7. (PACER is our public, electronic database, which would have informed Klayman of Whipple's substantial federal criminal experience.) Klayman offered no explanation for missing Whipple's six years as a public defender. According to Klayman's affidavit, he now "believes that Mr. Whipple is a highly competent attorney," but that "Mr. Whipple, *on his own*, does not have the necessary federal criminal defense experience or the resources to mount a zealous and effect [sic] defense." *Id.*; *id*. Ex. C ¶¶ 11–12, 16 (Klayman Aff.).

By contrast, although Klayman repeatedly assures us that he has "extensive experience in complex, contentious criminal defense," he has provided us no evidence in support. Not a single example. As we noted in our prior opinion, we are well aware of Klayman's substantial experience in federal and state courts, but from what we can tell, it is almost entirely civil in nature. *See*, *e.g.*, *In re Bundy*, 840 F.3d at 1045–46. Klayman claims that he is a "former prosecutor with the U.S. Department of Justice." Klayman Aff. ¶ 3. But the only example he identifies by name is *United States v. AT&T*, where he was "an instrumental part of the team that helped break up AT&T." *Id.* The AT&T litigation was, of course, an

12

enormously complex case brought by the Antitrust Division, but it was a civil, not a criminal case.³ *See*, *e.g.*, *United States v. AT&T*, 552 F. Supp. 131 (D.D.C. 1982). It may well be that Klayman has extensive criminal trial experience, and perhaps even federal criminal trial experience, but we cannot verify this from anything Klayman has provided us.

Even if the record would support Klayman's claim to have extensive criminal defense experience, that would not be sufficient to warrant the issuance of a writ of mandamus. As we explained in our prior decision, Bundy has not offered any explanation for why, if he needs additional counsel, he cannot secure the services of attorneys in Nevada or out-of-state attorneys who can satisfy Nevada's *pro hac vice* rules. *See In re Bundy*, 840 F.3d at 1048 ("[W]e do not have an affidavit from anyone—Bundy, Klayman, [Bundy's former attorney], or anyone else—telling us of unsuccessful efforts to find counsel."). Bundy offers no case for

---

³ We have also consulted Klayman's own website. Although he says he "was a Justice Department prosecutor," his sole example is that he "was on the trial team that succeeded in breaking up the telephone monopoly of AT&T, thereby creating competition in the telecommunications industry." *Biography*, Larry Klayman, http://www.larryklayman.com/about.php (last visited Mar. 30, 2017).

why Klayman is the only attorney who can help him or why Nevada must bend its *pro hac vice* rules to accommodate him in the courtroom.[4]

Even if the district court's sole obligation while considering whether to grant *pro hac vice* admission to an attorney was to maximize the defendant's chances of receiving the best trial outcome, the district court would not have abused its discretion or clearly erred in finding that Whipple could handle Bundy's case. But that is not the district court's sole obligation. Instead, as we discussed in *In re Bundy*, district courts have other legitimate policy considerations that bear on a *pro hac vice* admission decision, such as the ethical practice of the law and the orderly

---

[4] We do not understand the dissent to support Klayman's reckless claims against Whipple. We understand our dissenting colleague to maintain the position he took in the initial action—that Bundy has a Sixth Amendment right to counsel of his own choosing. Dissent at 1 & n.1; *see In re Bundy*, 840 F.3d at 1052 (Gould, J., dissenting).

14

(15 of 19)
Case: 17-70046, 03/30/2017, ID: 10377483, DktEntry: 13-1, Page 15 of 19

administration of justice. *See id.* at 1041–42.[5] And evaluating the decision to deny Klayman *pro hac vice* status against the backdrop of these competing interests, the documents filed with this court in support of the petition for a writ of mandamus—by themselves and without looking to our earlier decision's consideration of Klayman's record—entirely support the district court's decision. The petition and reply contain patently false assertions and lack the most basic of due diligence in fact checking.

