STEVEN W. MYHRE
Acting United States Attorney
District of Nevada
NADIA J. AHMED
DANIEL R. SCHIESS
Assistant United States Attorneys
ERIN M. CREEGAN
Special Assistant United States Attorney
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada  89101
(702) 388-6336
steven.myhre@usdoj.gov
nadia.ahmed@usdoj.gov
erin.creegan@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>   v.<br><br>CLIVEN D. BUNDY,<br>RYAN C. BUNDY,<br>AMMON E. BUNDY,<br>RYAN W. PAYNE,<br>PETER T. SANTILLI,<br>ERIC J. PARKER, and<br>O. SCOTT DREXLER,<br><br>       Defendants. | 2:16-CR-00046-GMN-PAL<br><br>**GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE IRRELEVANT ARGUMENT AND EVIDENCE IN SUPPORT OF JURY NULLIFICATION** |

**CERTIFICATION**:  Pursuant to Local Rule 12-1, this Motion is timely filed.

The United States, by and through the undersigned, respectfully moves *in limine* to preclude the defendants from 1) addressing in voir dire, opening statement, or closing argument and/or 2) adducing or eliciting during direct or cross-examination, any information or argument that: portrays or implies that the law

enforcement officers acted unlawfully or unethically during impoundment operations; or that the actions of the defendants were justified by the U.S. Constitution or other law.  More specifically, the government seeks to preclude evidence, information, commentary, beliefs, explanations, or opinions about the following:

- Self-defense, defense of others, or defense of property, justification, necessity arguments which have no foundation in the law;
- Third-party/lay person testimony or opinion about the level of force displayed or used by law enforcement officers during impoundment operations, including operations on April 6, 9, and 12, 2014;
- Opinions/public statements of Governor Brian Sandoval of April 8, 2014, and/or opinions registered by other political office holders or opinion leaders about BLM impoundment operations;
- Allegations of workplace misconduct by the SAC of the impoundment, or regarding those who worked for, or with, him.
- Allegations that officers connected with the impoundment acted unethically or improperly by the way they were dressed or equipped during the impoundment, or that they improperly shredded documents during or after impoundment operations;
- References to supposed mistreatment of cattle during the impoundment operations;
- Legal arguments, beliefs, explanations, or opinions that the federal government does not own the land or have legal authority or jurisdiction over public lands where impoundment operations were conducted, or that the land was or is otherwise owned by the State of Nevada;
- Legal arguments, beliefs, explanations, or opinions regarding infringement on First and Second Amendment rights, including any

effort to confuse the jury that there is some form of "journalist" or "protest" immunity for the crimes charged;

- References to punishment the defendants may face if convicted of the offenses;

- References to the Oregon trial of *United States v. Ammon Bundy, Ryan Payne, and Ryan Bundy.*, or the results in that trial;

- References to the outcomes in the previous two trials in this case; and

- Legal arguments, explanations, or opinions advancing defendants' views of the U.S. Constitution, including claims that law enforcement officers within the Department of Interior have no constitutional authority, that "natural law" or other authority permits the use of force against law enforcement officers in defense of property or individual rights, or that the U.S. District Court for the District of Nevada has no jurisdiction or authority under the constitution to order the removal of cattle from public lands.

As shown in the supporting Memorandum, comment and argument about such matters is nothing more, at bottom, than an improper attempt at jury nullification— that is, seeking to persuade jurors to acquit (or, hang) based upon political beliefs or values rather than upon the evidence.

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.    Procedural Posture.**

On March 2, 2016, a federal grand jury in the District of Nevada returned a sixteen-count superseding indictment against 19 defendants, charging them with:

Conspiracy to Commit an Offense Against the United States, 18 U.S.C. § 371;

Conspiracy to Impede or Injure a Federal Officer, 18 U.S.C. § 372;

Use and Carry of a Firearm in Relation to a Crime of Violence, 18 U.S.C. § 924(c);

Assault on a Federal Officer, 18 U.S.C. § 111(a)(1), (b);

Threatening a Federal Law Enforcement Officer, 18 U.S.C. § 115(a)(1)(B);

Obstruction of the Due Administration of Justice, 18 U.S.C. § 1503;

Interference with Interstate Commerce by Extortion, 18 U.S.C. § 1951; and

Interstate Travel in Aid of Extortion, 18 U.S.C. § 1952.

These charges all stem from a massive assault on law enforcement officers in April 2014, while those officers were duly executing the orders of the United States District Court for the District of Nevada.

