BRET O. WHIPPLE, ESQ
Nevada Bar Number 6168
**JUSTICE LAW CENTER**
1100 S. Tenth Street
Las Vegas, Nevada 89104
(702) 731-0000

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>Vs.<br><br>CLIVEN D. BUNDY,<br><br>Defendant. | CASE NO.: 2:16-cr-00046-GMN-PAL<br><br>**DEFENDANT CLIVEN D. BUNDY'S OPPOSITION TO UNITED STATES' MOTION IN LIMINE (ECF NO. 2514)** |

COMES NOW, BRET O. WHIPPLE, ESQ., counsel for CLIVEN D. BUNDY, ESQ., and hereby enters his opposition to the UNITED STATES' Motion in Limine (ECF No. 2514).

DATED THIS 28TH day of September, 2017.

**JUSTICE LAW CENTER**
/s/ Bret O. Whipple, Esq.
Bret O. Whipple, Esq.
Bar No 6168
1100 South Tenth Street
Las Vegas, NV 891404

## MEMORANDUM OF POINTS AND AUTHORITIES

On Sunday, Sept. 24, 2017, the United States filed Document 2514, stylized as "GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE IRRELEVANT ARGUMENT AND EVIDENCE IN SUPPORT OF JURY NULLIFICATION." The filing fits the pattern of the United States of filing a similar motion just before trial begins, seeking to cut off every defense by defendants facing potential life in prison (e.g., E.C.F. 2064, filed on the Sunday evening prior to jury selection in the 2nd trial, and 1390 Filed 01/24/17, just before the 1st trial). On the first days of trial in both prior trials, this Court granted the Government's motion without much of an opportunity for Defendants to research the Government's cited cases.

This response gives notice that <u>binding case law</u> in this Circuit is a barrier to the Government's claims in its motion. The Government's motion is built upon (1) unpublished opinions, (2) cases rendered outside the Ninth Circuit, or (3) cases which do not squarely support the propositions suggested by the Government.

What the Government calls "an improper attempt at jury nullification" is any evidence exonerating the defendants. The Government seeks an unfair trial in which only evidence which supports an inference of the Defendants' alleged guilt (such as a photo of a defendant holding a weapon on a bridge) is relevant and all evidence suggesting a non-criminal explanation of the Defendants' conduct, such as all evidence that supports an inference that the Defendants were engaged in something-other-than a criminal conspiracy, is considered "irrelevant" and an attempt at jury nullification. For example, the United States has been largely uninhibited in its ability to present so-called law enforcement "background information" or "context evidence" or "state of mind relating to threat assessment" evidence throughout each of the first two trials.

In contrast, the defendants have been prohibited from admitting similar (if not completely parallel) evidence of defendants' and protestors' experience of context, setting, circumstances, background information, and states of mind.

The Government's memorandum plucks out a case here or there where a bit of evidence was held irrelevant, e.g., *United States v. Sarno*, 73 F.3d 1470, 1488-89 (9th Cir. 1995) or where a closing argument to a jury was held to be a call for jury nullification. Many or most of the cases are from out-of-circuit or unpublished, or do not support the Government's claimed propositions.[1]

Unfortunately for the Government, <u>binding case law</u> laid down by the Supreme Court and the Ninth Circuit cuts off the Government's attempt at sabotaging the cherished traditions of fair trial by jury, due process, and adversarial justice. The "remedy" sought by the Government would violate (1) due process, (2) the right to jury trial, (3) the right to a fair trial by an impartial jury, (4) the right to present a defense, and (5) the right to confront accusers.

