BRET O. WHIPPLE, ESQ
Nevada Bar Number 6168
**JUSTICE LAW CENTER**
1100 S. Tenth Street
Las Vegas, Nevada 89104
(702) 731-0000
*Counsel for Defendant*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>vs.<br><br>CLIVEN D. BUNDY,<br><br>                              Defendant. | CASE NO.: 2:16-cr-00046-GMN-PAL-1<br><br>**DEFENDANT CLIVEN D. BUNDY'S<br>MOTION IN LIMINE** |

Defendant, CLIVEN D. BUNDY, by and through his counsel, Bret O. Whipple, Esq., of Justice Law Center, hereby files the following MOTION IN LIMINE seeking to exclude particular irrelevant evidence from being offered by the United States at the time of trial.

DATED THIS 28th day of September, 2017.

JUSTICE LAW CENTER

/s/ Bret O. Whipple, Esq.
Bret O. Whipple, Esq.
Nevada Bar No. 6168

1

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant seeks an order in limine prohibiting trial discussion (in front of the jury) regarding the following subjects:

### A. CLIVEN BUNDY'S POST APRIL 12, 2014 REMARKS ON WELFARE, RACE RELATIONS AND SOCIAL POLICY

In the days after April 12, 2014, Cliven Bundy spoke to a small gathering at the Bundy Ranch and is purported to have said words to the effect:

> "I want to tell you one more thing I know about the Negro," he said. Mr. Bundy recalled driving past a public-housing project in North Las Vegas, "and in front of that government house the door was usually open and the older people and the kids—and there is always at least a half a dozen people sitting on the porch— they didn't have nothing to do. They didn't have nothing for their kids to do. They didn't have nothing for their young girls to do.
>
> "And because they were basically on government subsidy, so now what do they do?" he asked. "They abort their young children, they put their young men in jail, because they never learned how to pick cotton. And I've often wondered, are they better off as slaves, picking cotton and having a family life and doing things, or are they better off under government subsidy? They didn't get no more freedom. They got less freedom."

*Christian Science Monitor*, April 24, 2014.

These words were taken out of context from a wide-ranging discussion by Defendant Cliven Bundy of government overregulation, the negative impacts of welfare policy, and the

2

benefits of hard work. When considered in context, such points and arguments are by no means racially derogatory and indeed are found throughout economic research and social science scholarship. *See, e.g.*, John C. Goodman, *Voluntary Welfare : A Greater Role for Private Charities* (1990) (discussing results of wide-scale economic research, paid for by the federal government, showing households taking welfare are worse off years later than similarly situated households who take no welfare); Thomas Sowell, *The Vision of the Anointed: Self-Congratulation as a Basis for Social Policy* (2008) (describing many ill effects of well-meaning social policies).

But the remarks by Defendant Cliven Bundy were reported by local and national news outlets and are referenced repeatedly in the discovery. Cliven's remarks, and any discussion of remarks on race relations, or the word "negro" or its derivatives should be excluded in all respects from trial because they are (1) totally irrelevant to the case, (2) unfairly prejudicial, and (3) would be confusing and misleading to the jury. They must be excluded and not referenced by any witness during trial.

B. **ANY AND ALL EVIDENCE RELATING TO JERAD AND AMANDA MILLER'S MURDERS OF LAS VEGAS POLICE OFFICERS**

It has been reported that a married couple who briefly visited the Bundy Ranch during the April 2014 protest, Jerad and Amanda Miller, later went on a killing rampage in Las Vegas, murdering two cops and a civilian shopper in a Walmart. It has been further reported that the Millers draped a Nazi flag and a Gadsden ("Don't tread on me") flag over the bodies of the officers. (It is unclear whether the draping of the Nazi flag was intended to espouse Nazism or to identify the police with Nazism, *see* TIME Magazine, *"Las Vegas Shooting Suspects Wielded Nazi Swastika,"* June 9, 2014.)

3

In any case these facts would be extremely prejudicial at trial and would be of almost miniscule relevance. Jerad and Amanda Miller may have camped nearby the Bundy Ranch for one or two nights, but were mostly unknown to the Bundys until a Bundy family member (Brianna Bundy) asked Jared and Amanda Miller to leave. Any connection by the prosecution between the Millers and the Defendants would be so poisonous that any tangential relevance would be overwhelmed by prejudice to the defense.

