# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:16-cr-46-GMN-PAL |
| vs. ) | |
| ) | **ORDER** |
| CLIVEN D. BUNDY *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court are the Motions in Limine, (ECF Nos. 2565, 2571, 2601), filed by Defendant Cliven Bundy ("Defendant") to exclude irrelevant evidence, prejudicial hearsay evidence, and testimony from co-defendants or discussion of co-defendant's pleas. The Government timely filed a Consolidated Response. (ECF No. 2670). For the reasons discussed below, the Court **DENIES** Defendant's Motions.

## I.   BACKGROUND

On March 2, 2016, a federal grand jury sitting in the District of Nevada returned a Superseding Indictment charging nineteen defendants with sixteen counts related to a confrontation on April 12, 2014, with Bureau of Land Management ("BLM") Officers in Bunkerville, Nevada. (ECF No. 27).

## II.   LEGAL STANDARD

### A. Motion in Limine

In general, "[t]he court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104(a). In order to satisfy the burden of proof for Federal Rule of Evidence ("FRE") 104(a), a party must show that the requirements for admissibility are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483

U.S. 171, 175–76 (1987) ("We have traditionally required that these matters [regarding admissibility determinations that hinge on preliminary factual questions] be established by a preponderance of proof.").

"Although the [FRE] do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)).  In limine rulings "are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *see also Luce*, 469 U.S. at 41 (noting that in limine rulings are always "subject to change," especially if the evidence unfolds in an unanticipated manner).

### B. Applicable Rules of Evidence

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1028 (9th Cir. 2015).

FRE 403 requires the Court to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993); *see* Fed. R. Evid. 403.  "[P]rejudice alone is insufficient; unfair prejudice is required." *United States v. Skillman*, 922 F.2d 1370, 1374 (9th Cir. 1990) (citing *United States v. Bailleaux*, 685 F.2d 1105, 1111 & n. 2 (9th Cir. 1982)).  Unfair prejudice "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." *Id*. (internal quotation marks and citation omitted).

## III. DISCUSSION

### A. Motion in Limine (ECF No. 2565)

Defendant seeks to preclude evidence that: (1) discusses statements of a racial nature, including Defendant's statements made after April 12, 2014, regarding welfare, race relations, and social policy; (2) Jerad and Amanda Miller are connected to Defendant; (3) Defendant's cattle disrupted or damaged sacred native American sites, desert tortoises or other wildlife; (4) Ryan Bundy participated in a May 10, 2014, ATV demonstration; (5) Michael Flynn ("Flynn") stated in a video that the event on April 12, 2014, was illegal; (6) government agents' were afraid. (Def. Mot. 11:8–15, ECF No. 2565). The Court will address each of these categories of evidence in turn.

#### 1. Remarks on Welfare, Race Relations and Social Policy

Defendant argues that his statements and any discussion of "his race relations, or the word 'Negro' or its derivatives should be excluded in all respects from trial." (*Id*. 3:11–14). Defendant claims these statements are "(1) totally irrelevant to the case, (2) unfairly prejudicial, and (3) would be confusing and misleading to the jury." (*Id*. 3:14–16).

The Government responds that this evidence is not part of their case-in-chief. (Gov't. Resp. 5:11–13, ECF No. 2670). However, the Government avers that this evidence could become relevant if it is used for impeachment purposes or under the theory of "invited error" because the Defendant has made inappropriate statements. (*Id*. 5:14–16, 6:5–7).

Under the "invited reply" rule, a prosecutor may respond substantially to a defense counsel's attack in order to "right the scale." *United States v. Parker*, 991 F.2d 1493, 1498 n.1 (9th Cir. 1993) (quoting *United States v. Young*, 470 U.S. 1, 13 (1985)). "[A] party may not complain on appeal of errors that he himself invited or provoked the [district] court . . . to commit." *United States v. Wells*, 519 U.S. 482, 488 (1997) (quoting *United States v. Sharpe*, 996 F.2d 125, 129 (6th Cir. 1993)). Moreover, "[i]f the defendant has both invited the error,

and relinquished a known right, then the error is waived and therefore unreviewable." *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997).

