# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:16-cr-0046-GMN-PAL |
| vs. ) | |
| ) | **ORDER** |
| RYAN W. PAYNE, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court is Defendant Ryan W. Payne's ("Payne") Motion to Disqualify Jury Panel and Send a New Questionnaire, (ECF No. 2639). The Government filed a Response and Defendant filed a Reply.[1] For the following reasons, the Court **DENIES** Defendant's Motion.

I. **DISCUSSION**

In Payne's instant Motion, he asserts that "the jury questionnaire designed by the court, which can be filled out only via internet does not allow for a proper cross section of the community." (Mot. to Disqualify 11:4–5, ECF No. 2639). Additionally, Payne argues that the statement of the case "listed in the questionnaire fails to address the information as mere allegations in an indictment," the "lack of instructions concerning the filing [sic] out of the indictment fails to allow counsel to properly ascertain the reasons why significant portions of questionnaires are left unanswered," and that the questions "asked of the panel have a significant government bias." (*Id.* 11:6–10). The Government asserts that Payne "provides no legal authority . . . except for general exhortations to the Sixth Amendment which doesn't

---

[1] Co-defendants Ammon Bundy and Cliven Bundy (collectively "co-defendants") filed Motions for Joinder, (ECF Nos. 2643, 2646). Accordingly, co-defendants' Motions, (ECF Nos. 2643, 2646), are **GRANTED**.

address jury questionnaires at all." (Resp. 3:20–21, ECF No. 2719). The Court will address each of these concerns in turn.

### A. Methodology for Those Without Computers

Payne alleges that "[i]t is not clear what instructions were provided on the actual questionnaire as to the availability of a hard copy or the need to pay for the postage of the return of these questionnaires." (Mot. to Disqualify 5:25–6:1). He continues that "[w]ithout the option of being able to fill out a hard copy, . . . individuals who do not have internet access either at work or home (low income demographic) as well as older individuals not comfortable with computer technology, were excluded from this jury pool." (*Id.* 6:1–5).

However, every prospective juror received a letter prior to filling out the questionnaire that stated:

> If you are unable to access the internet to complete this process, please call the Jury Administrator's Office at (702) 464-5600, option #0, to make an appointment to respond to the Questionnaire on the Office's computers. . . .
>
> Rather than require you to come to the Courthouse to answer such questions in public, however, I've determined it is sufficient for all prospective jurors to complete the Questionnaire either online or in writing as explained above.

Moreover, for those jurors that did not have access to a computer or did not feel comfortable using a computer, the Court provides two computers that are set up in the jury office where individuals could come in and complete the questionnaire. For this questionnaire, there were not any jurors who requested a paper copy be mailed to them. In the previous two trials, however, there were individuals who completed a paper copy. There, the Court mailed a paper copy to these individuals with a prepaid return envelope to return the questionnaire; they were never required to pay for their own postage.

The general methodology the Court used was as follows: the Clerk's Office first mailed the letter mentioned *supra* to all the jurors' home addresses requesting them to respond to the questionnaire. For the individuals who did not respond within the time frame provided, the Clerk's Office sent emails with the letter attached and a link to the questionnaire. If the individuals did not have an e-mail address, the Clerk's Office called them with the phone numbers provided. If an individual failed to complete the questionnaire after the first two attempts to contact them, the Clerk's Office called each individual for a third and final attempt. There were only thirty-seven jurors that failed to complete the questionnaire. Because of this process, Payne's Motion is denied concerning the methodology for potential jurors without computers to complete the questionnaire.

**B. Statement of the Case**

Turning to his next objection, Payne argues that "the statement of facts in the questionnaire presumes facts that the government must present and prove at trial as facts that have already been proved." (Mot. to Disqualify 7:3–4). Specifically, Payne asserts that the Court "failed to use the word 'alleged' when describing the conduct involving 'the unlawful grazing on federal public land.'" (*Id.* 8:24–25).

