MARGARET A MCLETCHIE, Nevada Bar No. 10931
ALINA M. SHELL, Nevada Bar No. 11711
**MCLETCHIE SHELL LLC**
701 East Bridger Ave., Suite 520
Las Vegas, Nevada 89101
(702) 728-5300
maggie@nvlitigation.com
*Counsel for Proposed Intervenors,*
*Las Vegas Review-Journal and Battle Born Media*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. :  2:16-cr-00046-GMN-PAL |
| Plaintiff, | **INTERVENORS' MOTION TO UNSEAL COURT DOCUMENTS** |
| vs. | |
| CLIVEN D. BUNDY, et al., | |
| Defendants. | |

Intervenors the Las Vegas Review-Journal and Battle Born Media ("Intervenors"), by and through their counsel of record, Margaret A. McLetchie and Alina M. Shell, hereby move this Court for an order unsealing documents and court records which have sealed in this case. This motion is supported by the attached memorandum of points and authorities.

DATED this 14th day of December, 2017.

                                             */s/ Margaret A. McLetchie*
                                             MARGARET A MCLETCHIE, Nevada Bar No. 10931
                                             ALINA M. SHELL, Nevada Bar No. 11711
                                             **MCLETCHIE SHELL LLC**
                                             701 East Bridger Ave., Suite 520
                                             Las Vegas, Nevada 89101
                                             (702) 728-5300
                                             maggie@nvlitigation.com
                                             *Counsel for Proposed Intervenors,*
                                             *Las Vegas Review-Journal and Battle Born Media*

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case has been a matter of keen public interest since its inception. As the United States Court of Appeals for the Ninth Circuit discussed in *In re Bundy*, 840 F.3d 1034 (9th Cir. 2016), this case has its roots in a decades-long dispute between defendant Cliven Bundy and the Bureau of Land Management ("BLM") over cattle grazing fees and the use of public lands around Bunkerville, Nevada. On April 5, 2014, the BLM began a massive effort to round up approximately 500 head of Cliven Bundy's cattle.[1] While the BLM was conducting its roundup, hundreds of supporters converged on the area around Cliven Bundy's Bunkerville ranch to protest the government's actions. *In re Bundy*, 840 F.3d 1034 at 1036.

It is the function of the press to report the news. One of the most critical aspects of news reporting is to inform the public of justice being carried out in the courts. In this regard, as well as others, the press is vital to the health of a democracy. "In short, justice must not only be done, it must be seen to be done. *United States v. Rosen*, 487 F. Supp. 2d 703, 716 (E.D. Va. 2007). Throughout the pendency of this case, however, the protective order entered by the Court (ECF No. 609) has prevented Intervenors and the public from accessing a large number of filings, documents, and hearings.

This shroud of secrecy is anathema to the presumption under the First Amendment and the common law that all documents filed with a court are presumptively public documents open for review and inspection. Moreover, closing hearings and filing documents under seal has prevented Intervenors from carrying out their constitutionally protected function of reporting the news. This is troublesome given the importance of this case, and the public's right to know about the government's handling of its investigation and prosecution of the Defendants—a right that is of particular importance given the prior mistrials,[2] the number of Defendants who have been acquitted on all or most of the charges

---

[1] *See* http://www.reviewjournal.com/news/bundy-blm/feds-start-rounding-bundy-s-cattle-northeastern-clark-county (last accessed January 12, 2017).

[2] *See* ECF Nos. 1887 and 2283.

2

against them,[3] and this Court's recent indication that the government's failure to timely disclose a long list of documents, witness names, and other information may result in a mistrial in the current trial of Defendants Cliven D. Bundy, Ryan C. Bundy, Ammon E. Bundy, and Ryan W. Payne.[4]

As the United States Supreme Court has observed, "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). In order to ensure not just fairness, but also the appearance of fairness, this Court should enter an order unsealing the documents, filings, and transcripts which Intervenors and the public have been prohibited from viewing. Additionally, to help clarify the extent of the sealing in this case, Intervenors respectfully request the Court provide Intervenors and the general public with an itemized description of the documents, filings, transcripts, and exhibits currently under seal.

## II.  RELEVANT FACTS AND PROCEDURAL HISTORY

### A. Indictment and Protective Order

On March 2, 2016, the government filed a superseding indictment charging Cliven Bundy, four of his sons, and fourteen supporters with Conspiracy to Commit an Offense Against the United States, 18 U.S.C. § 371; Conspiracy to Impede or Injure a Federal Officer, 18 U.S.C. § 372; Use and Carry of a Firearm in Relation to a Crime of Violence, 18 U.S.C. § 924(c); Assault on a Federal Officer, 18 U.S.C. § 111(a)(1), (b); Threatening a Federal Law Enforcement Officer, 18 U.S.C. § 115(a)(1)(B); Obstruction of the Due Administration of Justice, 18 U.S.C. § 1503; Interference with Interstate Commerce by Extortion, 18 U.S.C. § 1951; and Interstate Travel in Aid of Extortion, 18 U.S.C. § 1952. (*See generally* ECF No.

---

[3] *See*, *e.g.* ECF Nos. 2291, 2292, 2293, 2294 (Judgments of Acquittal for Defendants Steven A. Stewart, Richard R. Lovelien, O. Scott Drexler, and Eric J. Parker); *see also* ECF No. 2290 (Jury Verdict).

[4] *See* https://www.reviewjournal.com/news/bundy-blm/las-vegas-judge-hints-at-mistrial-in-bunkerville-standoff-case/ (last accessed December 12, 2017).

27.)

Subsequently, on April 22, 2016, the magistrate judge conducted a scheduling and case management conference to determine whether the case should be designated complex. (*See* ECF No. 327 (minutes of conference).) In addition to setting forth a proposed schedule for the production of discovery—which includes an estimated 1.4 terabytes of electronic evidence—the government asserted in its proposed complex case schedule (ECF No. 270) that because of "concerns for witness safety," as protective order was necessary to prevent "the further disclosure or dissemination of evidence produced in this case." (*Id.* at p.16:12-15.)

At the April 22, 2016 scheduling conference, the government circulated a proposed protective order to the defendants. (*See* ECF No. 357-1 (Exh. A to Intervenors' Amended Motion to Intervene).) In its proposed protective order, the government proposed that all "materials and documents created or written by the government, or obtained by the government through warrants or court orders" would be designated "protected." (*Id.* at p.2:18-20.) The proposed protective order carved out a small exception for discovery the defendants might obtain from open sources such as social media and news accounts. (*Id.* at p.2:20-23.) Otherwise, essentially all of the discovery the government asserted it created or obtained would be subject to protection. Citing the need to protect the public's interest in learning about the prosecution of the Defendants in this extremely high-profile case, Intervenors filed a motion to intervene and opposition to the government's proposed protective order. (*See* ECF No. 355 (motion to intervene); *see also* ECF Nos. 358 (amended motion to intervene); and 570 (Intervenors' opposition to protective order).)

The government subsequently filed a motion for a protective order with the Court, along with a revised proposed protective order that was substantially similar to the one previously circulated to the Defendants. (ECF Nos. 354 (motion for protective order); and 357 (correction motion for protective order); and 357-1 (proposed protective order).)[5]

---

[5] The magistrate judge entered an order on July 1, 2016 granting Intervenors' motion to intervene. (ECF No. 569.)

Along with Intervenors, most of the Defendants opposed the entry of a protective order. (*See, e.g.*, ECF Nos. 315; 322; 325; 326; 328; 330; 331; 333; 335; 337; 338; 340; 342; 343; 344; 347; 348; 349; and 370 (Defendants' memoranda opposing protective order and Defendants' motion for joinders to memoranda); *see also* ECF Nos. #360; 398; 400 (Defendants' responses to government's motion for protective order and motions for joinders).)

On July 15, 2016, the magistrate judge issued an order granting in part the government's request for a protective order. (ECF No. 608.) The court found that the government had "made a sufficient threshold showing of actual and potential threats, intimidation, and harassment to victims, witnesses, and law enforcement officers to show good cause for a protective order restricting dissemination of pretrial discovery." (*Id.*, p. 20:22-24.) The court found that discovery should be subject to protection, citing the "unusual scope and complexity" of the discovery in this case. (*Id.*, p. 21:3-6.) Rather than require the government to make a particularized showing of good cause, the magistrate judge reasoned that a protective order was necessary to facilitate the exchange of discovery and prevent the court from having to resolve "collateral litigation" over individual documents. (*Id.*, p. 21:7-10.) The magistrate judge also justified the need for a protective order by noting that the government had agreed to disclose discovery the Defendants would not normally have access to prior to trial. (*Id.*, p. 21:14-17.)

The protective order (ECF No. 609) sharply curtailed dissemination and copying of discovery. The materials deemed confidential under the protective order includes virtually every document produced by the government, including "grand jury transcripts, witness statements, memoranda of interviews, and any documents and tangible objects produced by the government. (*Id.*, p. 1: 20-24.) Additionally, the order provided for the automatic sealing of any documents designated as confidential. (*Id.*, p. 3:12-18.)

Intervenors submitted objections to the protective order. (ECF No. 620) which were subsequently overruled by this Court. (*See* ECF No. 620 (objections); ECF No. 1063 (Order).) Intervenors petitioned the Ninth Circuit for a writ of mandamus. (*See generally*

Ninth Circuit Case No. 17-70188.) The Ninth Circuit denied Intervenor's request for mandamus relief, and the protective order remains in place to this day. (Ninth Circuit Case No. 17-70188, Doc. #9.)

### B. Sealed or Closed Hearings

The Court has conducted a series of sealed hearings. (*See, e.g.*, ECF No. 2989 (sealed motion hearing during Jury Trial Day 15); *see also* ECF No. 2929 (sealed motion hearing during Jury Trial Day 14); ECF 2910 (minute order setting a sealed motion hearing for December 6, 2017 on a sealed emergency motion filed by Defendant Cliven Bundy (ECF 2874); ECF No. 1691 (minute order setting an ex parte sealed show cause hearing for March 10, 2017).)

### C. The Trials

On February 6, 2017, trial commenced for Defendants Eric J. Parker, O. Scott Drexler, Richard R. Lovelien, Steven A. Stewart, Todd C. Engel, and Gregory P. Burleson. (ECF No. 1528 (minutes of Jury Trial Day 1).) That trial ended with this Court declaring a mistrial on April 24, 2017. (ECF No. 1887 (minutes of Jury Trial Day 32).) A new trial for these Defendants began on July 10, 2017 (ECF No. 2142), and ended on August 22, 2017 with the jury acquitting the Defendants of the bulk of the counts against them, and deadlocking on a number of counts against Mr. Parker and Mr. Drexler. (ECF No. 2283 (minutes of Jury Trial Day 24).) Trial for Defendants Cliven D. Bundy, Ryan C. Bundy, Ammon E. Bundy, and Ryan W. Payne began on October 30, 2017 (ECF No. 2796 (minutes of Jury Trial Day 1)), and is set to resume on December 20, 2017. (ECF No. 2989 (minutes of Jury Trial Day 15).)

### D. Guilty Pleas

In addition to the acquittals noted above, several other Defendants have pleaded guilty. (*See* ECF No. 645 (minutes of change of plea as to Defendant Blaine Cooper); ECF No. 646 (minutes of change of plea as to Defendant Gerald Delemus); ECF No. 2642 (minutes of change of plea as to Defendant Peter Santilli); ECF No. 2765 (minutes of change of plea as to Defendant Eric J. Parker); ECF No. 2766 (minutes of change of plea as to

Defendant O. Scott Drexler); and ECF No. 2857 (minutes of change of plea as to Defendant Micah L. McGuire).)

### E. Sealed Filings and Exhibits

Throughout these trials, the parties have filed a number of documents under seal, and this Court has entered orders under seal and conducted a number of hearings under seal. Given the number of sealed documents and papers in this case, it is difficult for Intervenors to provide an exact list of what is under seal. However, a review of the docket in this matter indicates that the parties have filed sealed dispositive motions (*see, e.g.*, ECF Nos. 2961 and 2963 (referring to a sealed motion to dismiss designated as ECF No. 2959); *see also* ECF No. 2856 (sealed motion for mistrial); ECF No. 1919 (referring to a sealed motion to dismiss designated as ECF No. 1878); ECF No. 1914 (order referring to sealed Motion for the Unredacted OIG Report designated as ECF No. 1807)), and other sealed motions. (*See, e.g.*, ECF No. 2910 (referring to an emergency sealed motion designated as ECF No. 2874).) Additionally, during a three-day evidentiary hearing, it appears that several sealed exhibits were marked but not admitted. (ECF Nos. 2768, 2776, and 2782.)

Most recently, during the Day 15 of trial for Defendants Cliven D. Bundy, Ryan C. Bundy, Ammon E. Bundy, and Ryan W. Payne, the Court discussed several motions that were filed under seal by the Defendants pertaining to documents, witness names, and other information that the government failed to timely disclose to the Defendants.[6] The Court indicated that the government's repeated failure to timely disclose information was "sufficient to undermine the confidence in the outcome of the trial," thereby indicating it may enter a mistrial.[7]

/ / /

/ / /

/ / /

---

[6] *See supra*, n. 4.

[7] *Id.*

7

## III. ARGUMENT

### A. Legal Standard

"A trial is a public event. What transpires in the court room is public property." *Craig v. Harney*, 331 U.S. 367, 374 (U.S. 1947); *see also Phoenix Newspapers, Inc. v. U.S. Dist. Court for Dist. of Arizona*, 156 F.3d 940, 946 (9th Cir. 1998) ("One of the most enduring and exceptional aspects of Anglo–American justice is an open public trial."). Because trials are a public event, there is a "presumption that the public and the press have a right of access to criminal proceedings and documents filed therein." *CBS, Inc. v. United States Dist. Court for Cent. Dist.*, 765 F.2d 823, 825 (9th Cir. 1985). The access the press and public are presumed to have includes access to pre-trial, trial, and post-trial matters. *Id.* (citing *Globe Newspaper Co. v. Superior Court*, 457 U.S. at 606.

The public's right to inspect certain criminal court records is protected by the First Amendment. *See, e.g., Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 511-12 (1984) ("*Press-Enterprise I*") (transcripts of jury voir dire); *see also Associated Press v. Dist. Ct.*, 705 F.2d 1143, 1145 (9th Cir. 1983) (various pretrial documents); *Oregonian Publ'g Co. v. U.S. Dist. Court*, 920 F.2d 1462, 1466 (9th Cir.1990) (recognizing First Amendment right of access to plea agreements). This right of access is also rooted in the common law. "[C]ourts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications*, 435 U.S. 589, 597 (1978).

To overcome the presumption of access, a party must articulate a basis upon which denial of that access is necessary to preserve some competing interest. *Press-Enterprise I*, 464 U.S. at 510. The court, faced with the motion to seal or close hearings or records, must then weigh the opposing interests and determine if any less restrictive means would provide the same benefit without restricting the right to access, and make specific findings which allow a reviewing court to determine whether the order, if any, was properly entered. *Id.* "Absent an overriding interest articulated in findings, the trial of a criminal case must be open to the public." *Richmond Newspapers v. Virginia*, 448 U.S. 555, 580-81 (U.S. 1980).

**B. Hearings**

As discussed above, the docket in this matter demonstrates the Court has conducted several hearings under seal. (See, e.g., ECF No. 2989 (sealed motion hearing during Jury Trial Day 15); see also ECF No. 2929 (sealed motion hearing during Jury Trial Day 14); ECF 2910 (minute order setting a sealed motion hearing for December 6, 2017 on a sealed emergency motion filed by Defendant Cliven Bundy (ECF 2874); ECF No. 1691 (minute order setting an ex parte sealed show cause hearing for March 10, 2017).) Some of the hearings appear be properly sealed as to protect certain defendants' attorney-client privilege. (*See, e.g.*, ECF No. 2609 (minutes of hearing on Defendant Ryan W. Payne's Motion to Set Hearing for *Faretta* Canvass and Adjoining Matters).) However, because of the protective order, it is impossible for Intervenors and the public to discern whether the other hearings were properly sealed. Moreover, it appears that the Court may have conducted sealed hearing which do not appear on the docket. For example, ECF No. 1691 is a minute order setting an ex parte sealed show cause hearing for March 10, 2017. The docket, however, does not include any entry regarding the hearing. Given the numerous gaps in the docket and the general secrecy surrounding this case, it is possible that there are other hearings this Court has conducted under seal the public is not aware of.

**C. Documents, Filings, and Hearing Transcripts.**

Given that documents, hearings, and filings are sealed and in many instances not listed or referenced in the docket, Intervenors can only speculate or theorize as to what these documents, hearings, and filings may consist of. Certainly, some of these were properly sealed, such as budgetary status conferences, financial affidavits submitted by Defendants, or *Faretta* canvasses that might implicate attorney-client privilege. Those examples aside, Intervenors move this Court to unseal every hearing transcript, filing, and document currently under seal. To the extent that it is necessary to maintain these transcripts, filings, and documents under seal, this Court should require the proponent seeking sealing to demonstrate a compelling interest weighs against the public's right of access. *United States v. Business of Custer Battlefield Museum*, 658 F.3d 1188, 1194-95 (9th Cir. 2011) ("A party seeking to seal

a judicial record . . . bears the burden of overcoming this strong presumption [in favor of disclosure] by ... articulat[ing] compelling reasons ... that outweigh the general history of access and the public policies favoring disclosure") (internal marks and citations omitted) Given that the charges against many of the Defendants have been resolved, it is unlikely that unsealing will unduly prejudice any of their rights. Moreover, given the apparent magnitude of the alleged discovery violations committed by the government, both the Defendants and the general public have an interest in obtaining as much information as possible about the government's actions in this matter.

### D. The Public's Right of Access Under the First Amendment and Common Law Requires Immediate Access

It is firmly established that once a First Amendment right of access attaches to a judicial proceeding or judicial records, the public enjoys a right of contemporaneous access. *See, e.g., Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126-27 (2d Cir. 2006) ("Our public access cases and those in other circuits emphasize the importance of immediate access where a right of access is found." (emphasis added) (citations omitted)); *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) (public access to documents in court's file "should be immediate and contemporaneous"). This tradition of openness "serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp" for law enforcement. *In re Application of New York Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 90 (D. D.C. 2008).

Because the public's right of access is triggered the moment a document is filed with the Court, any delays in providing such access are, in effect, denials, even though they may be limited in time. *See, e.g., Associated Press*, 705 F.2d at 1147 (holding that a 48-hour delay in access constituted "a total restraint on the public's first amendment right of access even though the restraint is limited in time"); *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 507 (1st Cir. 1989) ("even a one to two day delay impermissibly burdens the First Amendment"); *Courthouse News Serv. v. Jackson*, No. H-09-1844, 2009 WL 2163609, at

*3-4 (S.D. Tex. July 20, 2009) (24 to 72 hour delay in access to civil case-initiating documents was "effectively an access denial and is, therefore, unconstitutional").

As the Supreme Court has observed, "[d]elays imposed by governmental authority" are inconsistent with the press' "traditional function of bringing news to the public promptly." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 560-61 (1976). Accordingly, any unnecessary delay in unsealing the numerous sealed documents in this case violates the Intervenors' rights under the First Amendment.

Even apart from the First Amendment, the federal common law provides independent grounds for the public's right to access judicial records. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("the courts of this country recognize a general right to inspect and copy . . . judicial records and documents"); *In re NBC*, 653 F.2d 609, 612 (D.C. Cir. 1981) ("existence of the common law right to inspect and copy judicial records is indisputable"); *Phoenix Newspapers*, 156 F.3d at 946 (holding that the common law creates "a strong presumption" in favor of general public access to records). The common law access right "is not some arcane relic of ancient English law," but rather "is fundamental to a democratic state." *United States v. Mitchell*, 551 F.2d 1252, 1258 (D.C. Cir. 1976), *rev'd on other grounds sub nom. Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589. The common law right of access to judicial records exists to ensure that courts "have a measure of accountability" and to promote "confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).

Courts applying the common law right of public access to judicial records have required a party seeking to deny that right to meet a rigorous standard, not unlike that applied under the First Amendment. *See, e.g., Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65-66 (4th Cir. 1989) (requiring party seeking to keep warrant affidavits under seal to demonstrate that "sealing is 'essential to preserve higher values and is narrowly tailored to serve that interest' [and] the judicial officer must consider alternatives to sealing the documents. This ordinarily involves disclosing some of the documents or giving access to a redacted version." (citations omitted)). Thus, in applying the common law standard to the sealing of warrant materials,

MCLETCHIE SHELL
**ATTORNEYS AT LAW**
701 EAST BRIDGER AVE., SUITE 520
LAS VEGAS, NV 89101
(702)728-5300 (T) / (702)425-8220 (F)
WWW.NVLITIGATION.COM

the Ninth Circuit has held that "[a] party seeking to seal a judicial record . . . bears the burden of overcoming this strong presumption [in favor of disclosure] by ... articulat[ing] *compelling* reasons ... that outweigh the general history of access and the public policies favoring disclosure." *United States v. Business of Custer Battlefield Museum*, 658 F.3d 1188, 1194-95 (9th Cir. 2011) (internal marks and citations omitted) (emphasis added).

The public's right of access is particularly important given that when trial resumes on December 20, 2017, this Court may hear arguments from the parties about the government's alleged discovery violations. Because these discovery violations may result in a mistrial or dismissal, Intervenors seek immediate resolution of their motion to unseal. Moreover, Intervenors request the Court conduct any hearing regarding the alleged discovery violations in open court so that Intervenors and the public may learn the exact nature of the alleged violations, the parties' positions regarding the alleged violations, and the Court's rulings.

### IV.  CONCLUSION

For the foregoing reasons, Intervenors respectfully request that all documents and hearings previously sealed, which can be unsealed without overly prejudicing the rights of any Defendant, be unsealed. Intervenors further request that this Court conduct any hearing regarding the government's alleged discovery violations in open court so that Intervenors and members of the public may attend.

Respectfully submitted this 14th day of December, 2017.

*/s/ Margaret A. McLetchie*
MARGARET A MCLETCHIE, Nevada Bar No. 10931
ALINA M. SHELL, Nevada Bar No. 11711
**MCLETCHIE SHELL LLC**
701 East Bridger Ave., Suite 520
Las Vegas, Nevada 89101
(702) 728-5300
maggie@nvlitigation.com
*Counsel for Proposed Intervenors,*
*Las Vegas Review-Journal and Battle Born Media*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of December, 2017, I did serve, via Case Management/Electronic Case Filing, a true and correct copy of the above and foregoing INTERVENORS' MOTION TO UNSEAL COURT DOCUMENTS to counsel of record in this case and by First Class United States Mail, postage fully prepaid, to the following:

> Ryan C. Bundy, ID # 79400065
> Nevada Southern Detention Center
> 2190 East Mesquite Ave.
> Pahrump, NV 89060
> *Pro Se Defendant, Ryan C. Bundy*

.

*/s/ Pharan Burchfield*
MCLETCHIE SHELL LLC