1

1           UNITED STATES DISTRICT COURT

2                DISTRICT OF NEVADA

3

4   UNITED STATES OF AMERICA,        )
                                     )
5                    Plaintiff,      )
                                     )   Case No. 2:16-cr-046-GMN-PAL
6            vs.                     )
                                     )   Las Vegas, Nevada
7   CLIVEN D. BUNDY (1),             )   Monday, January 8, 2018
    RYAN C. BUNDY (2),               )   Courtroom 7C, 9:28 a.m.
8   AMMON E. BUNDY (3),              )
    RYAN W. PAYNE (4),               )   MOTION TO DISMISS
9                                    )
                     Defendants.     )
10  _____)   C E R T I F I E D   C O P Y

11

12              TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE GLORIA M. NAVARRO
13            UNITED STATES DISTRICT CHIEF JUDGE

14  APPEARANCES:

15   For the Plaintiff:

16           UNITED STATES ATTORNEY'S OFFICE
             BY:  STEVEN W. MYHRE
17                DANIEL R. SCHIESS
                  NADIA JANJUA AHMED
18           501 Las Vegas Boulevard South, Suite 1100
             Las Vegas, Nevada 89101
19           (702) 388-6336

20

21   (Appearances continued on Page 2)

22  Court reporter:  Heather K. Newman, RPR, CRR, CCR #774
                     333 South Las Vegas Boulevard
23                   Las Vegas, NV 89101
                     (702) 471-0002  HN@nvd.uscourts.gov

24

25  Proceedings reported by machine shorthand, transcript produced
    by computer-aided transcription.

2

```
 1   APPEARANCES CONTINUED:

 2   For the Defendant Cliven D. Bundy:

 3           JUSTICE LAW CENTER
             BY:  BRET O. WHIPPLE
 4           1100 South Tenth Street
             Las Vegas, NV 89104
 5           (702) 257-9500

 6   For the Defendant Ryan C. Bundy:

 7           RYAN C. BUNDY, PRO SE

 8           THE FLETCHER FIRM, PC
             BY:  MAYSOUN FLETCHER
 9           5510 South Fort Apache, Suite 5
             Las Vegas, NV 89148
10           (702) 835-1542

11

     For the Defendant Ammon E. Bundy:
12
             HILL FIRM
13           BY:  DANIEL HILL
             228 South Fourth Street, 3rd Floor
14           Las Vegas, NV 89101
             (702) 848-5000
15
             JM PHILPOT ATTORNEYS AT LAW
16           BY:  JAY MORGAN PHILPOT
             1063 East Alpine Drive
17           Alpine, UT 84004
             (801) 891-4499
18
     For the Defendant Ryan W. Payne:
19
             FEDERAL PUBLIC DEFENDER'S OFFICE
20           BY:  RYAN NORWOOD
                  BRENDA WEKSLER
21           411 East Bonneville Avenue, Suite 250
             Las Vegas, NV 89101
22           (702) 388-6577

23

24

25
```

3

1    <u>APPEARANCES CONTINUED:</u>

2    For Intervenors LVRJ and Battle Born Media:

3            McLETCHIE SHELL LLC
             BY:  MARGARET A. McLETCHIE
4            701 East Bridger Avenue, Suite 520
             Las Vegas, NV 89101
5            (702) 728-5300

6    Also present:

7            Sharon Gavin, FBI Special Agent
             Joel Willis, FBI Special Agent
8            Mike Abercrombie, FBI Special Agent

9            Mamie Ott, Legal Assistant

10           Nicole Reitz, IT
             Brian Glynn, IT
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1          LAS VEGAS, NEVADA; MONDAY, JANUARY 8, 2018; 9:28 A.M.

2                              --oOo--

3                   P R O C E E D I N G S

4          COURTROOM ADMINISTRATOR:  All rise.

5          THE COURT:  Thank you.  You may be seated.

6          COURTROOM ADMINISTRATOR:  This is the time set for

7   the Motion Hearing regarding Documents No. 2883 and 2906,

8   sealed Motions to Dismiss and Document No. 3010, Motion to

9   Unseal Intervenors -- by Intervenors in Case Number

10  2:16-cr-046-GMN-PAL, United States of America vs. Cliven Bundy,

11  Ryan Bundy, Ammon Bundy, and Ryan Payne.

12          Counsel, please make your appearances for the record.

13          MR. MYHRE:  Good morning, Your Honor.  Steve Myhre,

14  Dan Schiess, Nadia Ahmed on behalf of the United States.

15          THE COURT:  Good morning, Mr. Schiess.  Good morning,

16  Ms. Ahmed, and good morning, Mr. Myhre.

17          MR. WHIPPLE:  Good morning, Your Honor.

18  Brett Whipple -- as well Happy New Year to you.  Brett Whipple

19  on behalf of Mr. Cliven Bundy.

20          THE COURT:  Good morning, Mr. Whipple, Mr. Bundy.

21          PRO SE RYAN BUNDY:  Ryan C. of the Bundy family here

22  by special appearance with Maysoun Fletcher assisting and on --

23  and for the record, I reserve all right.

24          THE COURT:  Good morning, Mr. Bundy.  Good morning,

25  Ms. Fletcher.

5

1          MR. HILL:  Good morning and Happy New Year,

2    Your Honor.  Dan Hill along with Morgan Philpot here on behalf

3    of Ammon Bundy.

4          THE COURT:  Good morning, Mr. Hill, Mr. Philpot and

5    Mr. Bundy.

6          MS. WEKSLER:  Good morning, Your Honor.

7    Brenda Weksler and Ryan Norwood on behalf of Mr. Payne.

8          THE COURT:  Good morning, Ms. Weksler, Mr. Norwood,

9    and good morning, Mr. Payne.

10          So before we begin, I would like to make some

11    preliminary remarks just to --

12          MS. McLETCHIE:  Good morning, Your Honor.

13    Maggie McLetchie --

14          THE COURT:  Oh, I'm sorry.

15          MS. McLETCHIE:  -- for the Intervenors Las Vegas

16    Review Journal and Battle Born Media.

17          THE COURT:  Thank you.  Good morning, Ms. McLetchie.

18          All right.  So before we begin, I just wanted to make

19    some preliminary remarks to remind everyone and to set clear

20    the expectations of how court will be conducted this morning.

21          Please remember this is a courtroom; it is not a

22    sporting event.  So it is never appropriate to make any

23    expression of your opinion, whether verbally or through your

24    body language, no matter how much you may agree or disagree

25    with what is being said.

6

1          In addition, we do not allow electronic devices in

2     the courtroom.  There is no audio or video recording permitted

3     in the courtroom.  Therefore, only the attorneys are permitted

4     to have electronic devices so that they may be able to do their

5     job.  There is one paralegal -- I think I see him back there --

6     who is permitted to have an electronic device so long as the

7     audio and speaker is covered.

8          Do you have that with you today, sir?

9          UNIDENTIFIED SPEAKER:  I kept it in my briefcase,

10    Your Honor.

11         THE COURT:  Okay.  Thank you, sir.

12         So please be aware that the marshals are authorized

13    to remove any individual who is seen with an electronic device,

14    whether it's on or off.  Whether it's in vibrate or privacy

15    mode, does not matter.  If you have the device, they will be

16    able to remove you and you may not be able to re-enter.

17    Likewise, if you make any distracting or inappropriate

18    expressions, the marshals also have the authority to remove you

19    in order to preserve the atmosphere in the courtroom.

20         Now, the Court has reviewed the following briefs:

21    Number 83 -- I'm sorry -- 2883 is the sealed version.  The

22    public version is 3057.  The Court has also reviewed Docket No.

23    2906.  The public version of that is 3058.  And the Court has

24    also reviewed Documents 3082 and 3085.  The public versions of

25    those documents are 3087 and 3088.

1          The Court does grant Cliven Bundy's Motion for

2     Joinder, which is Number 3096.

3          Now, in Payne's Motion to Dismiss, Mr. Payne's Motion

4     to Dismiss, which is Number 3085, he does request that the

5     Indictment be dismissed based on three possible theories:

6          The first being that the case barred by the double

7     jeopardy clause; the second being that outrageous government

8     conduct that amounts to a due process violation justifies

9     dismissal; and the third theory is that dismissal under the

10    Court's supervisory power for outrageous governmental

11    misconduct is appropriate.

12         The Court first will address the double jeopardy

13    argument.

14         Double jeopardy does attach once a jury has been

15    sworn.  Pursuant to *United States v. Alexander*, Ninth Circuit

16    case decided in 1998, "If a case is dismissed after jeopardy

17    attaches but before the jury reaches a verdict, a defendant may

18    be tried again for the same crime only in two circumstances:

19    Number one, if he consents to the dismissal, or number two, if

20    the district court determines that the dismissal was required

21    by manifest necessity," quoting from *Chapman*, Ninth Circuit

22    case decided in 2008 as well as *Oregon v. Kennedy*, United

23    States Supreme Court case decided in 1982.  Here, the Court has

24    already granted the mistrial based on manifest necessity so it

25    follows that the defendants may be retried under this theory.

8

1          However, defendant Payne argues that the Double

2    Jeopardy Clause still bars retrial "where the government

3    conduct in question is intended to 'goad' the defendant into

4    moving for a mistrial," quoting *Oregon v. Kennedy*.  Considering

5    what has occurred throughout the trial up to this point, the

6    Court finds no evidence that the government's failure to

7    disclose evidence was a strategy decision on the prosecution's

8    part to abort the trial.  Rather, it appears the government has

9    attempted to provide the defense with the identified *Brady*

10   evidence in order to move forward with trial and not to

11   purposely goad the defense into moving for mistrial.

12          For these reasons, the Court finds the Double

13   Jeopardy Clause does not bar retrial.

14          Next we have the claim of outrageous government

15   conduct and that a dismissal is appropriate for either --

16   either under a due process violation theory or under the

17   Court's supervisory powers.

18          "A district court may dismiss an Indictment on the

19   ground of outrageous government conduct if the conduct amounts

20   to due process violation," quoting from *Simpson*, Ninth Circuit

21   case.  If the conduct does not rise to the level of a due

22   process violation, the Court may nonetheless dismiss a case for

23   outrageous government misconduct under its supervisory powers.

24          So turning first to the due process violation

25   allegation.

1          To violate due process, governmental conduct must be,

2     and I quote, "so grossly shocking and so outrageous as to

3     violate the universal sense of justice," quoting from *United*

4     *States v. Restrepo*, Ninth Circuit case decided in '91, and also

5     *United States vs. Ramirez*, Supreme Court case decided in 1983.

6          Due process is not violated unless the conduct is

7     attributable to and directed by the government, *United States*

8     *v. Barrera-Moreno*, Ninth Circuit case decided in 1991.

9          "Outrageous government conduct occurs when the

10    actions of law enforcement officers or informants are so

11    outrageous that due process principles would absolutely bar the

12    government from invoking judicial processes to obtain a

13    conviction," *United States v. Archie*, which is 2016 case out of

14    the District of Nevada as well as *United States v. Black*, Ninth

15    Circuit case decided in 2013 and *United States v. Russell*, U.S.

16    Supreme Court case decided in 1973.

17         Now, dismissal under this "extremely high" standard

18    is appropriate only in "extreme cases in which the government's

19    conduct violates fundamental fairness," *U.S. v. Pedrin,*

20    P-e-d-r-i-n, Ninth Circuit case decided in 2015 quoting from

21    *United States v. Smith*, Ninth Circuit decided in 1991.

22         So when reviewing a claim alleging that the

23    Indictment should be dismissed because the government's conduct

24    was outrageous, evidence is viewed in the light most favorable

25    to the government, *United States v. Gurolla*, G-u-r-o-l-l-a,

1    Ninth Circuit case decided 2003.

2            The concept of outrageous government conduct focuses

3    on the government's actions, *United States v. Restrepo*.

4            Here in this case, both the prosecution and the

5    investigative agencies are equally responsible for the failure

6    to produce *Brady* materials to the defense.  In the prior

7    mistrial hearing, the Court explained, in detail, that numerous

8    documents, and the information contained in such documents,

9    should have been provided to the defense and the Court finds

10   this conduct especially egregious because the government chose

11   not to provide this evidence, even after the defense

12   specifically requested it.

13           The Court finds the prosecution's representations

14   that it was unaware of the materiality of the *Brady* evidence is

15   grossly shocking.  The prosecution was on notice after the

16   Court's order, which is on the docket, Number 2770, that a

17   self-defense theory may become relevant if the defense was able

18   to provide an offer of proof, outside the presence of the jury.

19   Moreover, in that same order, Number 2770, the Court

20   specifically denied the government's motion to exclude all the

21   reference to perceived government misconduct to the extent it

22   is relevant to defenses raised by the defendants.  So the

23   government was well aware that theories of self-defense,

24   provocation, and intimidation might become relevant if the

25   defense could provide a sufficient offer of proof to the Court.

11

1    However, the prosecution denied the defense its opportunity to

2    provide favorable evidence to support their theories as a

3    result of the government's withholding of evidence and this

4    amounts to a *Brady* violation.

5           For example, the government claims it failed to

6    disclose this evidence because the FBI did not provide the

7    documents to the prosecution team.  However, the prosecutor has

8    a duty to learn of favorable evidence known to other government

9    agents, including the police, if those persons were involved in

10   the investigation or prosecution of the case, citing *Kyles v.*

11   *Whitley*, United States Supreme Court case decided 1995.

12   Clearly, the FBI was involved in the prosecution of this case.

13   Based on the prosecution's failure to look for evidence outside

14   of that provided by the FBI and the FBI's failure to provide

15   evidence that is potentially exculpatory to the prosecution for

16   discovery purposes, the Court finds that a universal sense of

17   justice has been violated.  The Court is convinced that there

18   is still outstanding *Brady* discovery based on the government's

19   most recent assertion that, and I quote, "the government

20   expects a thorough review of the discovery will result in the

21   production of other documents to the defense," and I'm citing

22   from the most recent filing by the government, Number 3081,

23   Page 45, Footnote 20.

24           Alternatively, a district court may exercise its

25   supervisory powers in three different enumerated ways:

12

1          Number one, "to remedy unconstitutional or statutory

2     violation"; number two, "to protect judicial integrity by

3     ensuring that a conviction rests on appropriate considerations

4     validly before a jury"; or number three, "to deter future

5     illegal conduct," quoting from *Simpson*, Ninth Circuit case

6     decided '91.

7          In *United States vs. W. R. Grace*, the Ninth Circuit

8     clarified that the exercise of the Court's inherent powers is

9     not limited to these three grounds enumerated in *Simpson*, and

10    that was an en banc decision by the Ninth Circuit in 2008.

11         "Dismissal is appropriate when the investigatory or

12    prosecutorial process has violated a federal Constitution or

13    statutory right and no lesser remedial action is available,"

14    quoting from *Barrera-Moreno*.

15         The Ninth Circuit has recognized that exercise of a

16    supervisory power is an appropriate means of policing ethical

17    misconduct by prosecutors, *United States v. Lopez*, Ninth

18    Circuit case decided in 1993.

19         So "dismissal under the Court's supervisory powers

20    for prosecutorial misconduct requires both:

21         "Number one, flagrant misbehavior, and number two,

22    substantial prejudice," citing *United States v. Kearns*,

23    K-e-a-r-n-s, Ninth Circuit case decided in 1993.

24         Neither accidental nor mere negligent governmental

25    conduct is sufficient.  The idea of prejudice entails that the

1  government's conduct had at least some impact on the verdict

2  and thus redounded to the defendant's prejudice.

3          In order for the Court to dismiss an Indictment under

4  the supervisory powers, the Court must find that there has been

5  flagrant prosecutorial misconduct, substantial prejudice to the

6  defendants, and that no lesser remedial action is available.

7          The Court found previously that there had been

8  multiple *Brady* violations because the government failed to

9  produce evidence that bolstered the defense and was useful to

10  rebut the government's theory.  Additionally, the Court

11  concluded that the government willfully failed to disclose

12  potentially exculpatory, favorable and material information,

13  including, but not limited to, the following documents and

14  their contents:

15          The FBI Law Enforcement Operation order; the FBI

16  Burke 302 about Agent Egbert; the FBI 302 about BLM Agent

17  Delmolino authored by FBI Agent Willis; the FBI 302 about BLM

18  Special Agent Felix observing the LP/OP, the Listening

19  Post/Operation Post; the FBI 302 about BLM Racker and his

20  assignment to the LP/OP; the unredacted FBI TOC log; and the

21  various threat assessments created by different agencies,

22  including the BLM and FBI.

23          It seems no coincidence that most, if not all, of

24  these documents are authored by the FBI.

25          I do need to make one correction.  Apparently I

14

1    previously identified -- or should I say misidentified -- a

2    report or some information as being contained in an Internal

3    Affairs report.  It was actually in the FBI Joint Terrorism

4    Task Force report, the JTTF prepared on March 14th of 2014.

5    This is the document that recorded that at a meeting Love had

6    stated that he had requested that the FBI place a surveillance

7    camera.

8            So the Court looks to *Chapman*, *U.S. v. Chapman.*  And

9    in *Chapman*, the district court dismissed an Indictment pursuant

10   to its supervisory powers based on discovery violations that

11   involved 650 pages of undisclosed documents that the Court

12   classified as *Brady* material.  The district court in *Chapman*

13   found that "the Assistant U.S. Attorney acted flagrantly,

14   willfully and in bad faith" and that he had made "affirmative

15   misrepresentations to the Court," that the defendants would be

16   prejudiced by a new trial and that no lesser standard would

17   adequately remedy the harm done after reviewing the totality of

18   the proceedings before it.

19           The Ninth Circuit held that the *Chapman* court did not

20   abuse its discretion by dismissing the Indictment pursuant to

21   its supervisory powers.

22           Here, defendant Payne argues that the government's

23   conduct was more egregious than the facts before the *Chapman*

24   court.  He argues that there were more than mere hints of the

25   discovery issues on the eve of trial and that there was at

1   least a thousand pages of discovery disclosed between

2   November 8th and December 15th of 2017, all which should have

3   been disclosed by October 1st.

4          The government argues that this case is different

5   from the *Chapman* case because here the prosecution did not fail

6   to produce evidence it knew to be material.  The government

7   contends it merely inadvertently failed to disclose evidence,

8   or that the defense had all the information in the undisclosed

9   documents because the government had previously provided other

10  documents with substantially the same content.  Further, the

11  government contends that the documents that the Court ruled to

12  be untimely disclosed, in violation of *Brady*, not including the

13  OIG reports, is actually fewer than 200 pages.

14         "The prosecutor has a 'sworn duty' to assure that the

15  defendant has a fair and impartial trial.  His interest in a

16  particular case is not necessarily to win, but to do justice,"

17  citing from *Chapman*.  Here, the prosecution seems to have

18  minimized the extent of prosecutorial misconduct by arguing

19  that they believed the various items previously undisclosed,

20  like the threat assessments, were not helpful or exculpatory,

21  or that they did not need to be -- or that they did not provide

22  evidence that snipers had been inserted or did not need to,

23  because the use of snipers was already known to the defense.

24  Another argument is that the FBI did not provide the

25  information to the prosecution.

1          The Court acknowledges that merely negligent

2     government conduct is not sufficient to establish flagrant

3     misbehavior.  However, as the appellate court in *Chapman*

4     stated, "we never suggested that flagrant misbehavior does not

5     embrace reckless disregard for the prosecution's constitutional

6     obligations."  In other words, reckless disregard may amount to

7     flagrant misbehavior.  As the Court has noted, a prosecutor has

8     an ongoing duty to learn of favorable evidence known to other

9     government agents, including the police, if those persons are

10    involved in the investigation or prosecution of the case.

11    Therefore, the fact that the prosecution failed to look beyond

12    the files provided by the FBI is not mere negligence; it is a

13    reckless disregard for its Constitution obligations to learn

14    and seek out favorable evidence.  The prosecution's reliance on

15    the FBI to provide the required information amounted to an

16    intentional abdication of its responsibility.

17          For example, the prosecution was aware of the

18    existence of a camera set to provide a live feed.  The claims

19    that the FBI 302 authored by Burke on April 8th of 2014 about

20    Egbert led the prosecution to believe that it did not need to

21    follow up on the camera feed because the 302 report said that

22    the camera was not configured to record.  But the prosecution's

23    decision to not follow up was not mere negligence.  As the

24    Court noted previously, the government's proffer that views

25    from a surveillance camera were never viewed by anyone nor

1    recorded or reported in some format was simply inconceivable.

2    That the prosecution accepted this implausible claim, whether

3    it was provided by the FBI, is just another example of its

4    reckless disregard to fulfill its constitutional duties to

5    learn about evidence favorable to the defense that may have

6    existed as a result of someone's notes and observations of the

7    surveillance camera's live feed of the Bundy Ranch.

8         Further, the prosecutors' alleged reliance on the

9    information in the FBI files was misplaced.  The Court finds

10   that the FBI's failure to timely produce information to the

11   prosecution amounts to reckless disregard or flagrant

12   misbehavior, especially in light of the fact that the FBI was

13   directly involved in the operation, prior to the operation,

14   during, and after the alleged conspiracy timeline.  The Court

15   seriously questions why the FBI inexplicably placed (or perhaps

16   hid) potentially exculpatory electronic information about the

17   placement of FBI snipers in such an unconventional location, on

18   a thumb drive, inside a vehicle, for over three years.

19   Compounding the Court's concern is that the FBI had almost four

20   full years to prepare the trial and two years to disclose the

21   information to the prosecution and that their agents were

22   physically present during the last two trials where the

23   existence of snipers was contentiously debated.  Regardless,

24   the Court is not required to identify the responsible persons

25   with such specificity.  And I add, the Court is not aware of

1    any other situation where the FBI has acted in disregard such

2    as this.  The law attributes, nevertheless, the conduct,

3    whether it's of the FBI or other enforcement -- law enforcement

4    agencies under these circumstances, to the government

5    prosecution team, citing *United States vs. Barrera-Moreno*

6    decided by the Ninth Circuit in 1991, analyzing the Court's

7    supervisory power, stating, and I quote, that "dismissal is

8    appropriate when the investigatory or prosecutorial process has

9    violated a federal constitutional or statutory right and no

10   lesser remedial action is available."

11           This case is distinguished from *Chapman* in that the

12   prosecution in this case has kept a record of what has been

13   produced and what has not been produced.  The Court also

14   recognizes that the government has attempted to locate all

15   outstanding discovery.  However, like *Chapman*, this case

16   involves voluminous discovery and the government willfully

17   failed to produce *Brady* material.  Additionally, the government

18   made several misrepresentations to the defense, and to the

19   Court, regarding the existence of the cameras, the snipers, the

20   materiality of prior threat assessments and its diligent and

21   fully complying -- its diligence in fully complying with its

22   constitutional obligations.  For example, representations about

23   whether individuals were technically "snipers" or not "snipers"

24   was disingenuous, especially considering that the undisclosed

25   documents authored by the FBI, the ones located on the thumb

1    drive inside a vehicle, expressly refer to these individuals as

2    "snipers" at least three different occasions.  Likewise,

3    arguments about whether they were actually "deployed" or merely

4    "training" was a deliberate attempt to mislead and to obscure

5    the truth.  These are arguments for closing argument and not a

6    reason to withhold information.  Numerous other instances are

7    noted by the defense in the brief and the Court does not

8    disagree with these representations.

9            Thus, the Court does find that there has been

10   flagrant prosecutorial misconduct in this case even if the

11   documents themselves were not intentionally withheld from the

12   defense.

13           Defendant Payne argues that the defense has been

14   prejudiced because there -- they have already set forth the

15   legal and factual particulars of their defense by revealing

16   voir dire strategy, the evidence they expect to support their

17   defense in their opening statements, revealing their strategy

18   in cross-examination, and the defense correctly avers that this

19   revealed information will allow the government to try and

20   correct its faltering case.  Specifically, the defense notes

21   the lack of success of the government at prior trials; the tone

22   and the direction of the jury questions in this case, both

23   those questions that were read and not read to the witness; and

24   the new yet unexplored issues related to the Wooten e-mail, the

25   FBI special agent who was formally assigned to lead the

1    investigation but abruptly was removed in February of 2017,

2    allegedly by the prosecution because he complained of Special

3    Agent in Charge Dan Love's misconduct, the investigating law

4    enforcement officer's bias, the government's bias, and the

5    failure to disclose exculpatory evidence.

6        The Court agrees that retrying the case would only

7    advantage the government by allowing them to strengthen their

8    witnesses' testimony based on the knowledge gained from the

9    information provided by the defense and revealed thus far.  The

10   government would be able to perfect its opening statements

11   based on the revealed defense strategy in its opening and the

12   government would also be able to conduct more strategic voir

13   dire at the retrial.

14       The Court is troubled by the prosecution's failure to

15   look beyond the FBI file that was provided and construes the

16   *Brady* violations in concert as a reckless disregard of its

17   discovery obligations.  The government's recklessness and the

18   prejudice the defendants will suffer as a result of a retrial

19   warrant the extreme measure of dismissing the Indictment

20   because no lesser sanction would adequately defer -- deter

21   future investigatory and prosecutorial misconduct.

22       The government is only proposed a new trial as the

23   appropriate remedy for their discovery violations.  However,

24   its conduct has caused the integrity of a future trial and any

25   resulting conviction to be even more questionable.  Both the

21

1    defense and the community possess the right to expect a fair

2    process with a reliable conclusion.  Therefore, it is the

3    Court's position that none of the alternative sanctions

4    available are as certain to impress the government with the

5    Court's resoluteness in holding prosecutors and their

6    investigative agencies to the ethical standards which regulate

7    the legal profession as a whole.

8              The Court finds that the government's conduct in this

9    case was indeed outrageous, amounting to a due process

10   violation, and that a new trial is not an adequate sanction for

11   this due process violation.

12             Even if the government's conduct did not rise to the

13   level of a due process violation, the Court would nonetheless

14   dismiss under its supervisory powers because there has been

15   flagrant misconduct, substantial prejudice, and no lesser

16   remedy is sufficient.  Dismissal is necessary as to these four

17   defendants:  Ryan Payne, Ryan Bundy, Ammon Bundy, and Cliven

18   Bundy, and dismissal is justified for all three of the

19   enumerated reasons provided by the law:

20             Number one, to properly remedy the constitutional

21   violation; number two, to protect judicial integrity by

22   ensuring that a conviction rests only on appropriate

23   considerations validly before a jury; and number three, to

24   deter future illegal conduct.

25             It is herein ordered that the defendants' Motion to

22

1    Dismiss with prejudice, Number 2883, public version 3057, as

2    well as Document No. 2906, public version 3058, and

3    Document 3082 and 3085, public version 3087 and 3088, are

4    hereby granted.

5            The Court hereby vacates the detention orders for

6    Cliven Bundy.  The Court vacates the pretrial release orders

7    and exonerates the bonds of Ryan Payne, Ryan Bundy, and Ammon

8    Bundy.  Mr. Payne is still to report to the U.S. Marshal's

9    Office immediately per Judge Brown's order from Oregon, but

10   rather than having you remanded into custody right now

11   immediately, I will order you to report to the U.S. Marshal's

12   Office as soon as this hearing is concluded.

13           The Calendar Call in trial date is likewise vacated

14   as to these four defendants, and the trial for the remaining

15   defendants will remain scheduled for February 26th at 8:30 a.m.

16   with Calendar Call February 15th at 9:00 a.m.

17           So the Court will take about a 15-minute recess.

18   It's 9:56 now.  So, about until 10:15 so that the proper

19   paperwork can be provided to the defendants and then we'll

20   resume and take up the Intervenors' Motion to Unseal, which is

21   number 3010 on the docket.

22           COURTROOM ADMINISTRATOR:  All rise.

23           Off record.

24      (Recess was taken at 9:56 a.m.)

25           ///

1                              --oOo--

2                  COURT REPORTER'S CERTIFICATE

3

4       I, Heather K. Newman, Official Court Reporter, United

5  States District Court, District of Nevada, Las Vegas, Nevada,

6  do hereby certify that pursuant to Section 753, Title 28,

7  United States Code, the foregoing is a true, complete, and

8  correct transcript of the proceedings had in connection with

9  the above-entitled matter.

10

11  DATED:  1-9-2018          ____/s/ Heather K. Newman__
                               Heather K. Newman, CCR #774
12                             OFFICIAL FEDERAL REPORTER

13

14

15

16

17

18

19

20

21

22

23

24

25