\* \* \*

The district did not err, much less "clearly err" when it failed, *sua sponte*, to admit Klayman *pro hac vice*. Future motions from Bundy must be filed by counsel

---

[5] Lest there be any doubt, we agree with the dissent that a defendant's Sixth Amendment right to counsel "is not exhausted once [the defendant] has one competent criminal defense lawyer." Dissent at 3; *see United States v. Lillie*, 989 F.2d 1054, 1056 (9th Cir. 1993) ("[T]he defendant can't be denied his choice of retained counsel just because . . . the court thinks current counsel is doing an adequate job."), *overruled on other grounds by United States v. Garrett*, 179 F.3d 1143 (9th Cir. 1999) (en banc). But the adequacy of a defendant's alternatives is a relevant consideration in making a *pro hac vice* decision that necessarily weighs a criminal defendant's Sixth Amendment right to counsel against competing policy considerations. *Cf. United States v. Nolen*, 472 F.3d 362, 375 (5th Cir. 2006) (remanding to the district court "specifically for it to conduct and verbalize the necessary balancing analysis" before denying *pro hac vice* status). We do not evaluate constitutional rights in a vacuum. Bundy may add whatever counsel he wishes so long as they satisfy Nevada's minimal *pro hac vice* rules. Klayman has not satisfied those rules, so Bundy will have to look to other Nevada-qualified counsel to aid his defense.

of record. Future filings from Klayman personally should be accompanied by either an affidavit from counsel of record or Bundy in support of the motion.

The petition for a writ of mandamus is DENIED.

FILED

MAR 30 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*In re Cliven D. Bundy*, No. 17-70700

**GOULD**, Circuit Judge, dissenting:

  I respectfully dissent from the court's denial of the Emergency Petition for Writ of Mandamus filed March 9, 2017. The reasons for my dissent are essentially the same as for my earlier dissent to the majority's published decision denying the first mandamus petition.[1] *See In re Bundy*, 840 F.3d 1034, 1049 (9th Cir. 2016) (Gould, J., dissenting). So far as I can discern, Defendant Cliven Bundy's high-profile political status and prospects for retaining a skilled and aggressive defense team have not substantially changed since my prior dissent. I do not doubt that attorney Bret Whipple is a fine lawyer who has some federal criminal case experience. But the long course of American justice shows that sometimes representation by multiple attorneys is key to a robust defense.[2] And I continue to

---

[1] I might have instead written a concurring opinion, accepting as circuit law the prior decision of this panel from which I previously dissented, but I think it makes my views clearer to understand when my views are framed as a dissent.

[2] It is not uncommon for a high-profile criminal defendant to have a team of skilled defense lawyers. Well-known examples include O.J. Simpson's defense to the charged 1994 murders of Nicole Brown Simpson and Ronald Goldman, and Dzhokhar Tsarnaev's defense to charges related to the 2013 bombing at the site of the Boston Marathon. Another famous case involving a defense team, this one without charges of violent crimes, was the so-called Scopes "Monkey" trial in 1925. There, Clarence Darrow and a team of several other distinguished lawyers defended a school teacher in Tennessee who had been charged with a crime for teaching evolution. *See Scopes Trial*, HistoryNet,

believe that Bundy's needs for experienced defense counsel of his choosing are more important than the articulated concerns about Larry Klayman's ethics, where he has not been disbarred or suspended by another bar association or proven to have engaged in unethical conduct that could justify disbarment. *See In re Evans*, 524 F.2d 1004, 1007 (5th Cir. 1975); *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997). Attorney Klayman has told the district court and our appellate panel that he will in this case abide by all orders of the district court. I take him at his word on this.

This is a complex, multi-defendant proceeding, and the stakes could not be higher for Defendant Cliven Bundy. Bundy could spend the rest of his life in prison if convicted. To be sure, Klayman's aggressive tactics are likely to irritate the district court judge. But in a tough case with experienced prosecutors, forceful advocacy can be necessary to a full defense. And concerns over Klayman's aggressive style must yield to a superordinate concern: that Bundy have the counsel of his choice to receive a fair shake at this most critical trial. The government has chosen to marshal its massive resources towards convicting Bundy. We ought to let Bundy marshal the defense team he chooses. I rest my decision on the fundamental premise that Bundy has a Sixth Amendment right to

---

http://www.historynet.com/scopes-trial.htm (last visited Mar. 28, 2017).

counsel of his choice and that that right is not exhausted once he has one competent criminal defense lawyer. So long as he is footing the bill, the Sixth Amendment protects Bundy's right to convene a defense team of his choosing. *See United States v. Walters*, 309 F.3d 589, 592 (9th Cir. 2002) (Sixth Amendment violation for *pro hac vice* denial where defendant was represented by other competent counsel). A system of extreme deference to a district court's decisions on *pro hac vice* admission of an experienced lawyer long-admitted to other bars is not a valid reason to deny Bundy his counsel of choice in the circumstances of this case. I respectfully dissent.