Six defendants—Burleson, Drexler, Parker, Stewart, Lovelien, and Engel—were severed and tried in the first trial, beginning in February 2017. In April 2017, the jury returned guilty verdicts on some of the counts as against Burleson and Engel, but were deadlocked on the remaining counts. The jury further remained deadlocked on all counts as to defendants Parker, Drexler, Stewart, and Lovelien.

The Court declared a mistrial on all deadlocked counts and ordered their retrial on June 26, 2017.    The government has since dismissed the remaining

deadlocked counts against defendants Burleson and Engel, and the retrial of Parker, Drexler, Stewart, and Lovelien commenced on July 10, 2017. In August 2017, the jury acquitted Lovelien and Stewart, but hung on certain counts as to Parker (four counts) and Drexler (two counts). Defendants Parker and Drexler were subsequently joined for trial with defendants Cliven Bundy, Ryan Bundy, Ammon Bundy, Ryan Payne, and Peter Santilli. All seven defendants are set to proceed to trial commencing on October 10, 2017.

**B.     Legal Standard.**

   1.     *Federal Rule of Evidence 402*

   "Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Evidence is relevant only if it has "any tendency to make the existence of an element slightly more [or less] probable than it would be without the evidence." *Jackson v. Virginia,* 443 U.S. 307, 320 (1979). In other words, only evidence that is relevant to the elements of the charge against defendant, or to a legal defense, is admissible at trial. *See* Fed. R. Evid. 402. Although a defendant is entitled to confront witnesses and to present a defense, he has no right to present irrelevant evidence. *See Wood v. Alaska,* 957 F.2d 1544, 1549 (9th Cir. 1992). The Court has discretion to determine which issues are relevant to the proceedings. *See id.*

   Defenses that are not legally cognizable are properly excluded as irrelevant. *See United States v. Southers,* 583 F.2d 1302, 1305 (5th Cir. 1978) (evidence of eventual repayment of misapplied funds does not negate the requisite intent); *United States v. Harris*, 313 Fed. Appx. 969, at *1 (9th Cir. 2009) *vacated on other grounds*,

*Harris v. United States*, 130 S. Ct. 3542 (2010) (in public corruption case, evidence of city council's motivation for rescinding public contracts irrelevant to issue of whether defendant engaged in self-dealing); *United States v. Urfer,* 287 F.3d 663, 665 (7th Cir. 2002) (in prosecution for willful damage to federal government property, district court properly refused to allow defendants to turn the trial into a referendum on national defense strategy).

### 2.   *Federal Rule of Evidence 403*

Even if evidence offered by a defendant has probative value, it is properly excluded under Rule 403 of the Federal Rules of Evidence. That rule provides, in its pertinent part:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time . . . .

Fed. R. Evid. 403; *see also United States v. Sarno,* 73 F.3d 1470, 1488-89 (9th Cir. 1995) (exclusion of evidence relating to proof of fact that was not element of charge not abuse of discretion where such evidence "might well have (as the district court here concluded) induced confusion in the minds of the jury and distracted them from the true issue [of the charge]").

### 3.   *Jury Nullification Generally*

Nullification is "a violation of a juror's oath to apply the law as instructed by the court." *Merced v. McGrath*, No. C-03-1904 CRB, 2004 WL 302347, at *6 (N.D. Cal. Feb. 10, 2004), *aff'd*, 426 F.3d 1076 (quoting *United States v. Thomas,* 116 F.3d 606, 614 (2d Cir. 1997)). When a defendant introduces, or attempts to introduce,

irrelevant information, arguments, or questions designed to encourage jury nullification, the court has a duty to forestall or prevent juror nullification "by firm instruction or admonition." *Thomas*, 116 F.3d at 616 (2d Cir. 1997). *See also United States v. Young*, 470 U.S. 1, 7–10 (1985) (holding that the district court has a duty to prevent improper arguments to the jury, including those designed to "divert the jury from its duty to decide the case on the evidence"); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) ("A trial judge . . . may block defense attorneys' attempts to serenade a jury with the siren song of nullification."); *Zal v. Steppe*, 968 F.2d 924, 930 (9th Cir. 1992) (Trott, concurring) ("[N]either a defendant nor his attorney has a right to present to a jury evidence that is *irrelevant* to a *legal* defense to, or an element of, the crime charged. Verdicts must be based on the law and the evidence, *not* on jury nullification as urged by either litigant.") (emphasis added); *United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir. 1983) ("[D]efense counsel may not argue jury nullification during closing argument").

## C.  Argument.

### 1.  An Ungrounded Self-Defense Argument Should not be Permitted as Its Sole Purpose Would Be to Allow Defendants the Opportunity to Introduce Nullification.

"A defendant is entitled to a jury instruction regarding his theory of defense if it is legally sound and founded in the evidence." *United States v. Jackson*, 726 F.2d 1466, 1468 (9th Cir. 1984). While the factual foundation for a requested instruction need not be great, *see, e.g., United States v. Sanchez-Lima*, 161 F.3d 545, 549 (9th Cir. 1998) (should receive self-defense instruction when "there is any foundation in

the evidence"), it must amount to more than a mere "scintilla" (*see, e.g., United States v. Morton*, 999 F.2d 435, 437 (9th Cir. 1993) and cannot rest on facts that simply do not support the instruction. *See, e.g., United States v. Rodriguez*, 502 F. App'x 637, 638 (9th Cir. 2012) ("Rodriguez's action of charging [the victim] after [the victim] backed away negates any claim of self-defense or defense of others.").

If evidence the defendant wishes to admit is not relevant or admissible, it is proper to exclude both the irrelevant evidence and any argument pertaining to it. *See United States v. Sapse*, Case 13-10592, Doc. 79 (9th Cir. Jan. 7, 2016) ("Appellant failed to establish the connection between the FDA's politics and the issues in the case. Therefore, the district court properly excluded this evidence as being irrelevant.") (citing *United States v. Vallejo*, 237 F.3d 1008, 1015-17 (9th Cir. 2001)).

As the Court has previously considered, self-defense and defense of others against law enforcement officers are only available if (1) the defendant reasonably mistakes the officer's status and uses and repels a use of force; (2) the defendant repels excessive force by the officer. In this case, the Court is in the unique position of having evaluated the evidence the defense has presented on self-defense by defendants Parker and Drexler. In both of their previous trials, including the second by proffer, multiple witnesses have taken the stand and admitted they saw people in uniform in the area they expected the BLM and the cattle to be, behind marked patrol vehicles. Most if not all admitted they knew the victims to be federal agents or law enforcement. All admitted a large crowd, including persons with firearms, advanced on the officers. All admitted the officers never moved forward, made physical contact

8

with any person in the mob, or arrested anyone in the mob. All admitted the victims retreated.   In sum, there is no evidence that BLM officers used excessive force or were not readily identifiable on April 12, 2014.

The five "Tier 1" defendants have even less in the way of a self-defense argument. Cliven Bundy and Ryan Payne were not present in the wash, so there can be no claim by them that they were acting in response to any use of excessive force or that they did not know that the BLM officers where in fact law enforcement officers. Ammon and Ryan Bundy and Santilli fare no better making an argument they had a right to lead a crowd of people to advance on the officers.

Accordingly, third-party or lay testimony or opinions regarding whether BLM officers appeared "militarized" or instilled fear in others by their appearance is irrelevant and the 403 balancing test tips well in favor of exclusion, for the reasons discussed further in Section 3 below.

Further, evidence adduced during the investigation reveals that the defendants hold views of the U.S. Constitution that they claim justify their actions during the impoundment operation, including a right to "defend their property rights."   Neither the U.S. Constitution nor any other law recognizes "defense of property" "necessity" or "justification" as a defense to assault on a federal officer or extortion.   Nor does the law does permit citizens to object to seizures of property by law enforcement officers by resorting to violence. *United States v. Przybyla*, 737 F.2d 828, 829 (9th Cir. 1984) ("Even if appellant were justified in requesting the agents to leave his property…. use of a weapon was unlawful."). In *United States v. Branch*, the

Fifth Circuit likewise ruled that defendants who opened fire on federal agents attempting to execute a search warrant could not make out a valid defense. *Id.* at 91 F.3d 699, 714 (5th Cir. 1996) (the law "must accommodate a citizen's duty to accede to lawful government power and the special protection due federal officials discharging official duties."). As articulated by the Third Circuit:

> Society has an interest in securing for its members the right to be free from unreasonable searches and seizures. Society also has an interest, however, in the orderly settlement of disputes between citizens and their government; it has an especially strong interest in minimizing the use of violent self-help in the resolution of those disputes. We think a proper accommodation of those interests requires that a person claiming to be aggrieved by a search conducted by a peace officer pursuant to an allegedly invalid warrant test that claim in a court of law and not forcibly resist the execution of the warrant at the place of search.

*United States v. Ferrone*, 438 F.2d 381, 390 (3d Cir. 1971) (footnotes omitted). Therefore, the Court should preclude explanations and arguments in furtherance of such non-cognizable claims and should preclude arguments or explanations about the defendants' views of the U.S. Constitution.  None of them presents a defense, excuse, or justification for the crimes charged in this case.

> **2.      "State of Mind"/Self-Defense Does Not Justify Admitting Irrelevant, Prejudicial, and Inaccurate Evidence with the Object of Nullifying the Jury.**

In a prosecution for threatening and assaulting federal law enforcement officers, officer conduct is not at issue unless it gives rise to a claim of self-defense. Here, it does not.  The government showed in Trials 1 and 2 (*see* Trial Brief and Motions in Limine ECF No. 1799) that self-defense is not a cognizable defense here because: (1) the defendants cannot offer more than a mere scintilla of evidence that

they did not know that the officers in the Wash were law enforcement officers; or (2) the defendants cannot show that the officers' used of excessive force, and certainly not that the defendants' response to the officers' use of force was necessary and proportionate.

Under the rules of evidence, lay opinions, statements, and beliefs about officer conduct and use of force – like those presented by Parker – are not admissible even if officer conduct was at all relevant at this trial. *See* Fed. R. Evid. 701 (limiting lay witness opinion to circumstances not present here); 404(b) (precluding evidence of other acts to show that a person acted in conformity thereto). But here, they do not meet even the minimum threshold of relevancy because evidence of officer conduct in this case does not advance proof of a defense or negate an element of the offense, including intent.

Further, the fact that a defendant testifies about his opinions and beliefs about the conduct of the BLM, or attempts to explain or justify those belief and opinions, does not cloak them with the mantle of admissibility even if it they are offered to supposedly describe or explain a defendant's thinking ("state of mind") at the time. A defendant has ***no*** right to abrogate the rules of evidence in order "to explain himself" – or to otherwise present reasons that do not amount to a defense or negate an element of the offense. To allow otherwise, merely provides him with a vehicle to expound upon his beliefs about the First Amendment, the BLM, his alternative reality view of the world, and a host of other irrelevant matters – all in an attempt to nullify the verdict. *United States v. Rosenthal,* 266 F. Supp. 2d 1068, 1075 (N.D. Cal.

11

2003), *rev'd on other grounds*, 454 F.3d 943 (9th Cir. 2006) ("To permit nullification in cases where a defendant has a 'good' reason for his conduct when motive is not an element of the crime allows jurors to use their individualized set of beliefs as to 'good' reasons to be determinative of guilt or innocence. Reasons, good or bad, are of course relevant to sentencing, but they are not accepted by courts as a basis for verdicts.").

On this point, *Zal* (in particular, Judge Trott's concurrence) is illustrative. There, the defendants were charged with criminal trespass during their protests of abortion clinics. At trial, the district court excluded any defenses of (1) necessity; (2) defense of others; (3) compliance with international law, treaties, or declarations; and (4) mistake of fact. Moreover, the court precluded the use of about 50 words that were *linked to the excluded defenses*, such as: unborn; feticide, murder, killing centers, fetus, slaughter, destroy homicide, butchery, carnage, and thug. When Zal — portraying himself a zealous advocate for seven of the defendants — blatantly ignored the order and used the proscribed words in front of the jury, the court cited him with contempt.

On appeal, Zal argued, among other things, that the court's exclusions violated his client's Sixth Amendment right to "explain himself" and his actions to a jury. In affirming the contempt citation, however, the Ninth Circuit—recognizing that the proscribed words and stricken defenses were simply irrelevant to the elements of the offense—ruled:

> Zal essentially is arguing that the [court's] orders prevented the jury
> from fully appreciating why his clients acted unlawfully; there can
> be no constitutional violation if Zal had no right to present the

excluded defenses.   Zal had *no* constitutional right to present evidence *merely to bring out the reason for his clients' actions*.

*Zal*, 968 F.2d at 929.

Judge Trott's concurrence expanded on the fact that that Zal — like the defendants here — was trying, through irrelevant evidence, inflammatory terms, and "need-to-explain-myself" palaver, to pursue the equally-impermissible goal of nullification:

> [T]he [right to explain/right to present reasons] argument simply fails to come to grips with Zal's admitted central purpose*: to brush aside the court's rulings on the precluded defenses and to prevail wrongfully on the jurors to exercise their illegitimate power of nullification.* Such a fundamentally lawless act in a court of law is not protected by the Constitution. To deny an attorney this type of "explanation" is certainly not to deny a defense right to effective representation.

*Zal,* 968 F.2d at 930 (emphasis added); *accord United States v. Sapse*, 628 F. App'x 516, 516-517 (9th Cir. 2016) (unpublished) (in prosecution for fraud and violation of federal regulations, Ninth Circuit emphatically affirms Judge Dawson's refusal to allow defendants to discuss irrelevant issue of the Food and Drug Administration's supposedly chilling effect on innovative medical procedures, such as those being hawked by the defendants: "The district court prohibited the defense from introducing evidence related to the FDA's politics to rebut the evidence of the regulations violations. Appellant argues that this decision was in error and violated his right to present a defense . . . . Appellant failed to establish the connection between the FDA's politics and the issues in the case. Therefore, the district court

properly excluded this evidence as being irrelevant.") (*citing United States v. Vallejo,* 237 F.3d 1008, 1015–17 (9th Cir. 2001)).

A defendant's subjective beliefs and opinions were similarly excluded in *United States v. Komisaruk,* 885 F.2d 490 (9th Cir. 1980). There, the defendant was charged with willfully damaging government property by vandalizing an Air Force computer. *Id.* at 491. At trial, the district court precluded the defendant from presenting her "political, religious, or moral beliefs" about whether a particular computer navigation system was legal under international law.

After conviction and upon appeal, the defendant urged that she had been precluded from presenting evidence of her good motive (*i.e.*, her desire to prevent nuclear war) to negate the government's evidence of criminal intent. *Id.* at 493; *see also id.* at 492-493 (describing irrelevant beliefs, including view that the Air Force computer was illegal under international law, and that she was otherwise morally and legally justified in her actions). The Ninth Circuit affirmed that the defendant's "personal disagreement with national defense policies could not be used to establish a legal justification for violating federal law nor as a negative defense to the government's proof of the elements of the charged crime" *Id.* at 492.

The same is true here. None of the defendants, who were present in the Wash on April 12 has a meritorious argument that the law permitted their actions. They knew very well the persons they assaulted were BLM, having specifically recruited hundreds of people to "match" or "show" force to the BLM. They then executed that

14

show of force by blocking a BLM convoy on April 9th and assaulting federal law enforcement officers on April 12.

Similarly, the opinions and statements by political and opinion leaders about BLM's presence in Bunkerville and the manner in which it engaged in impoundment operations have even less relevance.

Defendants should not be allowed, therefor, to present lay or third-party testimony or opinions and/or argue, explain, or expound upon their "thoughts" about what BLM was doing or should have been doing during impoundment operations. This case is no different from other emotionally-charged cases – like the abortion clinic cases – where defendants are precluded from presenting their oftentimes one-sided moral and philosophical view of the world around them, all in the hope of finding someone on the jury who agrees with them and will, accordingly, vote to nullify the verdict.

While the defendants may have disagreed with BLM's operations and/or methods, their thoughts, reasons, explanations, and opinions about these matters at the time – however genuine or contrived – do not (and cannot) give them a legal pass to assault, threaten, and extort a federal officer under any cognizable legal theory. Thus, they should be precluded from introducing their thoughts, rationale, explanations, and opinions at trial as if they did. To allow this would, as Judge Trott stated, reduce the trial to a "free-for-all, in which the laws *enacted by the people through their democratically elected representatives* effectively would [be] ignored and repealed." *Zal,* 968 F.2d at 930 (emphasis added).

### 3.    Evidence Intended to "Dirty Up" the Victims of this Assault is Irrelevant and Unfairly Prejudicial Jury Nullification.

Evidence which is intended to portray victims in a negative light and suggest that an acquittal should be entered because the victims deserve to be victims is not relevant to any charge or defense. Submitting such evidence to a jury asks them to engage in improper jury nullification. Therefore evidence intended to suggest, however inaccurately, that BLM officers were "militarized" (e.g., wearing their uniforms and carrying their firearms), that they "brutalized" protestors on April 6 or 9, 2014, that they "occupied" Bunkerville (e.g., brought sufficient personnel to conduct a far-ranging cattle operation and stayed in the local hotels), that they established rights-crushing First Amendment zones (safe places with parking off widely used roads that would always be open to the public), that they indiscriminately killed cattle (when some were humanely euthanized following injury), and similar arguments constitute nothing more than unfairly prejudicial and inadmissible attacks on the victims of these crimes.

Similarly irrelevant and prejudicial is any evidence or argument that any officers connected with the impoundment are alleged to have engaged in workplace misconduct.  From the pretrial motions and reciprocal discovery received in this case, it is apparent that defendants will seek at trial to advance evidence of allegations that the SAC of the impoundment was investigated by the Department of the Interior, Office of Inspector General, in connection with other events or cases unrelated to the impoundment operation.  They further may seek to suggest that other officers who

either worked with, or worked for, the SAC either knew, or should have known, of any allegations of misconduct and were somehow influenced by the SAC.

Further in this same vein, defendant Ammon Bundy has previously claimed that officers at the impound site improperly shredded documents during the evacuation of the Impoundment Site, basing these claims on the fact that a bag (or bags) of shredded documents was (were) recovered from a dumpster after BLM left the site.  Testimony from Trial 1, as well as evidence advanced during pre-trial litigation of this case, failed to show that any shredding of documents was in any way improper – in fact, it was fully justified given the circumstances under which the BLM was forced to abandon the impoundment site.

During cross-examination of government witnesses at Trial 1, defendants attempted to adduce evidence of this nature, including allegations of workplace misconduct by the SAC as well as evidence of that BLM officer intimidated protestors or residents of Bunkerville.  These arguments were offered either under the guise of impeachment or to advance a theory of self-defense not available under the law.  The effect of this evidence, however, is to "dirty up" the victims by implying that they acted unethically, improperly, or excessively during the impoundment operation when, in truth and in fact, there is no evidence to support any such claim, the officers acting within all applicable rules, regulations, and the law.

> Rule 403 does not limit "unfair prejudice" to one side. "Unfair prejudice" means, at its most serious, "an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one." McCormick on Evidence § 185 at n. 31 (2d ed.1972); see Fed. R. Evid. 403, 1972 Advisory Committee Note. While a defendant is fully entitled to prove self defense, a defendant is not entitled to persuade a jury by evidence "justifying

17

the deliberate destruction by private hands of a detested malefactor." II Wigmore on Evidence § 246, at 57.

*United States v. James*, 169 F.3d 1210, 1216 (9th Cir. 1999) (Kleinfeld, J., dissenting); *United States v. Comerford*, 857 F.2d 1323 1324 (9th Cir. 1988) (affirming the trial judge's decision to keep the domestic violence evidence out in an assault trial involving unrelated males); *Cohn v. Papke*, 655 F.2d 191, 192-95 (9th Cir. 1981) (holding trial judge had abused his discretion by admitting the defendants' evidence that the plaintiff was homosexual, because the man's sexuality was of limited relevance, and the relevance was outweighed by the risk of unfair prejudice); *United States v. Driver*, 945 F.2d 1410, 1416 (8th Cir. 1991) (holding "evidence of the child abuse investigation involving the victim would have served merely to portray him as a bad person, deserving to be shot, but did not relate to Driver's claim of self defense.").

Accordingly, the Court should preclud the defendants from offering arguments or advancing allegations that the officers acted unethically, improperly, or excessively either during the impound or in the workplace outside the impound.

### 4. Previous Acquittals or Hung Juries are Irrelevant.

In *United States v. Kerley,* 643 F.2d 299 (5th Cir. 1981), the court wrote that "... evidence of a prior acquittal is not relevant because it does not prove innocence but rather merely indicates that the prior proceeding failed to meet its burden of proving beyond a reasonable doubt at least one element of the crime." Fed.R.Evid. 401. But " 'evidence of a prior acquittal is not relevant because it does not prove innocence but rather merely indicates that the prior proceeding failed to meet its

18

burden of proving beyond a reasonable doubt at least one element of the crime.' " *United States v. Gambino,* 818 F. Supp. 536, 539 (E.D.N.Y.1993) (quoting *United States v. Kerley,* 643 F.2d 299 (5th Cir.1981)); *Gentile v. Cnty. of Suffolk,* 926 F.2d 142, 161 (2d Cir.1991) ("[A] judgment of acquittal does not necessarily mean that the defendant is innocent; it means only that the government has not met its burden of proof beyond a reasonable doubt." (citing *Viserto,* 596 F.2d at 536–37)); *United States v. Jones,* 808 F.2d 561, 567 (7th Cir. 1986) ("Here, the acquittal shows only that state prosecutors failed to meet their burden of proof.").

> It is settled that a criminal defendant ordinarily may not introduce evidence at trial of his or her prior acquittal of other crimes. The hearsay, relevance, and more-prejudicial-than-probative rules generally preclude the admission of evidence of such prior acquittals.

*United States v. Williams*, 784 F.3d 798, 803 (D.C. Cir. 2015). Therefore, the defendants should not be permitted to introduce any evidence or make any argument with reference to acquittals or hung juries either in the Malheur case or previous trials in this case.

### 5.  Arguments or Explanations about the Defendants' Claimed Legal Beliefs are not Relevant.

The defendants' claimed views on the validity of federal laws are immaterial to any admissible defense. *See United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011) (citing cases)); *United States v. Moore*, 627 F.2d 830, 833 (7th Cir. 1980) ("Good faith disagreements with the law or good faith beliefs that it is unconstitutional are not defenses."). A defendant's belief that the law should not apply to him or that the law itself is invalid or unconstitutional provide no such defense. *United States v.*

*Dack,* 987 F.2d 1282, 1285 (7th Cir. 1993) (district court did not err in "advising the jury that a disagreement with or a protest to the tax laws was not a defense"); *United States v. Hairston*, 819 F.2d 971, 973 (10th Cir. 1987) ("[G]ood faith belief that [the laws] are unconstitutional provides no defense").

Arguments regarding the validity of federal law are consistently rejected in multiple contexts. For example, contentions that one does not have to pay taxes because the code is unconstitutional or invalid are not permissible good faith claims and need not be heard by the jury. *Cheek v. United States,* 498 U.S. 192, 206 (1991) (holding "a defendant's views about the validity of the tax statutes are irrelevant to the issue of willfulness and need not be heard by the jury"). Such contentions "do not arise from innocent mistakes caused by the complexity of the Internal Revenue Code. Rather, they reveal full knowledge of the provisions at issue and a studied conclusion, however wrong, that those provisions are invalid and unenforceable." *Cheek,* 498 U.S. at 205. Likewise, not paying taxes because you do not like how the money is spent or because you do not like various government policies are not valid defenses to a tax crime. *See United States v. Smith,* 618 F.2d 280, 282 (5th Cir. 1980); *United States v. Pilcher,* 672 F.2d 875, 877 (11th Cir. 1982); *cf. United States v. Lee,* 455 U.S. 252, 260 (1982) ("[t]he tax system could not function if denominations were allowed to challenge the tax systems because tax payments were spent in a way that violates their religious beliefs").

Thus, evidence or argument explaining, justifying, or advancing the validity of the defendants' claimed beliefs as a basis for a defense of good faith should therefore

be excluded as improper jury nullification arguments. *See United States v. Young*, 470 U.S. 1, 7–10 (1985) (holding that district court has duty to prevent counsel from making improper arguments to the jury, including those designed to "divert the jury from its duty to decide the case on the evidence"); *United States v. Ernst*, No. 10-CR-60109-AA-01, 2014 WL 1303145, at *1 (D. Or. Mar. 31, 2014) ("Defendant was not entitled to question the jury as to the validity of federal law, and he was not entitled to present arguments in favor of jury nullification.").

Further, pretrial litigation and reciprocal discovery received in this case suggest that defendant Santilli may attempt to advance arguments that his actions were protected under some sort of First Amendment privilege. No such privilege exists under the First or Second Amendments nor do they present a cognizable defense to any of the crimes charged. Nor can any of the other defendants invoke either claim as an excuse, justification or defense which has no foundation in the law. There is no "protest immunity" such force, threats or violence are shielded from prosecution. Nor is there a "journalist immunity" that would shield defendant Santilli from charges for inciting or encouraging others to violence or recruiting militia to support defendant Bundy.  The defendants should not be allowed to suggest that the jury can find, or consider, that defendants enjoy an immunity from prosecution under the Constitution where none exists.

**6.   The Court Should Preclude General Statements That the Jury Should "Send a Message" to the Government or That The Jury Should Consider The Potential Punishment of the Defendants.**

"Statements clearly designed to encourage the jury to enter a verdict on the basis of emotion rather than fact are irrelevant and improper." *United States v. Nobari*, 574 F.3d 1065, 1076 (9th Cir. 2009) (internal quotations omitted).

> The point of the "send a memo" statement was that if the jury acquitted Sanchez based on his duress defense, the verdict would in effect send a message to other drug couriers to use that defense themselves. This message would extend "to all drug traffickers, to all persons south of the border and in Imperial County and in California—why not our nation while we're at it." The obvious implied consequence of such a message would be increased lawbreaking, because couriers would be less afraid of conviction. Thus, by his "send a memo" statement, the prosecutor was encouraging the jury to come to a verdict based not on Sanchez's guilt or innocence, but on the "potential social ramifications" of the verdict.

*United States v. Sanchez*, 659 F.3d 1252, 1257 (9th Cir. 2011) (finding the statement improper); *United States v. Leon-Reyes,* 177 F.3d 816, 823 (9th Cir.1999) (prosecutors may not "point to a particular crisis in our society and ask the jury to make a statement" with their verdict); *United States v. Williams,* 989 F.2d 1061, 1072 (9th Cir. 1993) (improper to exhort jury to "[t]ell these defendants that we do not want [methamphetamine] in Montana").

> The prosecutor's comment was made in response to defense counsel's blatant plea for jury nullification, in which he told the jury to send a message that the government "should be spending their thousands of dollars on other things like gangs and dope and not this kind of case such as innocent elderly people.

*United States v. Parker*, 991 F.2d 1493, 1498 (9th Cir. 1993) (finding improper argument by defense counsel allowed the government to make a similar argument out of fairness).

22

"It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992). Inappropriate references could be as overt as "you understand the defendant is facing up to five or ten years in prison if convicted," or as subtle as "the defendant is facing a lot of time," "this case has serious consequences for the defendant," or "the defendant's liberty is at stake in this trial." However phrased, such comments are inappropriate in light of this Court's clear command that the jury not consider punishment in determining whether the defendant is guilty of the charged offense. *See, e.g., Frank,* 956 F.2d at 879.

So-called "send a message" arguments and inquiries of witnesses into potential punishment were made to or in front of the jury during Trial 1.  They may occur during Trial 3. Such arguments are blatantly improper and should be precluded.

**D.    Conclusion.**

Like the defendant who criminally trespasses at an abortion clinic because he or she is morally opposed to constitutionally-protected abortion procedures, or like the defendant who sabotages military equipment because she is morally opposed to war, the  defendants' views and beliefs about the BLM (divorced from reality as they are) are  flatly irrelevant because they cannot justify conduct that is squarely proscribed by the federal statutes.  Nevertheless, these defendants may seek to air their views to the jury for the same impermissible reason as the defendants in the abortion clinic case: jury nullification; that is, the hope that the jurors (or, at least one of them) will ignore the relevant questions framed by the jury instructions (*viz.,*

"Did this defendant intentionally assault a law enforcement officer?" "Did this defendant intentionally threaten a law enforcement officer?"), and decide the case based on personal sympathy with the defendants' supposed passionately-held beliefs.

Just as in the context of abortion clinic prosecutions, "whether [BLM enforcement of court orders] is a legitimate . . . practice or a moral perfidy is irrelevant to any element of extortion under the Hobbs Act [or assault statute]. The only purpose of repeated references [to such matters] . . . *would be to appeal to the emotions of the jury, inviting nullification.* Refusing to do so is consistent with ethical, professional practice." *United States v. Arena*, 918 F. Supp. 561, 580 (N.D.N.Y. 1996) (emphasis added); *see also Zal*, 968 F.2d at 930 (realizing that references to peripheral matters under rubric of "need to explain" is actually designed to achieve the true "central purpose: to brush aside the court's rulings on the precluded defenses and to prevail wrongfully on the jurors to exercise their illegitimate power of nullification"). This Court should now do the same and insist that the case be tried *only* on the admitted relevant evidence and relevant argument.

1    **WHEREFORE**, for all the foregoing reasons, the United States respectfully

2    requests that the Court enter an Order granting its Motion and precluding jury

3    nullification arguments and allegations as delineated herein.

4         Dated this 24th day of September, 2017.

5                                             Respectfully submitted,

6                                             STEVEN W. MYHRE
                                              Acting United States Attorney
7

8                                                  *//s//*

9                                             _____
                                              NADIA J. AHMED
                                              DANIEL R. SCHIESS
10                                            Assistant United States Attorneys
                                              ERIN M. CREEGAN
11                                            Special Assistant United States Attorney

12                                            Attorneys for the United States

13

14

15

16

17

18

19

20

21

22

23

24

1

## <u>CERTIFICATE OF SERVICE</u>

2

  I certify that I am an employee of the United States Attorney's Office.  A copy

3

of the foregoing **GOVERNMENT'S MOTION IN LIMINE** was served upon

4

counsel of record, via Electronic Case Filing (ECF).

5

  DATED this 24th day of September, 2017.

6

7

8

      */s/ Steven W. Myhre*

      _____

9

      STEVEN W. MYHRE
      Assistant United State Attorney

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24