"Jury nullification" is an informal term for the power of a jury to pronounce a defendant not guilty in the face of overwhelming evidence seeming to support conviction. It is almost impossible to identify or isolate with any certainty, as under our adversarial model of justice—

---

[1] The Government cited in its motion the case of <u>Cheek v. United States</u>, 498 U.S. 192, 204 (1991) as standing for the proposition that "a good faith belief that a law is unconstitutional is not a valid defense." The Government added that Cheek supposedly held that "Defendants' views about the validity of the tax statutes are irrelevant to the issue of willfulness and need not be heard by the jury." <u>But the actual rule of Cheek is almost precisely opposite</u>. Cheek was a United States Supreme Court case in which the Court *reversed the conviction* of John L. Cheek, a tax protester, for willful failure to file tax returns and tax evasion. The Court held that an actual good-faith belief that one is not violating the tax law, based on a misunderstanding caused by the complexity of the tax law, negates willfulness, even if that belief is irrational or unreasonable.

established under English common law by untold struggles and sacrifices—jurors issue their rulings in general verdicts, and are never under any duty to explain themselves. What might seem like "jury nullification" to one observer might be juror suspicion that prosecution witnesses are lying, that the government's case is not credible, or that they simply believed that the government did not eliminate a non-criminal explanation of the defendant's conduct beyond a reasonable doubt.

In any case, it is <u>not</u> the law that juries must consider facts in a mathematically-precise catechism without being able to assess the settings and circumstances in which event participants found themselves. *See United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572-73 (1977) (trial judges are prohibited from "directing the jury to come forward with [a guilty] verdict, regardless of how overwhelming the evidence may point in that direction"); *Gregg v. Georgia*, 428 U.S. 153, 199 n.50 (1976) (saying any legal system that would rob jurors of their discretion to acquit against the evidence would be "totally alien to our notions of criminal justice"); *Brotherhood of Carpenters v. United States*, 330 U.S. 395, 408 (1947) ("a judge may not direct a verdict of guilty, no matter how conclusive the evidence"); *United States v. Mentz*, 840 F.2d 315, 319 (6th Cir. 1988) ("Regardless of how overwhelming the evidence may be, the Constitution delegates to the jury, not to the trial judge, the important task of deciding guilt or innocence"); *Konda v. United States*, 166 F.91, 93 (7th Cir. 1908) (an accused has a right to a chance of a jury acquittal even where "the evidence against him is clear and uncontradicted, as he unquestionably would have if it were doubtful and conflicting"); *Buchnanan v United States*, 244 F.2d 916 (6th Cir. 1957) (a trial judge cannot instruct a jury to convict even if the facts of guilt are undisputed); *Dinger v. United States*, 28 F.2d 548, 550,

JUSTICE LAW CENTER   Tel (702) 731-0000 Fax (702) 974-4008

551(8th Cir. 1928) (trial judge's instruction that "if you believe the testimony of these agents . . . you would be justified, and in fact required, to find the defendant Dinger guilty" was a "most serious error" "not permissible in a criminal case"); *Billeci v. United States*, 184 F.2d 394, 399 (D.C. Cir. 1950) (must-convict instruction "is not the law. The law is that if the jury believes beyond a reasonable doubt that the defendant has committed the alleged offense it *should* find a verdict of guilty"). (emphasis added)

Never has the Supreme Court issued a decree that jurors must abandon their senses of justice, their assessment of the justness of laws, or their consciences if the government proves its case beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 317 n.10 (1979) (referring to the jury's "unassailable" power to issue an "unreasonable verdict of 'not guilty'"); *McCleskey v. Kemp*, 481 U.S. 279, 311 (1987) (criminal juries have an inherent discretionary power to "decline to convict," and such "discretionary exercises of leniency are final and unreviewable"); *Batson v. Kentucky*, 476 U.S. 79, 86-87 n.8 (1986) (the jury's role "as a check on official power" is in fact "its intended function"); *United States v. Spock*, 416 F.2d 165 (1st Cir. 1969) (discussing jurors' well-established "power to follow or not to follow the instructions of the court"); *United States v. Wilson*, 629 F.2d 439, 443 (6th Cir. 1980) ("a jury is entitled to acquit the defendant because it has no sympathy for the government's position. It has a general veto power"); *United States v. Spock*, 416 F.2d 165, 182 (1st Cir. 1969) ("the jury, as the conscience of the community, must be permitted to look at more than logic . . . . The constitutional guarantees of due process and trial by jury require that a criminal defendant be afforded the full protection of a jury unfettered, directly or indirectly"). See also *State v. Koch*, 85 P. 272, 274 (Mont. 1906) ("the jury has power to disregard the law as declared and acquit

5

the defendant, however convincing the evidence may be, and . . . the court or judge has no power to punish them for such conduct"); *Titus v. State*, 7 A. 621, 624 (N.J. 1886) ("some of the jurors were called as witnesses, . . . to prove their own official misconduct, or that of their fellows. Such course was conspicuously illegal.").

The proposition that the Defense should be hamstrung in its presentation of the facts of the case because of the mere *possibility* that the jury might be inclined to view the government negatively, and that this encroaches towards the "jury nullification" boogeyman, is not enough to seriously inhibit the right to present relevant evidence and the rights of due process.

## THE GOVERNMENT'S CITATIONS ARE OFF-POINT, MOSTLY FROM OUT-OF-CIRCUIT, AND DO NOT STAND FOR THE PROPOSITIONS SUGGESTED BY THE GOVERNMENT.

The slightest scrutiny of the Government's 26-page motion finds its citations are form without substance. Section B(3) of the Government's motion provides a citation string of a half-dozen cases supposedly standing for the proposition that "When a defendant introduces, or attempts to introduce, irrelevant information, arguments, or questions designed to encourage jury nullification, the court has a duty to forestall or prevent juror nullification '"by firm instruction or admonition."'" But the cases don't support anything like the broad stroke of exclusion suggested by the Government. Three of the cases (*United States v. Young*, 470 U.S. 1, 7–10 (1985); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993); and *United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir. 1983)) stand merely for the proposition that defense lawyers shouldn't mention jury nullification <u>during closing arguments</u>. *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997), simply involved a juror who seemed (to other jurors) bent on nullifying. These cases do not support the suggestion that the Court should take

a special role in curating defense evidence to prevent the ambiguous possibility of jury nullification based on the mere speculation of the prosecution.

The only 9th Circuit case, *Zal v. Steppe*, 968 F.2d 924, 930 (9th Cir. 1992), involved an attorney held in contempt for mentioning words during trial which were prohibited by court order. "Zal," according to the Ninth Circuit, was "essentially arguing that the [court's] orders prevented the jury from fully appreciating <u>why</u> his clients acted <u>unlawfully</u>." "Zal had no constitutional right to present evidence merely to bring out the reason for his clients' actions," continued Judge Trott (concurring). <u>Zal</u>, 968 F.2d at 929 (emphasis added). <u>Zal</u> has little if any applicability to the instant case, where Defendants do not seek to explain their reasons for acting unlawfully, but rather seek to establish <u>that they acted lawfully</u> under the circumstances. In the present case, it would be absurd for the Court to conclude that the subjective explanation of why the Defendants did what they did, where were they were, and said what they said, is inadmissible because it explains why the Defendants acted unlawfully. Who, exactly, has determined that the Defendants have acted unlawfully such-that an explanation of their conduct is an attempt to excuse unlawful behavior? No determination of guilt has been made. No determination of guilt was made by any of the jurors in the last trial against these defendants. Nor was guilt found by most the jurors, as-to most the defendants, two trials ago.

## THE SUPERCEDING INDICTMENT IS FILLED WITH ALLEGATIONS OF WILLFULLY VIOLATING FEDERAL LAWS AND/OR SPECIFICALLY INTENDING CERTAIN RESULTS. THUS, EVIDENCE OF DEFENDANTS' INTENTIONS ARE HIGHLY RELEVANT, AND PROHIBITION OF EVIDENCE OF INNOCENT INTENTION IS VIOLATIVE OF DEFENDANTS' RIGHTS

Defendants are charged with an array of specific-intent crimes requiring the prosecution to prove beyond a reasonable doubt that Defendants willfully violated federal laws or

7

committed acts with specific criminal intent. Count 1, for example, alleges a conscious "agreement to do something unlawful" (9th Cir. Model Instruction). Count 2 alleges an agreement specifically intending to impede federal officers. The Obstruction counts allege the Defendants "corruptly" impeded the administration of justice. The Hobbs Act extortion counts accuse Defendants of acting with the specific intent to obtain property. Count 16 alleges interstate travel with the specific intent to commit extortion. Each of these allegations require that Defendants have an opportunity to show evidence that their intentions were lawful, not corrupt, and innocent. Such evidence is not an "attempt at jury nullification."

Under binding, Supreme Court, and Ninth Circuit case law, Defendants may present evidence of their rationales behind their actions to defend themselves from specific-intent crime accusations. See Liparota v. United States, 471 U.S. 419, 425 (1985) (conviction under a foodstamp fraud statute requires proof that the defendant knew that possession of food stamps was unauthorized by the statute); United States v. Lombera–Valdovinos, 429 F.3d 927, 928 (9th Cir.2005) (holding that despite mountainous evidence of illegal reentry into the U.S., it is "[im]possible to convict a previously deported alien . . . under 8 U.S.C. § 1326 when he crosses the border with the intent only to be imprisoned); United States v. Argueta-Rosales, 819 F.3d 1149 (9th Cir.2016) (conviction for illegal entry into U.S. reversed where District Court denied opportunity to show Defendant entered U.S. on drugs while fleeing Mexican drug gangs); United States v. Jim, 865 F.2d at 212; United States v. Echeverry, 759 F.2d 1451, 1454 (9th Cir. 1985) (voluntary intoxication may be asserted as a defense to a specific intent crime); United States v. Sneezer, 900 F.2d 177 (9th Cir. 1990) (intoxication may be asserted against an allegation of attempted sexual assault even if it is no defense to sexual assault itself).

8

Yet the Government seeks to bar Defendants from mentioning the actual, noncriminal, innocent reasons for their travels to Nevada and other conduct. This despite the fact that Count 16 (interstate travel for purposes of extortion) is a specific-intent crime. See, e.g., United States v. Still, 850 F.2d 607, 609 (9th Cir. 1988) (requiring proof of "culpable intent" for attempted bank robbery that went beyond any requirement of intent for completed bank robbery); United States v. Buffington, 815 F.2d 1292, 1301 (9th Cir. 1987) (same); United States v. Snell, 627 F.2d 186, 187 (9th Cir. 1980) (same), cert. denied, 450 U.S. 957, 101 S. Ct. 1416, 67 L. Ed. 2d 382 (1981). Thus, for example, Defendant Eric Parker's testimony that he read Governor Brian Sandoval's proclamation (which tended to condemn the BLM's cattle roundup and First Amendment Zone as improper) on Facebook while Parker drove to Nevada is entirely relevant to the question of whether Parker had criminal intent to travel interstate in aid of extortion.

The prosecution's desire to show the jury photos of Defendants holding weapons on a bridge without providing the Defendants a right to explain their intent, motivations, visual perspectives and circumstances conflicts with binding case law in this Circuit. See *Galvan v. United States*, 318 F.2d 711 (9th Cir. 1963) (whether defendant charged with assaulting officer with dangerous weapon, an automobile, was frightened by shotgun in officer's hands when officer approached him was a jury question). Note that in *Galvan*, there was no question but that the officer was holding the shotgun in accordance with duties and training.

Perhaps from a prosecution perspective, all defendants are "guilty" and a jury trial is solely to ratify the Government's position; every jury acquittal is a mistake or based on "jury nullification." Thus only evidence of guilt is 'relevant' in the eyes of the government, while evidence of innocence—or of confusion among defendants, promissory estoppel applicable to

9

statements of authorities which seemed to indicate they viewed defendants as in the right, mistakes of law (such as that the BLM NPS was not a proper law enforcement agency—as shown by statutes and federal rules currently in place), mistakes of fact (such as the understanding in the crowd that the BLM was "removing its assets" and thus leaving the cows to be released from impound), or heat-of-the-moment defenses (which have always been introducible even in the most wretched homicide cases), are 'relevant.' The Government's "MOTION IN LIMINE TO PRECLUDE IRRELEVANT ARGUMENT AND EVIDENCE IN SUPPORT OF JURY NULLIFICATION" seeks to improperly deny the Defendants' right to put on a lawful defense, present evidence, and due process under the law.

Because the prosecution knows that the specific-intent and willfulness-level offenses they have levied allow Defendants to introduce evidence of their good faith and their innocent states of mind, the prosecutors focus on the knowingly-level and general-intent offenses in the indictment. "In a prosecution for threatening and assaulting federal law enforcement officers," the motion says, "officer conduct is not at issue unless it gives rise to a claim of self-defense." (Motion at page 10).  But in a prosecution for obstruction of justice, or for conspiracy to violate federal law, or conspiracy to impede officers, or for interstate travel to commit extortion, <u>officer conduct is very much an issue</u> as Defendants have a right show evidence to the jury that they acted non-corruptly, innocently, or in good-faith, when engaging in conduct that the United States claims was a willful, corrupt, and intentional attempt to interfere with what the Defendants knew to be lawful commands issued by BLM para-military officers.

The deceptive nature of the Government's motion is shown on pages 23-24 of the motion, where the Government states that "Nevertheless, these defendants may seek to air their

views to the jury for the same impermissible reason as the defendants in the abortion clinic case: jury nullification; that is, the hope that the jurors (or, at least one of them) will ignore the relevant questions framed by the jury instructions (viz., "Did this defendant intentionally assault a law enforcement officer?" "Did this defendant intentionally threaten a law enforcement officer?"), and decide the case based on personal sympathy with the defendants' supposed passionately-held beliefs." Not: "Did this defendant <u>corruptly</u> obstruct justice?" Did this defendant <u>willfully conspire to break the law</u>?," or "Did this defendant travel with the <u>specific intent</u> of extorting?" Each of those three questions is entirely relevant and "framed by the jury instructions," but the Government cannot live with the answers—or the lawful, proper, evidence and examinations en route to the utterly valid, lawful and proper verdicts.

Specifically as to Cliven D. Bundy, the United States knows he was never at any location where the alleged threats were made or where the alleged assaults were conducted. As such, he can only be accused of aiding and abetting or conspiring to commit such crimes. Under such circumstances, unlike the previous (clearly erroneous) rulings by the Court, the relevant evidence is not limited to alleged assaults occurring from overpasses on April 12, 2014.

## AS A MATTER OF WELL-SETTLED, BINDING LAW, JURIES ARE ENTITLED TO KNOW SETTINGS AND CIRCUMSTANCES OF A CRIMINAL CHARGE

"A jury is entitled to know the circumstances and background of a criminal charge. It cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." <u>United States v. Daly</u>, 974 F.2d 1215, 1217 (9th Cir. 1992); <u>United States v. Curtin</u>, 443 F.3d 1084, 1090 (9th Cir. 2006) "A jury is entitled to know the circumstances and background of a criminal charge. It cannot be expected to make its decision in a void--without knowledge of the time, place, and

11

circumstances of the acts which form the basis of the charge" (citing United States v. Daly, 974 F.2d 1215, 1217 (9th Cir. 1992)).

### AS A MATTER OF WELL-SETTLED, BINDING LAW, DEFENDANTS HAVE A RIGHT TO SHOW FACTS WHICH ARE "INEXTRICABLY INTERTWINED" WITH A CRIMINAL CHARGE

A jury is entitled to know the "setting" of a case, and cannot be expected to make its decision in a void, without knowledge of time, place and circumstances of acts which form the basis of a charge. United States v. Hajal (6th Cir. Mich. Mar. 28, 1977), 555 F2d 558, cert. denied, (U.S. Oct. 3, 1977), 434 US 849. Evidence may be admitted if the evidence "constitutes a part of the transaction that serves as the basis for the criminal charge." United States v. DeGeorge, 380 F.3d 1203, 1220 (9th Cir. 2004), quoting United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012 (9th Cir. 1995). See also United States v. Montgomery, 384 F.3d 1050, 1062 (9th Cir. 2004) (individual fraudulent acts were "inextricably intertwined" with the underlying conspiracy charge because the acts themselves comprised the conspiracy); United States v. Lillard, 354 F.3d 850, 854 (9th Cir. 2003) (defendant's theft of cocaine from a shipment, which was itself the basis for the conspiracy, was "inextricably intertwined" with the conspiracy charge).

### AS A MATTER OF WELL-SETTLED LAW, DEFENDANTS HAVE A RIGHT TO SHOW THE JURY THAT ANOTHER PERSON OR THING COMMITTED THE ALLEGED CRIMES

In Holmes v. South Carolina, 547 U.S. 319 (2006), the Supreme Court unanimously held that a defendant's constitutional right to have a meaningful opportunity to present a complete defense was violated by a state rule that limited the admission of evidence of third-party guilt. Accordingly, Cliven Bundy has a right to inform the jury that the Bureau of Land

Management's release of cattle on April 12, 2014 was caused by widespread community outrage, media pressure, political pressure, the Defendants'' lawful protest, and not the alleged criminal actions of Defendants. Accordingly, the proclamations and in-time statements of political leaders evidencing this public mass-outrage—and the fact that <u>BLM officials made their decisions in response</u> to this community outrage, not anything done by Defendants—are entirely relevant.

## THE GOVERNMENT's VISION OF "SELF-DEFENSE" LAW IS BASED ON CASES OF PURE VIOLENT CONFLICT, WHEREAS THIS CASE INVOLVES A COMPLICATED FACT-PATTERN OF PROTEST, CONFUSION, AND LAWFUL ARMS-CARRYING—MAKING A PURE 'AGGRESSOR-NON-AGGRESSOR ANALYSIS INAPPLICABLE

Throughout this case, the Government has presented a distorted picture of events in April 2014 with an emphasis on the bearing of arms of crowd participants. With regard to the April 12, 2014 procession to the wash, the prosecution asserts that the crowd was advancing and therefore, 'the aggressor,' and that an aggressor cannot claim self-defense. The government contends that defendants were not protesters in a normal sense.

But the movements and demands of the crowd on April 12, 2014 followed the pattern of political demonstrations throughout American history.[2] At times, there were components of

---

[2] The Government describes crowd movements in Toquop Wash on April 12, 2014 as a "massive assault," distinguishable from a 'normal' protest or demonstration because some of the participants were armed and the crowd "advanced forward" toward Government agents. Yet the history of American political protests and civil rights marches is replete with examples of protesters who were armed or who defied government authorities by entering government facilities, 'advancing forward,' refusing to disperse or occupying government-controlled spaces. See Rubinowitz, Shaw & Crowder, *Martin Luther King's Lawyers: From Montgomery to the March on Washington to Memphis*, 10 Nw. J. L. & Soc. Pol'y 494, 498 (2016). "In [Martin Luther King's] *'Letter from a Birmingham Jail,'* Dr. King wrote that the goal was 'to create such a crisis and foster such a tension that a community which has consistently refused to negotiate is forced to confront the issue.'" *Id.* at 498-99.

The protests, marches and demonstrations of the Civil Rights Era also sometimes defied court orders and government decrees. On one occasion in 1965, Martin Luther King openly violated a federal court injunction. *See Id.* at 607 saying "Governor Wallace had issued an order forbidding the [Selma] march and authorized the head of the state troopers to

13

self-expression, outrage, fear, anger, self-defense, and other behavior and emotions. The crowd was where they had a right to be, and was under no obligation to disperse or retreat.[3] The court orders at issue named only one Defendant, Cliven Bundy, and ordered him not to "physically" interfere. He didn't. Almost no one in the crowd knew much about the substance of the court orders. Public protests and demonstrations are by their nature unpredictable, confrontational, and messy. While some members of the crowd did "advance" forward, they were engaged in first amendment protected expression rather than violent aggression.[4] Even if the United States' were to claim that the crowd moving forward (or refusing to disperse) was itself unlawful, this is not settled and indeed, turns on disputed questions of material fact. Insofar as the United States' attempts to exclude evidence based upon the erroneous legal and factual assumption that the protestors lacked the legal right to be in the wash itself, such an assumption is baseless, has

---

stop the march, using "whatever measures . . . necessary." Later a federal judge issued an order enjoining Dr. King's march until after a court hearing, but Dr. King led 2,000 Black and white people from around the country across a forbidden bridge in defiance of the order. *See id.* at 499.

[3] *Long Beach Area Peace Network v. City of Long Beach*, 522 F.3d 1010 (9th Cir. 2008) (regulations on speech protesting government action are presumptively invalid).

[4] *United States v. Baugh,* Parades and processions are a unique and cherished form of political expression, serving as a symbol of the United States' democratic tradition. There is scarcely a more powerful form of expression than the political march. *Long Beach Area Peace Network v. City of Long Beach*, 522 F.3d 1010 (9th Cir. 2008) (finding that a protest groups had constitutional right to hold "spontaneous," non-pre-approved, protests and demonstrations). Perhaps the most famous civil rights demonstration in American history—the March 1965 march across the Edmund Pettus Bridge near Selma, Alabama led by Martin Luther King—involved demonstrators who "advanced" and "moved forward" against the commands of public authorities.

14

not been litigated or resolved by this Court, belies law and material fact, and is open to counter-evidence to be presented at trial.

Courts are resounding in consensus that very little evidence is needed for the jury to receive a self-defense jury instruction, see, e.g., *United States v. Sanchez-Lima*, 161 F.3d 545, 549 (9th Cir. 1998) (should receive self-defense instruction when "there is any foundation in the evidence"). But the government (and the Court) found no basis for a self-defense defense in either Trial 1 or Trial 2 (despite testimony in Trial 1 that agents disregarded orders from superiors to deescalate the situation and that agents opted instead to escalate the April 12, 2014 episode to the brink of violence).

### EVEN IF DEFENDANTS WERE PRECLUDED FROM ARGUING SELF DEFENSE, THEY MAY ARGUE PREPARATION FOR SELF DEFENSE TO OFFER AN INNOCENT EXPLANATION AS-TO WHY THEY WERE ARMED AND PREPARED TO DEFENSE THEMSELVES FROM EXCESSIVE FORCE

People have not only a right to self-defense where necessary. They have the right to make themselves secure in preparation for any potential need for self-defense. The known conduct of Defendants Parker, Stewart, and Drexler (and many others in this case), cannot be considered self-defensive as much as it was preparatory to any potential need for self-defense (or defense of others). In the words of the Mississippi Supreme Court in 1891: "[W]e are not aware of any principle of law under which the defendant was precluded from anticipating the imminent and impending attack, so long as, in so doing, he acted only in necessary self-defense." *Jamison v. Moseley*, 69 Miss. 478, 486 (1891). Thus, when evaluating "messy" difficulties between parties, a jury must be able to analyze the build-up, the rival eyewitness testimony, and any evidence that a party, "having reasonable ground to apprehend an attack, prepared to defend himself." *Id.* 482-83.

15

## THE UNITED STATES' MOTION IS PREMATURE

The attempt to categorically exclude defense evidence is premature. Each piece of offered defense evidence requires a different evaluation for relevancy under the federal rules. Clearly, it is plausible that much of the categories the United States seeks to exclude include particular pieces or forms of evidence that will be admissible so-long as a specific argument is made by the defense at the time the evidence is offered to be admitted as an exhibit or through the testimony of the witness. Therefore, even if the Court is inclined to grant some of the United States' motion, it must nevertheless leave the matter open until the time at which the actual evidence is offered by the defense during trial.

## CONCLUSION

The United States' Motion in Limine should be denied.

DATED THIS 28th day of September, 2017.

**JUSTICE LAW CENTER**

/s/ Bret O. Whipple, Esq.
Bret O. Whipple, Esq.
Nevada Bar No. 6168
JUSTICE LAW CENTER
Las Vegas, Nevada 89104
(702) 731-0000
*Counsel for Defendant*

## CERTIFICATION OF SERVICE

I hereby certify that on the 28th day of September, 2017 a true and correct copy of the foregoing OPPOSITION TO MOTION IN LIMINE was delivered via E-filing to:

DANIEL BOGDEN
United States Attorney

STEVEN MYHRE
First Assistant United States Attorney

NICHOLAS DICKINSON
Assistant United States Attorney

NADIA AHMED
Assistant United States Attorney

ERIN M. CREEGAN
Assistant
United States Attorney

501 Las Vegas Blvd. South, Suite 1100
Las Vegas, NV 89101

                                                 /S/ Tatum Wehr
                                       An Employee of Justice Law Center