Rule 403 provides that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Accordingly, any and all references during trial to murders by Jared and Amanda Miller must be excluded from trial.

C. **ANY AND ALL EVIDENCE REGARDING BUNDY CATTLE DISRUPTING, DAMAGING OR HARMING SACRED NATIVE AMERICAN SITES.**

Within the discovery are reports by various government officials and agents who make claims that Bundy cattle are threatening or have harmed sacred Native American sites. Such claims are evocative of strong emotional reactions among large segments of the population. While Defendants contest such claims (and could put on expert witnesses disputing such claims), any probative value arising from discussions of Native American sites would be far outweighed by the prejudicial impact of such an examination. Accordingly, such discussion and evidence should be excluded under F.R.E. 403.

D. **ANY AND ALL EVIDENCE REGARDING BUNDY CATTLE HARMING DESERT TORTOISES OR OTHER WILDLIFE.**

Bundy Ranch water improvements on the allotments have greatly increased the health, numbers and vitality of wildlife in the area. However, in the discovery are references to

4

government claims that Bundy cattle and/or ranch operations have threatened endangered species such as the desert tortoise. A fact-finding proceeding would establish that the fate of the desert tortoise and other wildlife has been greatly improved by Bundy Ranch operations. But the discussion would be of little relevance at trial and would be far outweighed by the prejudicial effect of such discussion. Accordingly, any evidence relating to the topic should be excluded from trial.

E.  **ANY DISCUSSION OF RYAN BUNDY'S PARTICPATION IN A MAY 10, 2014 ATV DEMONSTRATION IN RECAPTURE CANYON, UTAH.**

It is reported that Defendant Ryan Bundy operated a four-wheeler or all-terrain vehicle in a caravan of protestors while participating in a demonstration against regulations in Recapture Canyon outside Blanding, Utah, on May 10, 2014. The Recapture Canyon demonstration occurred almost a month after the events in this case and bore no relationship to them. Any discussion of the May 10, 2014 episode would confuse the jury.

Additionally, introduction of discussion regarding the May 10, 2014 demonstration would constitute introduction of other bad acts in violation of F.R.E. 404(b). San Juan County Commissioner Phil Lyman was convicted of two misdemeanors and sentenced to 10 days in jail, three years of probation and a $1,000 fine for organizing the ATV caravan in an area that was closed to motorized vehicles. Monte Wells, a local blogger who participated in the ride, was given five days in jail and three years of probation.

Moreover, discussion of Ryan Bundy's participation in the Recapture Canyon incident would be unfairly prejudicial to him. Lyman and Wells were ordered to pay $96,000 in restitution for his role in the protest.

F. **AUDIO FROM MICHAEL FLYNN VIDEO IN WHICH FLYNN STATES 'WHAT WE'RE DOING IS ILLEGAL'**

During the first trial in this case, featuring codefendants Parker, Drexler, Stewart, et al., the government introduced a video purportedly taken by a St. George, Utah journalist named Michael Flynn,. Flynn is now deceased, having committed suicide.

The video contains statements (apparently by Flynn) that the incident is "illegal." The statements are utter hearsay and the government cannot provide any basis for any hearsay exception such as effect on the listener admission, business record, etc. Additionally, the statement that the event is "illegal" is an invalid legal conclusion. Additionally, the statement's extreme prejudice far outweighs any probative value (meaning none.)

G. **ALL MENTION OF THE SUBJECTIVE FEAR OF GOVERNMENT OFFICERS.**

It has become apparent from the government's presentation of its case in previous trials that the Government seeks to win false convictions by focusing the jury's attention on the subjective emotions of BLM, NPS or other government agents. Such statements are not evidence of guilt of any defendant on any element of any count.

Since the beginning of the first trial on February 6, the United States has injected and weighed down the trial with emotional statements designed to sway and mislead the jury regarding the elements of the counts in the indictment. Occasionally, government witnesses have been asked to 'rate' their level of fear on April 12, 2014 on a scale of 1 to 10, or to say whether the events of 4/12/2014 were more terrifying than past experiences in military combat, law enforcement, etc. Multiple prosecution witnesses have testified that they prayed to God or

6

thought about their wives and children as they contemplated death at the hands of the defendants.

These are all improper, irrelevant remarks, designed to mislead the jury, obtain wrongful convictions by pro-government jury nullification, and divert the jury's attention away from relevant evidence and the rule of law. Such statements are not evidence of any crime. *None of the elements at issue in the trial of this case involve a question of the subjective fear* of BLM or other government agents. Rather, the counts of the indictment invoke federal offenses which require an objective reasonableness standard or a subjective standard <u>from the perspective of a defendant</u>.

### 1. ASSAULTING A FEDERAL OFFICER UNDER 18 U.S.C. §111 DOES NOT INVOLVE AN ANALYSIS OF THE SUBJECTIVE FEARS OF THE OFFICER.

Under settled case law, the standard required for conviction under 18 U.S.C. §111 is <u>objective reasonableness</u>. See *United States v. Acosta-Sierra*, 690 F.3d 1111, 1119-1120 (9th Cir. 2012) ("for purposes of Section 111, [the question is whether] a reasonable person 'standing in the official's shoes,' that is, observing what the official observed, would have apprehended imminent bodily injury"). In *Acosta-Sierra*, the Ninth Circuit reversed a conviction for assaulting a federal officer where a district court had relied on the officer's subjective feeling of fear. *Id.* at 1121-22.

Similarly, conviction for 'threatening federal officials' under 18 U.S.C. §115 requires a two-part analysis with no consideration whatsoever of how fearful the federal officials were. Part one is the question of whether <u>a reasonable person in the shoes</u> of a federal official would objectively feel threatened by the defendant's words; and Part two is whether <u>the defendant</u> subjectively intended his words to place an officer in fear of imminent violent attack and injury.

7

The Ninth Circuit made this clear in *United States v. Bagdasarian*, 652 F.3d 1113 (9th Cir. 2011). "In order to affirm a conviction under any threat statute that criminalizes pure speech, we must find sufficient evidence that the speech at issue constitutes a 'true threat.' . . . Because the true threat requirement is imposed by the Constitution, the subjective test set forth in *Black* [focused on defendant's rather than victim's state of mind] must be read into all threat statutes that criminalize pure speech."

2.  **CONSPIRACY TO IMPEDE FEDERAL OFFICERS UNDER 18 U.S.C. §372 INVOLVES NO CONSIDERATION OF THE SUBJECTIVE FEARS OF THE OFFICERS**

Nor does an allegation of conspiracy to impede federal officers under 18 U.S.C. §372 involve any question relating to the subjective fears of officers. "[T]he essence of the crime of conspiracy is a 'meeting of the minds' among the conspirators to accomplish an illegal objective. See *United States v. Lorenzo*, 995 F.2d 1448, 1459 (9th Cir. 1993) (quoting *Blumenthal v. United States*, 332 U.S. 539 (1947). The question of whether officers <u>felt</u> impeded or scared is utterly irrelevant.

3.  **THE HOBBS ACT—EXTORTION OR ATTEMPTED EXTORTION BY FORCE—DOES NOT INVOLVE ANY QUESTION OF THE SUBJECTIVE EMOTIONS OF THOSE 'EXTORTED'**

The Defendants are also charged with 'extortion' under the Hobbs Act, 18 U.S.C. § 1951. Like the charges in the other counts, this charge does not involve any question regarding the subjective fear of those allegedly 'extorted.' Any such evidence of fear on behalf of purported victims is utterly irrelevant.

The Ninth Circuit's Model Instruction 8.142 lays out four elements:

8

The defendant is charged in [Count _____ of] the indictment with [attempted] extortion by force, violence or fear in violation of Section 1951 of Title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, **the defendant [[induced] [intended to induce]]** [name of victim] to part with property by the wrongful use of actual or threatened force, violence, or fear;

Second, the defendant acted **with the intent** to obtain property;

Third, commerce from one state to another [was] [would have been] affected in some way[.] [; and]

[Fourth, the defendant did something that was a substantial step toward committing the crime.]

4. <u>**THE ELEMENTS OF OBSTRUCTION OF JUSTICE.**</u>

Nor do the elements of 18 U.S.C. § 1503—obstruction of justice, as alleged in Counts 10, 11, and 12—involve the subjective emotions, fears or assessments of those allegedly "obstructed." The 9th Circuit's Model jury instructions, at §8.131, provides that:

In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt: **First**, the defendant influenced, obstructed, or impeded, or tried to influence, obstruct, or impede the due administration of justice; and **Second**, the

defendant acted corruptly, or by threats or force, or by any threatening communication, with the intent to obstruct justice.

Just as with the other charges in the indictment, the allegation allows for no discussion of how fearful, sad, scared or emotional those 'obstructed.' Were. Such emotional statements deprive the Defendants of a fair trial on the issue.

It is apparent from the government's emphasis on emotion that the government's strategy is win false convictions by drowning the jury with claims regarding the hurt feelings, distress, heartbreak, loss of faith in the American people, sense of fear or emotional states of BLM officers, family members and/or other members of the community. Such statements and discussions are not evidence which supports any element of any offense charged in the indictment.

Moreover, every line of questioning regarding the fears of BLM or law enforcement officers is designed to prejudice the jury against defendants and to deprive defendants of a fair trial by an impartial jury. The Ninth Circuit has "consistently cautioned against prosecutorial statements designed to appeal to the passions, fears and vulnerabilities of the jury." *United States v. Nobari*, 574 F.3d 1065, 1076 (9th Cir. 2009) (citing *United States v. Weatherspoon*, 410 F.3d 1142, 1149 (9th Cir. 2005). Statements "clearly designed to encourage the jury to enter a verdict on the basis of emotion rather than fact" are "irrelevant and improper." *Id.* at 1150. In particular, prosecutors "may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking. The evil lurking in such prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence." *United States v. Koon*, 34 F.3d 1416, 1443 (9th Cir.

1994) (quoting *United States v. Monaghan*, 741 F.2d 1434, 1441 (D.C. Cir. 1984)), aff'd in part, rev'd in part on other grounds, 518 U.S. 81 (1996).

The Defendant is entitled to a fair trial by an impartial jury in which he is able to confront his accusers and put on a defense according to the Federal Rules of Evidence.

## CONCLUSION

ACCORDINGLY, Defendant requests an order prohibiting the United States from introducing, discussing or mentioning—before the jury—(1) discussions or statements of a racial nature, including Cliven Bundy's post-April 12, 2014 remarks on welfare, race relations and social policy, (2) any evidence relating to Jarad and Amanda Miller's murders of Las Vegas police officers, (3) any mention regarding Bundy cattle disrupting or damaging sacred Native American sites, desert tortoises or other wildlife (4) audio from Michael Flynn's video in which Flynn states that the 4/12/2014 event is "illegal," and (5) any and all statements or evidence regarding the government agents subjective fear.

DATED THIS 28th day of September, 2017.

                                      **JUSTICE LAW CENTER**

                                      <u>/s/ Bret O. Whipple, Esq.</u>
                                      Bret O. Whipple, Esq.
                                      Nevada Bar No. 6168
                                      JUSTICE LAW CENTER
                                      Las Vegas, Nevada  89104
                                      (702) 731-0000
                                      *Counsel for Defendant*

11

## CERTIFICATION OF SERVICE

I hereby certify that on the 28th day of September, 2017 a true and correct copy of the foregoing MOTION IN LIMINE TO EXCLUDE EVIDENCE was delivered via E-filing to:

DANIEL BOGDEN
 United States Attorney

STEVEN MYHRE
First Assistant United States Attorney

NICHOLAS DICKINSON
Assistant United States Attorney

NADIA AHMED
Assistant United States Attorney

ERIN M. CREEGAN
Assistant
United States Attorney

501 Las Vegas Blvd. South, Suite 1100
 Las Vegas, NV 89101

　　　　　　　　　　　　　　　　　　　　/S/ Tatum Wehr
　　　　　　　　　　　　　　　　　　　An Employee of Justice Law Center

12