The Government does not intend to affirmatively offer Defendant's remarks on welfare, race relations, and social welfare as part of its case in chief, but argues that it should be able to offer them in rebuttal if they become relevant or for the purposes of impeaching the witness. (*See* Gov't. Resp. 5:14–16, 6:5–7). While the Court notes that these entries include language with questionable relevance and probative value, the actual admissibility of this evidence cannot be determined without the full context of trial. *See Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

Accordingly, the Court finds exclusion of these entries at this time to be premature. *See Parker*, 991 F.2d at 1498. Nevertheless, the Court cautions the Government that the circumstances that would justify admission of some of these statements may be quite narrow.

2. *Jerad and Amanda Miller's Murder of Police Officers*

Defendant claims that argument of any connection between Defendant and Jerad and Amanda Miller (the "Millers") "would be extremely prejudicial at trial and would be of almost miniscule relevance." (Def. Mot. 4:1–2). The Millers are "a married couple who visited the Bundy Ranch during the April 2014 protest" and "later went on a killing rampage in Las Vegas, murdering two cops and a civilian shopper in a Walmart." (*Id*. 3:19–22).

The Government responds that this evidence is also not part of their case-in-chief. (Gov't. Resp. 5:11–13). The Government contends, however, that this evidence could become relevant if it is used for impeachment purposes or because Defendant has made inappropriate statements and invites the Government to respond. (*Id*. 5:14–16, 6:5–7).

The Government does not intend to use Defendant's connection to the Millers in its case in chief, but argues that it should be able to offer them in rebuttal if they become relevant or for the purposes of impeaching the witness. (*See* Gov't. Resp. 5:14–16, 6:5–7). The Court finds

exclusion of these entries at this time to be premature. *See Parker*, 991 F.2d at 1498. However, the Court notes that the circumstances that would justify admission of this evidence may be narrow.

### 3. Damage Allegedly Caused by Cattle

Defendant argues that "reports by various government officials and agents who make claims that Bundy cattle are threatening or have harmed sacred Native American sites" will produce "strong emotional reactions among large segments of the population." (Def. Mot. 4:14–17). Additionally, Defendant claims that discussion about how "Bundy cattle and/or ranch operations have threatened endangered species such as the desert tortoise" is "of little relevance at trial and would be far outweighed by the prejudicial effect." (*Id*. 5:1–5).

The Government responds that "evidence that Bundy's cattle were causing serious harm points out the need for the impoundment action when Bundy refused to follow the court orders and remove his cattle from the resource. This is relevant to show the reasonableness of the government's actions in its dealings with defendant Bundy." (Gov't. Resp. 6:23–7:4). Further, the Government claims that "[w]ithout relevant evidence showing the reasons behind the impoundment, the government will not be able to explain why an impoundment was necessary or that Cliven Bundy was purposefully deceptive in his statements to the public when recruiting others to his cause." (*Id*. 7:11–15). Essentially, the Government argues that this evidence is an "important counter-narrative to what will surely be a part of Bundy's defense at trial: that an over-reaching federal government had it coming." (*Id*. 7:16–18).

The Court agrees that the evidence of harm caused by Defendant's cattle is relevant to show the reason the Court Orders were issued to impound the cattle. (*Id*. 7:11–15). Under FRE 403 the probative value of the evidence must be substantially outweighed by the danger of unfair prejudice. *See Arambula-Ruiz*, 987 F.2d at 602. Here, Defendant's concern that the mention of harm to Native American sites and threatening endangered species will have a

prejudicial effect is legitimate. (Def. Mot. 5:1–5).  However, the Court is not convinced that the harm caused by cattle will arouse the jury's sense of horror or provoke their instincts to punish. *See Skillman*, 922 F.2d at 1374.  The Court finds that despite introduction of this evidence that the jury will be able to base its decision on the established propositions in the case.  Accordingly, the Court DENIES Defendant's Motion to exclude damage allegedly caused by Defendant's cattle.

### 4. *Ryan Bundy's Participation in an ATV Demonstration*

Defendant seeks to exclude evidence that Ryan Bundy "operated a four-wheeler or all-terrain vehicle in a caravan of protestors while participating in a demonstration against regulations in Recapture Canyon outside Blanding, Utah on May 10, 2014." (Def. Mot. 5:9–12).  According to Defendant, this evidence is irrelevant to this case because Ryan Bundy's participation occurred a month after the charged conduct, it will confuse the jury, and constitutes "introduction of other bad acts in violation of F.R.E. 404(b)." (*Id*. 5:12–17).  However, Defendant does not provide any legal basis for these arguments.  The Government responds that it does not intend to use this evidence in its case-in-chief, but it might become relevant for the purposes of impeachment. (*Id.* 8:2–7).

Because the Government does not intend to use Ryan Bundy's participation in the ATV demonstration in its case in chief, but claims that it might become relevant to impeach him for inconsistent acts, exclusion is premature at this time. (Gov't. Resp. 8:7); *See Parker*, 991 F.2d at 1498.

### 5. *Audio from Flynn*

Defendant argues that the "video purportedly taken by St. George, Utah journalist named Michael Flynn" should be excluded because it is hearsay, it is prejudicial, and is an "invalid legal conclusion." (Def. Mot. 6:6–11).  Specifically, Defendant would like Flynn's

statement that the "incident is 'illegal'" excluded. (*Id*. 6:6).  However, Defendant does not provide any legal basis for these arguments.

The Government responds that the video from Michael Flynn ("Flynn") is a "recorded contemporaneous present sense impression." (Gov't. Resp. 8:14).  The Government claims that this evidence "tends to advance proof that a peaceful non-violent protest was not underway, and that that [sic] was clear to a reasonable and neutral observer." (*Id*. 8:14–16).  As such, the Government argues that the evidence is "therefore relevant nonhearsay evidence that advances proof that others similarly situated – like defendants Ammon and Ryan Bundy – were not confused about the motives and level of force being shown by the Bundy Followers."  Further, the video is not offered solely for Flynn's words, it is also offered to advance proof of the sights, sounds, and images surrounding" the events taking place on April 12, 2014. (*Id*. 8:21–23).

"The [FRE] define hearsay as 'a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.'" *United States v. Orm Hieng*, 679 F.3d 1131, 1141 (9th Cir. 2012) (quoting Fed. R. Evid. 801(c)).  Hearsay statements are not admissible at trial unless they "fit within an exception to the rule against hearsay." *Id*. (citing Fed. R. Evid. 802, 805).

Under FRE 803(1) present sense impressions "are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness." Fed. R. Evid. 803.  A present sense impression is a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1).  In making the determination whether a present sense impression is admissible, courts must weigh three factors: contemporaneousness, chance for reflection, and relevance. *United States v. Ponticelli*, 622 F.2d 985, 991 (9th Cir.1980) (overruled on other grounds by *United States v. De Bright*, 730 F.2d 1255 (9th Cir.1984)).  In order to qualify as a present sense impression, the "out-of-

court statement must be nearly contemporaneous with the incident described and made with little chance for reflection." *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir.1995) (finding that a statement from a 911 tape in which the caller was relaying information from observers of an event, which he himself did not observe, met the above requirements but was still inadmissible due to caller's failure to personally perceive the events he was describing).  Finally, the declarant, but not the witness who overhears the declarant, must "have personal knowledge of the events described." *United States v. Murillo*, 288 F.3d 1126, 1137 (9th Cir.2002) (quoting *Bemis*, 45 F.3d at 1373).

   Here, Defendant argues that Flynn's statement is excludable on hearsay grounds, and the Government argues that the statement is permissible as a "present sense impression." (Gov't. Resp. 8:14).  First, the statement is contemporaneous because it is caught on video during the event on April 12, 2014.  Second, as the statement seems to be made with little chance for reflection because it is captured live as Flynn is perceiving the events unfold.  Third, the Court agrees that this evidence is relevant because it is being offered to prove the circumstances of the events taking place on April 12, 2014.  Lastly, given that Flynn was present and narrating the event, personal knowledge has been established.  The Court finds that Flynn's statement qualifies as present sense impression under FRE 803(1).

   "A lay witness may testify only to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." *United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001), as amended (Feb. 14, 2001) (internal quotation omitted); *see* Fed. R. Evid. 701; *see also* Fed. R. Evid. 704.  Further, "[a] lay witness may testify as to an ultimate issue of fact, so long as the testimony is otherwise admissible." *Crawford*, 239 F.3d at 1090.  For example, a lay witness may not testify as to a legal conclusion, such as the correct interpretation of a contract. *Id*.

Here, the Court is not willing to assume a legal conclusion by a witness stating that the "incident is 'illegal.'" (Def. Mot. 6:6). Thus, the Court is not willing to interpret Flynn's language as harshly as Defendant desires. Flynn's statement is rationally based on his perception and is helpful to a clear understanding of what happened on April 12, 2014 in real time. Moreover, Flynn's testimony is otherwise admissible because it qualifies as present sense impression under FRE 803(1). Additionally, Defendant fails to demonstrate how the statement is prejudicial. Thus, the Court finds that the statement's probative value is not outweighed by a danger of unfair prejudice. Accordingly, the Court DENIES Defendant's request to exclude Flynn's audio statement.

      6.  *Agents' Subjective Fear*

Defendant argues that alleged victim's testimony about subjective fear is irrelevant to any of the counts charged in this case. (Def. Mot. 7:5–7). Specifically, Defendant identifies testimony that: (1) witnesses rated their level of fear on a scale from one to ten; (2) the events on April 12, 2014 were "more terrifying than past experiences military combat or law enforcement[;]" and (3) individuals "prayed to God or thought about their wives and children as they contemplated death at the hands of defendants." (*Id*. 6:21–7:2). Defendant claims that this testimony is not only irrelevant, but also "designed to mislead the jury, obtain wrongful convictions by pro-government jury nullification, and divert jury's attentions away from relevant evidence and the rule of law." (*Id*. 7:3–5).

The Government responds that "the fact that so many officers were afraid, very afraid, even compared to the other stressful situations that a law enforcement officer might experience, is helpful and relevant information for the jury to consider to determine whether a reasonable person would also be afraid." (Gov't. Resp. 9:12–15).

The Court finds that the degree of fear the officers felt is relevant. "Alleged threats should be considered in light of their entire factual context, including the surrounding events

and *reaction of the listeners*" when determining if there was a threat to assault a federal law enforcement officer, in violation of 18 U.S.C. § 115. *United States v. Orozco–Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990), *overruled in part on other grounds* by *United States v. Hanna*, 293 F.3d 1080 (9th Cir. 2002) (emphasis added); *see United States v. Steward*, 472 F. App'x 589, 591 (9th Cir. 2012).  Because the officer's testimony describes their reactions as listeners this evidence is relevant and probative.  Additionally, the Court finds that the degree of fear and its effect are more probative than they are prejudicial to prove the conspiracy to impede and injure a federal officer, in violation of 18 U.S.C. § 372; assaulting a federal officer, in violation of 18 U.S.C. § 111(a)(1) and (b); threatening a federal law enforcement officer, in violation of 18 U.S.C. § 115(a)(1)(B); and extortion by force, violence, or fear in violation of Title 18 U.S.C. § 1951. (*See* Superseding Indictment ¶¶ 158, 164, 168, 180).  Therefore, evidence of the degree of fear and its effect should not be excluded.  Accordingly, the Court DENIES Defendant's request to exclude the agents' testimony about their fear.

### B. Motion in Limine (ECF No. 2571)

Defendant seeks to exclude "evidence of laypersons making legal conclusions." (Def. Mot. 2:3, ECF No. 2571).  Defendant identifies a statement made by Dan Love ("Love") to Ryan Bundy in a video stating that "[o]n behalf of the United States government I must inform you that you are legally responsible for the release of the cows." (*Id*. 2:7–8).[1]  Defendant claims that this statement is "hearsay, [ ] double-hearsay (in that Love claims to have 'the United States government' speaking through him)" and a "legal conclusion by a lay witness." (*Id*. 2:9–11).

The Government responds that Defendant "cites a number of federal rules of evidence but does not explain their application to the statement he seeks to exclude." (Gov't. Resp. 10:1–

---

[1] The Court will only address the identified statement made by Dan Love because a request to exclude all "evidence of laypersons making legal conclusions" is overbroad. (Def. Mot. 2:3).

2). Even so, the Government asserts that "Love's statements at Post 1 are not offered for the truth of the matter, but to show Ryan Bundy was warned that he was not permitted to take the cattle." (*Id*. 10:6–7). Further, the Government claims that video shows "Ryan Bundy's state of mind . . . to extort the cattle (not some innocent mistake that he was allowed to take them)." (*Id*. 10:9–11).

The Court finds that to the extent that Love's statement is not being offered to prove the truth of the matter asserted that Ryan Bundy was legally responsible, but is offered to show that Ryan Bundy was warned, the statement is not hearsay or double hearsay. *See Orm Hieng*, 679 F.3d at 1141. Additionally, Love's statement is rationally based on his perceptions and does not have specialized meaning in the law different from how it is presented. *See Crawford*, 239 F.3d at 1090. Further, Love's statement does not tell the jury what result to reach. *See Fireman's Fund Ins. Companies v. Alaskan Pride P'ship*, 106 F.3d 1465, 1468 n.3 (9th Cir. 1997) ("Testimony that simply tells the jury how to decide is not considered 'helpful' as lay opinion."). Therefore, the Court does not construe Love's statement as a legal conclusion, and the statement is not hearsay. Accordingly, Defendant's Motion to exclude Love's statement is DENIED.

**C. Motion in Limine (ECF No. 2601)**

Defendant requests that the Court prohibit testimony from any co-defendants that have taken plea deals in this case. (Def. Mot. 2:3–5, ECF No. 2601). Further, Defendant seeks to prohibit the Government from using a co-defendant's guilty plea to prove an element of the charges relating to "conspiring with or aiding and abetting" against him. (*Id*. 2:6–8). In addition, Defendant moves the Court to preclude reference to the convictions or pleas of co-defendants. (*Id*. 3:3–4).

The Government responds that Defendant "cites no authority for this request." (Gov't. Resp. 10:19–20). The Government claims that if they chose to call a "co-defendant and

cooperator, the government has the right to establish that they have a plea deal in order to front-load their motivation to testify." (*Id*. 10:21–22).  Further, the Government claims that "[t]o the extent Bundy believes the government will introduce evidence that a co-defendant pled guilty or was convicted independently of cooperator testimony, he is wrong." (*Id*. 11: 1–3).

"[E]xposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316–17 (1974); *see Giglio v. United States*, 405 U.S. 150, 154–55 (1972) ("Taliento's credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it.").  Because the jury is entitled to know of any agreement that the witness has with the Government, the Court agrees that the Government should be permitted to establish that a plea deal is the motivation for a witness to testify.  Additionally, the Government has agreed that it will not introduce evidence that a co-defendant pled guilty or was convicted outside the scope of cooperator testimony. (Gov't. Resp. 11: 1–3).

Furthermore, Defendant has failed to provide a legal basis for the Court to prohibit the testimony of co-defendants or use a guilty plea to prove an element of the charges relating to conspiring with or aiding and abetting against Defendant. *See Couturier v. Am. Invsco Corp.*, No. 2:12-cv-01104-APG-NJK, 2013 WL 4499008 ("A judge is the impartial umpire of legal battles, not a [party's] attorney. He is neither required to hunt down arguments the parties keep camouflaged, nor required to address perfunctory and undeveloped arguments . . . To the extent that Defendant failed to develop any additional arguments or provide any legal support for them, it has waived them.") (quoting *Williams v. Eastside Lumberyard & Supply Co.*, 190 F.Supp.2d 1104, 1114 (S.D.Ill.2001)).  For these reasons, the Court DENIES Defendant's Motion to prohibit testimony from co-defendants, convictions, and guilty pleas.

IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant's Motions in Limine, (ECF Nos. 2565, 2571, 2601), are **DENIED**.

**DATED** this __24__ day of October, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court