The Government responded that Payne "provides no authority for this proposition" and that "the statement correctly [indicates] that the charges were allegations and that the defendants have pleaded not guilty." (Resp. 5:5–6). In compiling the questionnaire, the Court reviewed all proposed statements of the case and constructed the one provided in order to be as succinct and clear as possible. Even so, as the Government pointed out, "any jurors actually chosen for service will be instructed as to the government's burden of proof." (*Id.* 5:7–8). As such, the Court denies Payne's Motion regarding the statement of the case.

### C. Issues with Questions

Payne's Counsel requests "information concerning what instructions the prospective jurors were provided when they made no response or left a response blank." (Mot. to Disqualify 9:8–9). The Motion continues "[i]t is unclear whether the directions indicate that prospective jurors can choose not to answer questions they are uncomfortable answering or whether certain jurors have just chose [sic] not to answer certain questions." (*Id.* 9:11–14).

The computer application the Court uses for the questionnaires makes questions mandatory and follow-up questions mandatory depending on the answer provided for the previous question. For example, the potential juror was required to answer the question, "Have you read or heard anything about the Bundy family in Bunkerville, or in this case?" If the potential juror answered "Yes," they were then required to answer the follow-up question, "If so, please describe the nature of what you have read or heard." However, if the potential juror completed the questionnaire on paper, then the Court has no control over how fully completed that questionnaire is.

Indeed, six questions were left unanswered in the questionnaires. The jury questionnaire web application the Court used is comprised of two websites: an administrative and a public. When the jury questionnaire was developed, there were originally four question categories: text, single choice, multiple choice, and list. While creating the questionnaire for the first trial, a new category, "Single Choice (Yes/No)" was added to the administrative portal. The programming error arose from this new category being implemented in the display for the public website, but not being implemented in the collection of answers. Essentially, the prospective juror was able to see the questions, but their answers were not recorded for the six questions at issue. Upon discovery of this problem, the code was fixed.

The Court, however, created the supplemental questionnaire comprised of the six questions for which the answers were not recorded. Moreover, the Court intends to have each

prospective juror complete the supplemental questionnaire in person as they report for jury duty. Copies will then be provided for the Court and counsel when the jurors are taken to the courtroom the day of voir dire. As such, the Court denies Payne's Motion as to the issues with the questions.

### D. The Effect of the October 1, 2017 Shooting

Finally, Payne argues that "[e]ven if this court finds that the questionnaire as designed is not flawed, a new questionnaire is necessary because of the events of October 1, 2017." (Mot. to Disqualify 10:4–5). Specifically, Payne asserts that he believes many individuals' views may have changed in light of the mass casualty shooting, including individuals' views on firearms and law enforcement. (*Id.* 10:7–11). However, as the Court has previously stated, the Court is providing jurors supplemental questionnaires to be filled out on the day they report for jury duty. These supplemental questionnaires include not only the previously omitted questions on the questionnaire, but also some of the questions proposed by the parties about the October 1, 2017 shooting, including Payne's. As such, providing the supplemental questionnaires helps to eradicate any potential conflicts or issues that could arise from the October 1, 2017 Shooting, and therefore a new questionnaire is not necessary.

Ultimately, Payne's Motion does not rise to the level of showing that a particular group or class of people has been systematically or purposefully excluded from the jury pool to require a new questionnaire. *See, e.g.*, *United States v. James*, 453 F.2d 27, 29 (9th Cir. 1971). Accordingly, the Court denies Payne's Motion and will proceed with the same panel of potential jurors.

## II. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Ryan W. Payne's Motion to Disqualify Jury Panel and Send a New Questionnaire, (ECF No. 2639), is **DENIED**.

1 **IT IS FURTHER ORDERED** that Ammon Bundy's and Cliven Bundy's Motions for
2 Joinder, (ECF Nos. 2643, 2646), are **GRANTED**.

**DATED** this __23__ day of October, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge